1    WILLIAM G. BISSELL, ESQ.
     State Bar #93527
2    Law Offices of
     William G. Bissell
3    14 Corporate Plaza Drive,
     Suite 120
4    Newport Beach, CA 92660
     Telephone:(949) 719-1159
5    Telefax No:(949) 719-1158

6    Counsel for Defendants
     GARY HUMPHREYS AND
7    KAREN HUMPHREYS

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12

13   ADAM BEREKI                      Case No.CV-8:19-
                                              02050
14          Plaintiff,

15                                    (CBM)(ADSx)
     vs.
16
     KAREN   HUMPHREYS,    GARY       **NOTICE   OF   MOTION
17   HUMPHREYS                        AND   MOTION   OF
                                      DEFENDANTS   KAREN
18                                    HUMPHREYS   AND
            Defendants.              GARY HUMPHREYS TO
19                                    DISMISS,   THE   FIRST
                                      AMENDED COMPLAINT
20                                    PURSUANT TO RULE 12
                                      (b)(1), (6), & (7) OF THE
21                                    FEDERAL   RULES   OF
                                      CIVIL   PROCEDURE
22                                    AND   REQUEST   FOR
                                      JUDICIAL NOTICE**

23
                                     Hearing Date: December 17, 2019
24                                   Time: 10:00 a.m.
                                     Courtroom: 8B
25
                                     Complaint Filed:  10/28/19
26

27

28
                                                          1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO PLAINTIFF ADAM BEREK:**

**PLEASE TAKE NOTICE** that on December 17, 20198 at 10:00 a.m. in Courtroom 8B in the United States Courthouse located at 350 W. First Street, Los Angeles, California 90012, the Honorable Consuelo B. Marshall presiding, Defendants Karen Humphreys and Gary Humphreys ("Defendants") will move pursuant to <u>Federal Rule of Civil Procedure 12 (b) (1), (6) & (7)</u> to dismiss, in its entirety, the first amended complaint brought by Adam Bereki ("Plaintiff") on the following grounds:

1. Plaintiff's action is, in its form and substance, an appeal of a judgement entered by the Superior Court of the State of California for the County of Orange which judgment has been upheld on appeal by the California Court of Appeals for the 4th District of California and as such this Court is lacking in jurisdiction to render a judgment affecting either that state court judgment or appellate decision or otherwise grant the relief sought by Plaintiff in his complaint filed herein.

2. Plaintiff claim for relief is barred by reason of the judicial doctrines of res judicata and collateral estoppel and as such Plaintiff has failed to state a claim for which relief may be granted by this Court.

3. Because Plaintiff's action is in effect an attack on the judgment of the Superior Court of the State of California for the County of Orange and the upholding of that judgment by the California Court of Appeal, both entities are necessary parties to this action so as to protect their interests in their judgments and rulings. Plaintiff's failure to join either entity is a violation of <u>Federal Rule of Civil Procedure 19</u>.

This motion is based on this Notice of Motion and the attached Memorandum of Points and Authorities, on all judicially noticeable documents, on all pleadings and papers filed in this action, and on such other matters and

1    arguments as may be presented to this Court in connection with this Motion.

2            This Motion is made following a meeting with Plaintiff which took place on

3    November 12, 2019.

4

5

6

7    Dated: November 19, 2019                    Respectfully Submitted,

8

9                                    _____
                                              William G. Bissell
10                                             Counsel For
                                     Karen Humphreys and Gary Humphreys
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION...........................................................  6

II. PROCEDURAL HISTORY OF THIS MATTER.........................  7

III. REQUEST FOR JUDICIAL NOTICE...........................................  10

IV. PLAINTIFF IS BARRED FROM  BRINGING THIS ACTION..  10

V.  PLAINTIFF'S 1ST AMENDED COMPLAINT SHOULD BE
    DISMISSED FOR FAILURE TO JOIN INDISPENSABLE
    PARTIES ...................................................................  12

VI. CONCLUSION...........................................................  13

# <u>TABLE OF AUTHORITIES</u>

Page

### <u>U.S. Constitution</u>

*Article IV, § 1*................................................................   10


### <u>Cases</u>

*Allen v. Mc Curry*

449 U.S. 90, 95-96 (1980)........................................   10

*District of Columbia Court of Appeals v. Feldman*

460 U.S. 462 (1983)....................................................   11

*HS Resources, Inc. v. Wingate,*

327 F.3d 432, 438 (5th Cir.2003)..............................   12

*Mullis v. United States Bank Ct.*

(9th Cir. 1987) 828 F2d 1385.................................   10

*Rooker v Fidelity Trust Co.*

263 U.S. 413 (1923)...................................................   11


### <u>Statutes</u>

*28 U.S.C.§1728*..........................................................   10


### <u>Rules</u>

*Federal Rule of Civil Procedure Rule 12 (b) (1), (6) & (7)*.............  10, 12

*Federal Rule of Civil Procedure 19 (a) (1) (B) (I)*..........................  12

*Federal Rules of Evidence - Rule 201*...........................................  10

1 | _____   **MEMORANDUM OF POINTS AND AUTHORITIES**

2 | **I.**

3 | **INTRODUCTION**

4 |

5 |     Although the first amended complaint filed in this matter adheres to no rule

6 | of pleading known to man, one is, after considerable effort, able to discern from it

7 | that what Plaintiff is doing here  is mounting a direct attack on the proceedings of

8 | both the Superior Court and Court of Appeal of the State of California. That much

9 | is made certain from the pleading as plaintiff states in the First Amended Complaint

10 |     " *This is a direct attack on the jurisdiction of the California trial and*

11 |     *appellate Court in case numbers  - 30-2015-00805897 and G055075*

12 |     *respectively*..." [at page 17]

13 |

14 |     As Plaintiff points out in his first amended complaint, judgement was entered

15 | against him, after trial, by the Superior Court of the State of California for the

16 | County of Orange in Orange County Superior Court action No. 30-2015-00805807.

17 | The trial involved the applicability of a California State Statute to the facts of the

18 | case as determined by the trier of fact and judgment was entered on the basis of that

19 | state statute as applied to the adjudicated facts. It is that judgment, which was

20 | upheld and confirmed unanimously by the assigned panel of the California Court of

21 | Appeal and which both the California Supreme Court and the United States

22 | Supreme Court have declined to review, which Plaintiff seeks to attack through the

23 | present action.  This is an avenue which simply is not available to Plaintiff.

24 |     The frivolous nature of this lawsuit is incontrovertible. Plaintiff has clearly

25 | spent many hours researching the most arcane principles of law with dubious

26 | applicability to this  matter. Perhaps had he devoted  just a few of those hours

27 | looking into the more basic concepts of res judicata, collateral estoppel and the

28 |

1  jurisdictional constraints of the courts much time and effort might have been saved.

2       The Court should dismiss Plaintiff's first amended complaint without leave

3  to amend for the following reasons:

4       • Plaintiff has pled no facts sufficient to allow this Court to grant the relief

5           sought by Plaintiff;

6       • The facts as alleged by Plaintiff establish beyond rational argument the

7           elements of res judicata and collateral estoppel baring Plaintiff from

8           prosecuting this action;

9       • Plaintiff's action is in its substance an appeal of a judgment which this

10          Court, as a matter of law is without jurisdiction to hear;

11      • Plaintiff complaint is an admitted direct attack on the judgment and

12          proceedings of state courts who have an interest in protecting the faith

13          and credit given those judgements and proceedings. Despite this Plaintiff

14          has failed to name either court as a party to the action thus depriving the

15          courts of the ability to protect those interests.

16      For these reasons the Court should dismiss Plaintiff's complaint without

17  leave to amend.

18

19                              **II.**

20              **PROCEDURAL HISTORY OF THIS MATTER**

21      On April 20, 2017, after a bench trial in which Plaintiff participated,

22  judgment was entered against plaintiff herein in Orange County Superior Court

23  Action Number 30-2015-00805807. A true and correct copy of that judgment is

24  attached hereto as Exhibit "A" and is incorporated herein by reference.

25      Plaintiff Bereki appealed the judgment entered against him to the California

26  Court of Appeal for the 4th District. A copy of plaintiff's opening brief filed in that

27  appeal is attached hereto as Exhibit "B" and is incorporated herein by reference.

28

In his appeal, Mr. Bereki raised  essentially the same issues as are asserted in his complaint in this matter. In its Opinion, a copy of which is attached here to as Exhibit "C" and which is incorporated herein by reference, the Court of Appeals ultimately identified and summarized those issues stating:

> "*Bereki challenges the portion of the judgment disgorging all compensation paid to him for his work on the Humphreys' remodel project.  Though articulated in various ways, his arguments boil down to the following: (1) disgorgement under section 7031, subdivision (b), is unconstitutional or, alternatively, criminal in nature; (2) the trial court erred in ordering disgorgement because Spartan Associates, not Bereki, performed the work and Spartan Associates held a contractor's license; (3) even assuming Bereki performed the work, the state's contractor licensing requirement does not apply to him as a "natural person"; (4) there was insufficient evidence to support disgorgement including no evidence of injury due to Bereki's failure to be individually licensed; (5) the court should have offset the disgorgement amount by the value the Humphreys received through the remodel work; (6) it was improper to order full disgorgement because certain payments were not made from the Humphreys' personal accounts..."* [Opinion Ex. C pg 5].

On October 31, 2018, after oral argument, the Court of Appeal issued its opinion (Exhibit C) in which it stated that it found no merit in Mr. Bereki's

1   appeal and affirmed the judgment of the trial court.

2       Plaintiff next, on about December 9, 2018, filed with the California

3   Supreme Court his petition for review of the Court of Appeals decision and the

4   judgment of the Superior Court. A copy of Plaintiff's petition for review filed in

5   The Supreme Court of California Case Number S252954 is attached hereto as

6   Exhibit "D" and is incorporated herein by reference.

7       On January 30, 2019, The California Supreme Court denied plaintiff's

8   petition for review. A true and correct copy of the California Supreme court's

9   notice of denial of review is attached hereto as Exhibit "E" and is incorporated

10  herein by reference.

11      Next, on April 23, 2019 plaintiff filed a petition for writ of certiorari with

12  the United States Supreme Court in Case Number 18-1416 seeking U.S.

13  Supreme Court review of the issues raised in his previous filings with the

14  California State Courts which are essentially the same as those raised by plaintiff

15  in his complaint filed in this matter. A true and correct copy of plaintiff's petition

16  for writ of certiorari is attached hereto as Exhibit "F" and is incorporated herein

17  by reference.

18      On October 7, 2019 the U.S. Supreme Court denied plaintiff's petition for

19  writ of certiorari. A true and correct copy of U.S. Supreme court's notice of

20  denial of petition in Case 18-1416 is attached hereto as Exhibit "G" and is

incorporated herein by reference.

### III.

### REQUEST FOR JUDICIAL NOTICE

Defendants moving parties respectfully request that the Court take judicial notice, under *Rule 201 of the Federal Rules of Evidence* of Exhibits A through G to this motion and which exhibits are attached.  *Mullis v. United States Bank Ct.* (9th Cir. 1987) 828 F2d 1385.

### IV.
### PLAINTIFF IS BARRED FROM BRINGING THIS ACTION

*Federal Rule of Civil Procedure 12 (b)* provides for the asserting of certain defenses by motion. Among those defenses which may be raised by motion are , lack of subject matter jurisdiction - Rule 12 (b) (1), and failure to state a claim upon which relief may be granted - Rule 12 (b) (6). Both the *U.S. Constitution at Article IV, § 1* and the contemporaneously enacted  *28 U.S.C. §1738*  require federal courts to give "full faith and credit" to state court judgments, to give, that is, preclusive effect to state court judgments when those judgments would be given preclusive effect by the courts of that state. The purpose for this principal was succinctly  stated by the Court in *Allen v. Mc Curry* 449 U.S. 90, 95-96 (1980),

> *"Thus, res judicata and collateral estoppel not only reduce unnecessary*

1
2
3
4

> *litigation and foster reliance on adjudication, but also promote the*
>
> *comity between state and federal courts that has been recognized as a*
>
> *bulwark of the federal system.*"

5
6
7
8

Closely related is the doctrine based on the opinions in the cases of *Rooker v Fidelity Trust Co.* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman* 460 U.S. 462 (1983), (The Rooker- Feldman Doctrine)

9
10
11
12
13

holding that federal subject-matter jurisdiction of federal district courts does not extend to review of state court judgments.  The Supreme Court, not federal district courts, has such appellate jurisdiction. The doctrine thus prevents losers in state court from obtaining district court review.

14
15
16
17
18
19
20

This is of course precisely what Plaintiff is attempting to do here, seek appellate review in the federal court of a state court judgment. Plaintiff lost in the state court. He invoked the appellate jurisdiction of the U.S. Supreme Court seeking reversal of that state court judgment and was denied that relief by the Court.

21
22
23
24
25
26
27

Under the above authorities there is no basis under law which would allow Plaintiff to now seek reversal of the state court decision by the Federal District Court and the District Court is without jurisdiction to hear this dispute. Consequently Plaintiff has failed to state facts upon which relief may be granted by this court warranting the dismissal, without leave to amend, of the 1st

28

Amended Complaint under the provisions of *Federal Rule of Civil Procedure Rule 12 (b) (1) and (6)*.

**V.**

**PLAINTIFF'S 1ST AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO JOIN INDISPENSABLE PARTIES**

*Federal Rules of Civil Procedure Rule 12(b)(7)* allows for dismissal of an action for "failure to join a party under Rule 19." *Federal Rule of Civil Procedure 19 (a) (1) (B) (i)* requires the joinder of any Person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction if  that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest.

Rule 19 "provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." *HS Resources, Inc. v. Wingate,* 327 F.3d 432, 438 (5th Cir.2003).

Despite Plaintiff's action being admittedly a "direct attack" on a judgment and appellate opinion of the Superior Court of California and the California State Court of Appeals respectively, Plaintiff has failed to join either court as a party to

this action.  Both the Superior Court and Court of Appeals have a strong interest in the comity and credit given to their proceedings in other jurisdictions. By failing to join these courts in his action Plaintiff is impairing and impeding if not outright denying State Superior Court and Court of Appeals the ability to protect those interests.

## VI.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants Karen Humphreys and Gary Humphreys respectfully request that the Court grant their motion and dismiss, without leave to amend, Plaintiff's First Amended Complaint filed herein.

Dated:  Nov. 12, 2019    Respectfully Submitted,


_____
William G. Bissell
Counsel For
Karen Humphreys and Gary Humphreys

# EXHIBIT A

JUD-100

**ELECTRONICALLY RECEIVED**
Superior Court of California,
County of Orange

**04/04/2017 at 12:01:05 PM**
Clerk of the Superior Court
By Enrique Veloz, Deputy Clerk

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number and address):* | FOR COURT USE ONLY |
|---|---|
| William Bissell   SBN 93527<br>14 Corporate Plaza Drive, Suite 120<br>Newport Beach, CA 92660<br>TELEPHONE NO.: (949) 719-1159   FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* wbissell@wgb-law.com<br>ATTORNEY FOR *(Name):* Gary Humphreys & Karen Humphreys | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ORANGE<br>CENTRAL JUSTICE CENTER<br><br>APR 20 2017<br><br>DAVID H. YAMASAKI, Clerk of the Court<br><br>BY: _____ DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ORANGE**
STREET ADDRESS **700 Civic Center Drive West**
MAILING ADDRESS
CITY AND ZIP CODE **Santa Ana, CA 92701**
BRANCH NAME **Central Justice Center**

PLAINTIFF   The Spartan Associates, Inc.

DEFENDANT   Gary Humphreys, Karen Humphreys et al

| JUDGMENT | | CASE NUMBER |
|---|---|---|
| ☐ By Clerk   ☐ By Default   ☑ After Court Trial<br>☑ By Court   ☐ On Stipulation   ☐ Defendant Did Not<br>Appear at Trial | | 2015-00805807<br><br>Judge David Chaffee |

**JUDGMENT**

1. ☐ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a))  Defendant was sued only on a contract or judgment of a court of this state for the recovery of money
   e. ☐ **Court Judgment** (Code Civ. Proc., § 585(b)).  The court considered
      (1) ☐ plaintiff's testimony and other evidence
      (2) ☐ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case  The court approved the stipulated judgment and
   b ☐ the signed written stipulation was filed in the case
   c. ☐ the stipulation was stated in open court   ☐ the stipulation was stated on the record.

3. ☑ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time):* March 27, 2017 at 9:00 a.m.
      before *(name of judicial officer):* The Honorable David Chaffee
   b. Appearances by:

      ☑ Plaintiff *(name each):*
      (1) The Spartan Associates, Inc.
      (2)
      ☐ Continued on Attachment 3b.

      ☑ Plaintiff's attorney *(name each):*
      (1) J. Scott Russo esq.
      (2)

      ☑ Defendant *(name each):*
      (1) Gary Humphreys
      (2) Karen Humphreys
      ☑ Continued on Attachment 3b.

      ☐ Defendant's attorney *(name each):*
      (1) William Bissell esq.
      (2) William Bissell esq.

   c. ☐ Defendant did not appear at trial  Defendant was properly served with notice of trial.

   d. ☑ A statement of decision (Code Civ. Proc., § 632) ☑ was not ☐ was  requested.

Page 1 of 2

| Form Approved for Optional Use<br>Judicial Council of California<br>JUD-100 [New January 1, 2002] | **JUDGMENT** | Code of Civil Procedure, §§ 585, 664.6 |
|---|---|---|

**14**

| PLAINTIFF The Spartan Associates, Inc. | CASE NUMBER 2015-00805807 |
|---|---|
| DEFENDANT Gary Humphreys, Karen Humphreys et al | |

JUDGMENT IS ENTERED AS FOLLOWS BY:   [✓] THE COURT   [ ] THE CLERK

4 [ ]   **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties

5.  **Parties.** Judgment is

a [ ]  for plaintiff (name each)

    and against defendant (names):

    [ ] Continued on Attachment 5a.

b. [✓]  for defendant (name each).
    Gary Humphreys & Karen Humphreys

c [✓]  for cross-complainant (name each).
    Gary Humphreys & Karen Humphreys
    and against cross-defendant (name each):
    Adam Bereki

    [ ] Continued on Attachment 5c.

d [ ]  for cross-defendant (name each):

6   **Amount.**

a. [ ]  Defendant named in item 5a above must pay plaintiff on the complaint:

| | | | |
|---|---|---|---|
| (1) [ ] | Damages | $ | |
| (2) [ ] | Prejudgment interest at the annual rate of   % | $ | |
| (3) [ ] | Attorney fees | $ | |
| (4) [ ] | Costs | $ | |
| (5) [ ] | Other (specify): | $ | |
| (6) | TOTAL | $ | |

c [✓]  Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| | | | |
|---|---|---|---|
| (1) [✓] | Damages | $ | 848,000.00 |
| (2) [ ] | Prejudgment interest at the annual rate of   % | $ | |
| (3) [ ] | Attorney fees | $ | |
| (4) [✓] | Costs | $ | |
| (5) [ ] | Other (specify): | $ | |
| (6) | TOTAL | $ | |

b. [✓]  Plaintiff to receive nothing from defendant named in item 5b.
    [✓] Defendant named in item 5b to recover costs $
      [ ] and attorney fees $

d [ ]  Cross-complainant to receive nothing from cross-defendant named in item 5d.
    [ ] Cross-defendant named in item 5d to recover costs $
      [ ] and attorney fees $

7 [✓]  Other (specify):
Causes of action two through eight of the first amended cross-complaint are dismissed without prejudice subject to a stipulation by the parties and entered on the record.

Date:   APR 2 0 2017

    [ ]    JUDICIAL OFFICER   DAVID R. CHAFFEE

Date

    [ ] Clerk, by _____, Deputy

**CLERK'S CERTIFICATE** (Optional)

(SEAL)

I certify that this is a true copy of the original judgment on file in the court

Date:

Clerk, by _____, Deputy

Page 2 of 2

JUD-100 [New January 1 2002]                     **JUDGMENT**

**15**

Attachment 3-b JUDGMENT - Judicial Counsel Form JUD - 100

THE SPARTAN ASSOCIATES, INC. v. HUMPHREYS
Orange County Superior Court Case No. 2015-00805807


Cross Defendant Adam Bereki appeared in ProPria Persona

Cross Defendant The Spartan Associates, Inc. appeared through its attorney J. Scott Russo

Cross Defendant Suretec Insurance Company appeared through its attorney J. Scott Russo

Appearance of Cross Defendant Old Republic Surety Company was waived by stipulation and order entered thereon.

-1-

PROOF OF SERVICE

I am employed in the County of Orange, State of California.

I am over the age of 18 and not a party to the within action; my business address is 14 Corporate Plaza Drive Suite 120, Newport Beach, CA 92660.

April 4, 2017, I served the within:

**Judgment After Trial- Judicial Counsel Form JUD-100**

in said action by placing a true copy thereof, enclosed in a sealed envelope with postage, certified, return receipt requested thereon fully prepaid, in the United States mail at Newport Beach, California addressed as follows:

> J. Scott Russo, Esq.
> Russo & Duckworth LLP
> 9090 Irvine Center Drive, 2nd Floor
> Irvine, CA 92618

> Adam Bereki
> 818 Spirit
> Costa Mesa, CA 92626

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on April 4, 2017, at Newport Beach, California.

**William Bissell**
Digitally signed by William Bissell
DN: cn=William Bissell, o, ou,
email=wbissell@wgb-law.com,
c=US
Date: 2017.04.04 11:48:57 -07'00'

William Bissell

17

# EXHIBIT B

Appeal No. G055075

In the California Court of Appeal
Fourth Appellate District, Division Three

---

Adam Bereki
Defendant Below and Appellant

v

Karen and Gary Humphreys
Plaintiffs Below and Respondents

---

Appeal from the Superior Court County of Orange
Case No. 30-2015-00805807
Hon. David Chaffee

---

APPELLANT/PETITIONER'S OPENING BRIEF

---

Adam Bereki
In Propria Persona
818 Spirit
Costa Mesa, California
949.241.6693
abereki@gmail.com

Received by Fourth District Court of Appeal, Division Three

**18**

CERTIFICATE OF INTERESTED ENTITIES OR PERSONS
(CRC 8.208)

Bereki v Humphreys
App. Case No. G055075

Interested Entities or Persons are listed below:

| Full Name | Party/Non Party | Nature of Interest |
|---|---|---|
| Adam Bereki | Party | Financial Interest in Outcome of Proceeding |
| Gary Humphreys | Party | Financial Interest in Outcome of Proceeding |
| Karen Humphreys | Party | Financial Interest in Outcome of Proceeding |
| Humphreys & Associates Inc. | Non–Party | Financial Interest in Outcome of Proceeding |
| The Spartan Associates Inc. | Party | Financial Interest in Outcome of Proceeding |
| California Attny. Gen. | Non–Party | Regulation |
| Contractors State License Board | Non–Party | Regulation/ Financial Interest in Outcome of Proceeding |

I certify that the above listed persons or entities have either (1) an ownership interest of 10 percent of more in the party if it is an entity; or (2) a financial or other interest in the outcome of the proceeding that the justices should consider in determining whether to disqualify themselves, as defined in the rule 8.208(e)(2).

_____

Adam Bereki, In Propria Persona
All Rights Reserved
Without Prejudice

Date: 1/8/18

**19**

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED ENTITIES OR PERSONS…………………………………..2

TABLE OF CONTENTS……………………………………………………………………………3

TABLE OF AUTHORITIES……………………………………………………………………..6

STATEMENT OF APPEALABILITY………………………………………………………9

STANDARDS OF REVIEW……………………………………………………………………9

INTRODUCTION…………………………………………………………………………………11

STATEMENT OF FACTS AND PROCEDURAL HISTORY………………………………13

STATEMENT OF ISSUES ON APPEAL……………………………………………………13

LEGAL DISCUSSION

I. RESPONDENTS COMMITTED FRAUD ON THE COURT BY MAKING FALSE OR MISLEADING STATEMENTS TO GAIN A CIVIL ADVANTAGE……………………..……1

II. THE COURT ERRED IN DETERMINING PAYMENTS MADE TO LICENSED CONTRACTORS ARE UNLAWFUL…………………………………………………………..21
     §7031 ONLY EXTENDS JURISDICTION TO PAYMENTS MADE TO UNLICENSED CONTRACTORS………………………………………………………………………..21
WHO DID THE WORK?……………………………………………………………… 25
     ANY ACT OR CONTRACT…………………………………………………………27
     RETURN ALL COMPENSATION PAID…………………………………………29

III. THE COURT ERRED IN AWARDING DISGORGEMENT OF COMPENSATION PAID BY RESPONDENTS CORPORATION WHO WAS NEVER A PARTY TO THE ACTION…….32

IV. THE COURT ERRED BY NOT DISMISSING RESPONDENTS CASE FOR FAILING TO STATE A CONSTITUTIONALLY MANDATED CAUSE OF ACTION RESULTING IN A BILL OF ATTAINDER…………………………………………………………………………….36

V. §7031 IS UNCONSTITUTIONAL AS APPLIED IN THIS CASE BECAUSE IT VIOLATES DUE PROCESS, AND THE REQUIREMENTS FOR PUNITIVE DAMAGE AWARDS AND JUSTICIABILTY…………………………………………………………………………..41

§7031 VIOLATES THE PROVISIONS OF PUNITIVE DAMAGE AWARDS......42
§7031 VIOLATES DUE PROCESS...................................................46
§7031 VIOLATES JUSTICIABILITY...................................................36
§7031 IS PURELY PUNITIVE AND THEREFORE A PENAL ACTION REQUIRING
RIGHTS GUARANTEED TO A CRIMINAL DEFENDANT..........................47

VI. THE COURT ERRED IN DETERMING ADAM BEREKI, A HUMAN BEING, WAS A
FICTITIOUS PERSON...............................................................................48
THE TRIAL COURT VIOLATED DUE PROCESS...........................................53
THE TRIAL COURT DIRECTED A VERDICT.................................................54
THE TRIAL COURT DENIED ADAM A HEARING.........................................54

VII. THE TRIAL COURT ERRED, SANCTIONING A BILL OF ATTAINDER WHEN IT
REFUSED TO PRODUCE A REQUIRED FINDINGS OF FACTS AND CONCLUSIONS OF
LAW.......................................................................................................56

VIII. THE TRIAL COURT ERRED COMMITTING FRAUD AND OTHER DUE PROCESS
VIOLATIONS SUBSEQUENT TO TRIAL.............................................................59

IX. THE TRIAL COURT LACKED SUBJECT MATTER JURISDICTION TO RENDER ANY
JUDGMENT DUE TO FRAUD, DUE PROCESS VIOLATIONS, AND RESPONDENTS
FAILURE TO PROVE THE FACTUAL SUFFICIENCY OF THEIR CLAIM......................64

X. IT IS UNCONSTITUTIONAL TO REQUIRE THE SURRENDER OF CONSTITUTIONALLY
RECOGNIZED RIGHTS IN EXCHANGE FOR A PRIVELEGE..................................69
APPLICATION FOR CONTRACTORS LICENSE IS AN UNCONSCIONABLE
CONTRACT OF ADHESION.....................................................................74

XI. IT IS UNLAWFUL TO REQUIRE SUBMISSION TO MULPTIPLE LICENSES........... 78

## TABLE OF AUTHORITIES

Page            Authority

[9]        Adams v        Aerojet-General Corp. (2001) 86 Cal. App. 4th 1324, 1330

[40]            Allen v Wainright, 468 US 737

[9]            Aryeh v. Cannon Business Solutions, Inc. (2013) 55 Cal.4th 1185, 1191.

[38]            Bailey v Alabama, 219 US 219

[54]            Bass v US, 784 F.2d 1282

[65]            Buis v State, 1990 OK CR 28

[66]            Chromy v Lawrance, 233 CA3d 1521, 1527

[36]            Cohens v Virginia,19 US 264, 404 (1821)

[60]            Common Cause v. Board of Supervisors, 49 Cal. 3d 432

[39,64]            County of Ventura v Tillett, 133 Cal. App. 3d 105

[36]            Cummings v Missouri, 71 US 277

[63]            Davis v Wechsler, 263 US 22, 24

[38,54]            Estate of Buchman, 123 Cal. App. 2d 546

[9]            Estate of Teed (1952) 112 Cal. App. 2d 638, 644

[32]            Gantman v United Pacific Insurance Co., 232 Cal. App. 3d 1560.

[60]            Haines v Kerner, 404 US 459

[73]            Hale v Henkel, 201 US 43

[57]            Hirsch v. Hancock, 173 Cal. App. 2d 745,  (1959)

[46]            Honda Motor Co. Ltd v Oberg, 512 US 415

[77]            Hurtado v People of Calif., 110 US 516

[57]            In re Sullivan, 139 Cal. 257, (1903)

[39]            In re Lambert, 134 Cal. 626

[75]            In re Meador, 16 Fed. Cas. 1294

[45]            Jet Source Charter, Inc. v Doherty, 148 Cal. App. 4th (2007)

[32]            Jones v H.F. Ahmanson & Co. (1969) 1 C3d 93

[74]            Johnson v Zerbst, 304 US 458

[71]            Kaiser Aetna v US, 444 US 164 (1979)

[65]          Marriage of Jensen, 114 CA 4th 587

[59]          McNutt v General Motors Acceptance Corp. 298 U.S. 178 (1936)

[56,63]       Miranda v Arizona, 384 US 436

[27]          MW Erectors, Inc. v Niederhauser O&M Co. Inc., 36 Cal. 4th 412

[70]          Murdock v Pennsylvania, 319 US 105

[71]          Nollan v. California Coastal Comm'n, 483 U.S. 825 (1987)

[46]          Pacific Mutual Life v Haslip, 499 US 1

[66]          Parrott v Mooring Townhomes Ass'n Inc., 112 CA 4th 876

[10]          Paterno V. State of California (1999) 74 Cal. App.

[60]          Platsky v Cia, 953 F.2d 25

[63]          People v. Perez (1979) 23 Cal.3d 545, 55

[63]          Portillo v. Superior Court, 10 Cal. App. 4th 1829

[53]          Reno v Condon,  528 US 141

[66]          Reynolds v Stockton, 140 US 254 (1891)

[66]    Saff        er v Jp Morgan Chase, 225 CA4th 1239, 1246 (2104)

[73]          State v Wiggenjost, 130 Neb. 450

[29]          State v Wilkinson, 202 Ariz. 27

[13,42]       State Farm Mutual Auto Insurance Co. v Campbell, 538 US 408 (2003)

[36]          Steel Co. v Citizens For Better Environment, 523 US 83, 103 (1998)

[53]          Thompson v City of Louisville, 362 US 199, 204 (1960)

[29]          Town of Gilbert Prosecutor's Office v Downie, 218 Ariz. 466 (2008)

[53]          US v Lopez, 514 US 549

[61]          USA v Smith, 776 F.2d 1104 (1985)

[65]          Varian Med Systems, Inc. v Delfino, 35 Cal. 4th 180

[54,57]       Windsor v McVeigh, 93 US 274 (1876)

[69]          Yick Wo v Hopkins, 118 US 356, 370

Constitution for the united States

[70]                Declaration of Independence

[37]                Article 1, §9 and 10

[36]                Article 3, §2

[67]                Article 4, §2

[71]        5th Amendment

[53]        13th Amendment

[70]        14th Amendment


[67]                Federalist Papers No. 42

[80]                Federalist Papers No. 80


[80]                Articles of Confederation March 1, 1871


[72]                James Madison National Gazette March 29, 1792


Constitution of the State of California

[37]                Article 1, §9


Statutes

Business & Professions Code §7025, §7026, §7028,

[51]        §7026.1

[49]        7068.1(c)(2),

[77]        §7085

[29]        §7096

[52]        §7150

[42]        Civil Code §3294

[9]      CCP §904.1(a)(2)

[9]      CCP §904.1(b)

[56]     CCP §632

[56]     CRC 3.1590(d)

[30]     Mandatory Victims Restitution Act 18 USCS 3363

[37]     Probate Code §810

[37]     Probate Code §811


[65]     Federal Rules of Civil Procedure 12(b) (6)
[57]     Federal Rules of Civil Procedure 52

## STATEMENT OF APPEALABILITY

CCP §904.1(a)(2) makes appealable an order after judgment. §904.1(b) Makes appealable orders or judgments of $5000 or less against a party after entry of final judgment in the main action. Adam is appealing the judgment dated 20th, 2017 (CT 1019) and the order for sanctions dated October 04, 2017 (CT 1507)

## STANDARDS OF REVIEW

Matters presenting pure questions of law, not involving the resolution of disputed facts, are subject to the Appellate Court's, Independent ("de novo") review, where the trial court's ruling or the reasons for its ruling but instead decides the matter anew. See Aryeh v. Cannon Business Solutions, Inc. (2013) 55 Cal.4th 1185, 1191.

Regarding matters of fact, the issue becomes whether the trial court's decision was supported by substantial evidence. "To preclude a review in court from disturbing a verdict, it is essential that the supporting evidence be such as will convince reasonable man who will not reasonably differ as to whether evidence establishes plaintiffs case." Estate of Teed (1952) 112 Cal. App. 2d 638, 644 (Citations omitted). [I]f the word 'substantial' means anything at all, it clearly implies that such evidence must to be of ponderable legal significance. Obviously the word cannot be deemed synonymous with 'an'y evidence. It must be reasonable in nature, credible, and of solid value; it must be "substantial" proof of the essentials which the law requires in a particular case." Id.

When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. Adams v Aerojet-General Corp. (2001) 86 Cal. App. 4th 1324, 1330 (citation omitted). The trial

court's discretion is limited by the applicable legal principles. *Id.* (citation omitted). Where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. *Id.* at 1331 (citation omitted). "A trial court abuses its discretion when it applies the wrong legal standards applicable to the issue at hand. [Citations.]" *Id.* at 1341, citing <u>Paterno V. State of California</u> (1999) 74 Cal. App.

# INTRODUCTION

This case involves a dispute over whether payments were made to an unlicensed contractor.

In August 2015, The Spartan Associates, Inc. a California general contractor filed a lawsuit against Respondents Karen and Gary Humphreys to recover the reasonable value of its construction services amounting to $82,821.53 (CT 49 ).

Respondents filed a counterclaim against Spartan and Adam Bereki, Spartan's sole shareholder for fraud, negligenge, alter ego, etc. (CT 73 )

Trial occurred on March 27-28, 2017.

At trial, Respondents testified to a set of   facts with resounding clarity and contradiction to those they had ever presented before. They testified they had never had an agreement or contracted with Spartan (RT 86-25).

Now, if this were really true, we would reasonably expect to find a Motion For Summary Judgment early on in the case where they emphatically denied ever contracting with Spartan.

But that's not what happened.

Respondents did file a Motion for Summary Judgment, but it was based on the undisputed facts they HAD contracted with Spartan and that Spartan was the general contractor on the project.

"In April of 2012 The Spartan Associates entered into an agreement with the Humphreys [Respondents] for the performance of home improvement work on the Humphreys condominium unit." (CT 232)

"The action was commenced by The Spartan Associates, Inc. (Spartan), the general contractor on the project..." (CT 237-8)

The trial court however awarded judgment in Respondents favor on the grounds they had contracted with Adam Bereki who was not licensed and allegedly required to be.

Respondents are not victims of a deprivation of the Contractors State License Laws, "CSLL's" Rather, they are abusing them.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The facts and elements of procedural history have been incorporated into the legal arguments portion of the brief.

## STATEMENT OF ISSUES ON APPEAL

Does §7028 of the B&P Code apply to natural persons?

What is the definition of a natural person applicable to Chapter 9. Contractors of the B&P Code?

Is the Application For Original Contractors License an unconscionable contract of adhesion?

What is the definition of an individual applicable to Chapter 9. Contractors of the B& P Code?

Was there substantial evidence for the court to determine Adam Bereki, a human being, was a 'person' pursuant §7025 B&P?

Did the court deny Adam Bereki a hearing on his status and standing at law?

Did the court violate due process in determining Adam Bereki, a human being, was a 'person' pursuant to §7025 B&P?

Are judgement awards pursuant to §7031 B&P required to meet the qualifications of punitive damage awards as established by the US Supreme Court in State Farm Mutual Auto Insurance Co. v Campbell, infra ?

What jurisdiction of law is §7031 B&P– criminal? quasi-criminal? civil? martial law?

Does a claim against a human being pursuant to violations of §7028 or §7031 B&P meet the requirements of justiciability as a cause of action in a judicial court?

Did Respondents state a justiciable cause of action pursuant to cases and controversies of Article 3, §2 of the Constitution for the united States?

Was the trial court a judicial court within the meaning of Article 3, §2 of the Constitution for the united States?

Were Respondents barred by judicial estoppel from testifying at trial contrary to their pleadings in their Motion For Summary Judgement regarding their agreement(s) with Spartan?

Did Respondents commit fraud by providing contradictory, false, or misleading facts to the court to obtain a civil advantage?

How has a consumer been deprived of the CSLL protections if a natural person qualifies for a contractors license for a corporation but then contracts with the consumer as a human being?

Is §7031 B&P void for vagueness because the phrase "return all compensation paid" is vague, misleading and/ or ambiguous?

Is §7031 B&P unconstitutional when applied to natural persons or persons because it fails to comply with the Mandatory Victims Restitution Act and case law requiring offsets for benefits conferred?

Did Respondents meet the factual sufficiency of proving every element of their claim against Adam Bereki? If yes, please state which witness provided competent sworn testimony for each element of the offense and what each element of the offense is/was.

Did Respondents have standing to collect damages incurred on behalf of their corporation, Humphreys & Associates, Inc.?

Did the court violate due process in denying Adam a hearing pursuant to Humpreys & Associates, Inc. claiming.

Can a human being in one state have an inferior set of rights or privileges to a human being in another state?

Does a judgment against Adam pursuant to §7031 B&P violate Article 4, §2?

How is a qualifying individual separate from a contractors license? In other words if a license can't exist without a natural person as the qualifying individual, how can be it be said that qualifying individual isn't licensed?

Does a human being have a creator endowed inalienable Right to his time and labor?

Can a human being lawfully be compelled to surrender Rights secured by the Constitution for the United States to obtain a contractors license?

Is the Application For Original Contractors License an unconscionable contract of adhesion?

Do Congress' Interstate Commerce Clause powers extend to the regulations of Chapter 9. of the Business & Professions Code?

Did the trial of this case take place in interstate commerce?

What constitutes "consent of the governed" [see the Declaration of Independence 1776] for any members of the de sure body politic to be regulated other than by the common law?

What form of payment is accepted to pay the judgment, or more accurately, to discharge the obligation in this case?

What jurisdiction does the payment described in [ ] circulate in?

What is the definition of "dollar"?

Is an attorney an officer of the court?

Was the trail court's ruling a Bill of Attainder resulting from a violation of the separation of powers doctrine in that the Governor of California, Jerry Brown, as well as Kevin J Albanese (CSLB), William Bissell, and Judge David Chaffee are all members of the California State Bar?

Did the trial court presume Adam Bereki was incompetent as a contractor?

Did the trial court deny Adam Bereki a hearing as to his competency as a contractor?

Did the court have subject matter jurisdiction to render judgment against Adam Bereki in this case?

Did David Chaffee's behavior in this case violate the good behavior standard of Article 3, Section 1 of the Constitution for the united States?

Did Respondents commit fraud on the court in their allegations Adam Bereki was a 'person' pursuant to §7025 B&P?

Did the trial court and/or Respondents violate due process by failing to respond to Adam Bereki's challenges to jurisdiction as a Writ of Error or demands for Bill of Particulars?

According to the California Secretary of State pursuant to a FOIA request, the Constitution of California of 1849 has NOT been repealed. Is this Constitution still in force in effect?

# I. RESPONDENTS COMMITTED FRAUD ON THE COURT BY MAKING FALSE OR MISLEADING STATEMENTS TO GAIN A CIVIL ADVANTAGE

In February 2016 Respondents filed a Motion For Summary Judgment (CT 231). Their principal argument was on the grounds they had contracted with Spartan and Spartan had failed to comply with the letter of the B&P Code pertaining to the requirements of Home Improvement Contracts as stated in §7159.

The court denied their Motion (CT 477-478).

Respondents Motion stated (CT 232):

> "This motion is made on the grounds that the **undisputed facts** establish each element necessary for [Respondents] to prevail upon each cause of action asserted by [Spartan (Plaintiff)] in its complaint filed herein. Those material facts which are <u>undisputed</u> are:

> 6. In April of 2012 The Spartan Associates entered into an agreement with the Humphreys [Respondents] for the performance of home improvement work on the Humphreys condominium unit.

> 7. The home improvement work to be performed by The Spartan Associates, Inc. on the Humphreys condominium unit had a value in excess of $500."

\* \* \*

One year later at trial in March of 2017, before the *same* judge, Respondents testified to the following when questioned by their counsel:

Respondent Karen Humphreys

Q: Did you ever enter into any agreement with Spartan Associates on this project?

A: No

(RT 42– 26, 46-2, 66-8)

Q: Who did you believe you were contracting with?

A: Adam Bereki and his partner Glenn Overley.

(RT 40– 4)

Respondent Gary Humphreys

Q: Was there any point during Mr. Bereki's involvement in this project in which you thought that you had contracted with Spartan Construction?

A: No.

(RT 86– 25)

Q: Who did you believe you were contracting with as of April 5, 2012, for this particular project?

A: Adam Bereki and his partner Glenn Overley.

(RT 86– 6)

Respondents testified at trial for the first time they had entered into an agreement with Adam Bereki and his partner Glenn Overley.

* *       *

Subsequent to "trial", and based on Respondents testimony, Judge Chaffee issued a minute order where he concluded:

> Spartan was **not** the purported general contractor and although it may have been substituted, it was certainly <u>not with the permission or agreement of [Respondents]</u> (CT 930).

Referring back to Respondents Motion For Summary Judgment, their Memorandum of Points and Authorities (CT 237-8):

> "The action was commenced by The Spartan Associates, Inc. (Spartan), the general contractor on the project…"

This evidence of Respondents fraudulent testimony was discovered after trial. It is raised here as a violation of due process effecting jurisdiction.

## II. THE COURT ERRED IN DETERMINING PAYMENTS MADE TO *LICENSED* CONTRACTORS ARE UNLAWFUL

The trial court erred in ordering disgorgement against Adam Bereki. Not only was he not required to be licensed as will be evidence below, his company, Spartan (a class B general contractor), worked on the project in connection with multiple other contractors and minimally received $758,000 in direct payments.

It was <u>undisputed</u> in this case Spartan was a licensed contractor (CT 232, Line 6) [also to whom §7031 does not apply].

§7031 ONLY EXTENDS JURISDICTION TO PAYMENTS MADE TO UNLICENSED CONTRACTORS.

If this were otherwise it would make contracting *with* a license unlawful. The court's ruling has done just that.

On a project involving multiple entities acting as "contractors" where it is alleged one or more were operating without a license (and were required to be), Plaintiffs must prove:

1) What work was done by whom;
2) That the work done was required to be licensed; and,
3) How much compensation was paid for the work required to be licensed by that specific entity.

The reason for this differentiation of work required to be licensed is that:

1) jurisdiction only extends to work required to be licensed; and,
2) there are many services (such as those performed on this project) that don't require licensing including interior design; packing, moving, and storage; equipment rental; material purchase and resale; and cleaning to name a few.

Respondents produced EXHIBIT [32-2] concerning compensation paid:

Extract of Checks/Wire Transfers from Humphreys to Bereki/Spartan

| Check#/Wire Transfer | Date | Amount | Payee | Running Total |
|---|---|---|---|---|
| 1. 1077 | Apr. 13, 2012 | $15,000 | Adam Bereki | $15,000 |
| 2. 101 | May 17, 2012 | $15,000 | Adam Bereki | $30,000 |
| 3. Wells WT | June 8, 2012 | $40,000 | Adam Bereki | $70,000 |
| 4. Wells WT | June22, 2012 | $30,000 | Adam Bereki | $100,000 |
| 5. Wells WT | July 19, 2012 | $45,000 | Spartan Const. | $145,000 |
| 6. 3815 | Aug, 31, 2012 | $30,000 | Spartan Const. | $175,000 |
| 7. 140 | Nov. 15, 2012 | $50,000 | Spartan Const. | $225,000 |
| 8. 3853 | Dec. 8, 2012 | $30,000 | Adam Bereki | $255,000 |
| 9. 3856 | Dec. 14, 2012 | $30,000 | Adam Bereki | $285,000 |
| 10. 3860 | Dec. 31, 2012 | $28,000 | Adam Bereki | $313,000 |
| 11. 16657 | Jan. 21, 2013 | $80,000 | Spartan Associates | $393,000 |
| 12. 16693 | Feb. 14, 2013 | $60,000 | Spartan Associates | $453,000 |
| 13. 16747 | Mar. 18, 2013 | $75,000 | Spartan Associates | $528,000 |
| 14. 16784 | Apr. 15, 203 | $95,000 | Spartan Associates | $623,000 |
| 15. 16819 | May 24, 2013 | $95,000 | Spartan Associates | $718,000 |
| 16. 3942 | June 8, 2013 | $40,000 | Spartan | $758,000 |
| 17. 16904 | July 31, 2013 | $90,000 | Spartan Associates | $848,000 |

It should be noted that check #10 was misrepresented. The payee is listed as only being "Adam Bereki" when in fact it was "Adam Bereki Spartan Construction" as seen here in EXHIBIT [32-9]:



The facts stated on EXHIBIT [32-2] and relative thereto are simple and appear undisputed by all parties:

1) There were 17 fund transfers.

2) Adam initially requested Respondents make their checks payable to him. They complied and transferred a total of $100,000 to Adam Bereki. (RT 125-19)

3) $10,000 of the above monies was transferred to Spartan's corporate account. (RT 142-1)

4) On or about July 19, 2012, Adam requested Respondents make their checks payable to Spartan. Respondents initially complied then reverted to making two payments to "Adam Bereki", one to "Adam Bereki Spartan Construction" and the final seven to either The Spartan Associates or Spartan. (Several of these payments were from Respondents Corporation as discussed below.)

5) The three payments made to Adam Bereki referenced in "4)" were directly deposited in Spartan's checking account (RT 125-23–126 ).

[As an aside, it is common in small businesses that the owners develop more personal relationships with their clients. Checks are often written to the owners themselves rather than the businesses. And sometimes, due to financial strains, checks don't

always make it into the corporate account. This might not be the letter of the law. But surely is not what the spirit or letter of §7031 was meant to apply to.]

SPARTAN RECEIVED COMPENSATION FOR $758,000 (RT 141-20. 142-6)

## <u>THERE IS NO LEGISLATIVE ENACTMENT EXTENDING JURISDICTION TO DISGORGE COMPENSATION PAID TO LICENSED CONTRACTORS.</u>

A de novo standard of review should be applied to the court's ruling.

## WHO DID THE WORK?

Who did the work is an element of the offense of §7031. (RT 22, 15 & 032817 12-26–13-7)

Spartan's Counsel asked Spartan and Adam the following questions:

Q: Who performed the work at the Via Lido Nord Project?

A: The Spartan Associates

Q: Were you ever doing any of the work in your personal capacity as opposed to on behalf of Spartan Associates?

A: No

[RT 125-2]

It's prudent here to again refer back to Respondents Motion For Summary Judgment, where they stated:

> "The action was commenced **by The Spartan Associates, Inc. (Spartan),** <u>the general contractor on the project</u>…(CT 237-8)

> In April of 2012 The Spartan Associates entered into an agreement with the Humphreys [Respondents] for the performance of home improvement work on the Humphreys condominium unit. (CT 232-17)

Spartan produced the following evidence:

1) Building permits exclusively in Spartan's name with the City of Newport Beach for the scope of work on the project required to be licensed for EXHIBIT 34, (RT 133-3)

2) A sampling of Spartan's multiple contracts with subcontractors, an engineer and a material supplier (RT 103-14–105, 141-8)

3) A Spartan time card example from an employee working on the project EXHIBIT [33].

4) Spartan's contract with ADP/Guard insurance to provide payroll services and workers compensation insurance EXHIBIT [35], (RT134-22)

5) A picture showing Spartan's construction sign prominently displayed on the building.

6) Invoices to Respondents with the heading "The Spartan Associates, Inc." (RT 139-17) EXHIBIT [18]-not admitted

7) a "NOTICE OF CESSATION OF LABOR" addressed to: The Spartan Associates, Inc. EXHIBIT [38]. Spartan is the only entity that received such a notice, not Adam Bereki. In Respondents Motion for Summary Judgment the court concluded Respondents had in fact terminated Spartan (RT 476- last sentence).

8) Interior and Exterior Design Presentation with Spartan Construction or Logo on every page… 60 Pages [RT 67-2–14, EXHIBIT [31] not admitted)

9) Spartan Previous Contracts with Humphreys & Associates, Inc. and family (RT 150-11, 137), EXHIBIT [39]-not admitted by court, Respondents objection.

See especially RT (126-8–141) (032817 13, 7-23) Regarding Spartan's testimony for the work it performed and the work not required to be licensed.

**Spartan performed the work on the project.**

A de novo standard of review should be applied to the court's ruling.

# ANY ACT OR CONTRACT

§7031 extends jurisdiction to 'any act OR contract'.

In MW Erectors, Inc. v Niederhauser O&M Co. Inc., 36 Cal. 4th 412, the California supreme Court clearly addressed this issue:

> They [licensing laws] simply seek to deter them [contractors] from offering or performing services for pay.

> "The disjunctive prohibition against compensation for an 'act' exists to deny any sort of recovery on a theory other than breach of contract. It's purpose is to broaden the bar of §7031 beyond a contract to any unlicensed 'act' with or without a contract."

Therefore:

> 1) if a licensed contractor performs the work and receives compensation they cannot be subject to the penalties §7031 was enacted to establish. Otherwise contracting with a license would be unlawful.

> 2) §7031 only applies to payments made to unlicensed contractors regardless of whether there was a contract or not.

Respondents failed to introduce any evidence as to what actual work was required to be licensed on their project and who did that work.

Spartan testified it obtained the permits for and did the work which was not rebutted.

Respondents paid $20,762 (CT 1014) for a construction expert who was tasked with analyzing the work done on the project whom they could have called to *competently* testify to these matters, but failed to.

Respondents produced EXHIBIT [303] a series of emails between them and Adam discussing the initial scope of work on the project (RT 30, 33-18). The emails contained a discussion of a roof deck they decided not to pursue as well as a cosmetic facelift to one unit which was also underlined abandoned. Respondents ultimately purchased a second adjacent condo unit and commenced a structural remodel of combining the two units which is not mentioned anywhere in EXHIBIT [303] **and was governed by the building plans approved by the City of Newport Beach (EXHIBIT 34) under Spartan's license.**

Not one item of work on that initial agreement was completed because the project changed resulting in the whole second story of the building remodel.

Even if an agreement with Adam would have violated the CSLL's (§7159) (which it doesn't- as will be evidenced below), Respondents would have still had to prove Adam Bereki did the work and in doing so, somehow acted independently of Spartan which the evidence does not reflect.

Adam was Spartan's Responsible Managing Officer and Qualifying Individual, a "licensee" as defined by §7096.

Furthermore §7159 is purely administrative and a violation thereof does not extend jurisdiction to §7031.

A de novo standard of review should be applied to the court's ruling.

# RETURN ALL COMPENSATION PAID

The final element of §7031 involves the return of all compensation paid.

The agreement in this case involved compensation in the form of an exchange of labor and materials – construction services –  for money.

Spartan returned all compensation paid to Respondents in the form of labor and materials for the payments they received.

In fact Spartan's claim was that it had provided approx. $80k in labor and materials which Respondents had failed to compensate it for.

The State of Arizona appears to have a similar statutory scheme regarding contractor licensing laws to California. The exception being Arizona does NOT have a disgorgement law like §7130.

In the Town of Gilbert Prosecutor's Office v Downie, 218 Ariz. 466 (2008), "Gilbert"; the Prosecutors Office filed a criminal case against Mitchell Matykiewicz for operating as a contractor without a license. The municipal court found him guilty and awarded Plaintiffs disgorgement of all consideration paid to Matykiewicz without any offset of benefit conferred on the victim. The case was ultimately heard by Arizona's Supreme Court.

The AZ supreme Court heard the Gilbert case to clarify complete disgorgement was NOT it's finding in State v Wilkinson, 202 Ariz. 27 stating "…a rule of total disgorgement regardless of any benefit conferred on the victim – would unnecessarily strain Arizona's restitution scheme and may lead to absurd and troubling results."

One of the absurd and troubling results the court cautioned was the broad combination of civil liability with criminal sentencing.

The central theme in Gilbert was that disgorgement is not a means of avoiding the due and judicial process requirements of proving damages and that any benefit conferred on the 'victim' must offset those damages. See especially the Mandatory Victims Restitution Act 18 USCS 3363.

The, court said:   "we find no significant difference between returning cash, one form of value, and returning other forms of value, such as permits, chattels, services, or other property."

Here, the court brings up a point so obvious it seems unconscionable to have escaped the rulings found in the countless California disgorgement cases pursuant to §7031.

If Respondents compensated Spartan $200 for a garbage disposal and Spartan provided them with that $200 garbage disposal, has compensation not been returned to them?

It most certainly has.

Nowhere in §7031 does it indicate what specific form of compensation must be returned. However the compensation Spartan returned was commensurate with it's agreement with Respondents.

Respondents had hired a construction expert to analyze the benefit conferred in services rendered. Or, in other words, compensation that had been returned to them. But they failed to call this witness or provide any testimony that any work had been done on their project whatsoever.

AZ Supreme Court Justice Hurwitz in his concurring opinion in Gilbert added:

> The term "economic loss" in […] should be given its commonsense meaning when the case involves contracting without a license. Thus, the victim should receive the difference between what he paid the unlicensed contractor and the value of what he received in return. If the restitution statutes are read to require that the amount paid is invariably the measure of restitution, _an untenable result would obtain_ -- a homeowner who received flawless work from an unlicensed contractor would be refunded the full amount paid but would nonetheless also retain the work performed. **It is impossible for me to view such a victim as having suffered any loss, economic or otherwise, and I therefore concur in PP 1-18 of the majority opinion.** (emphasis added)

§7031(b) reads: … "to recover all compensation paid to the unlicensed contractor for performance of any act or contract."

WHAT §7031 <u>DOES NOT</u> SAY IS THAT ALL COMPENSATION MUST BE RETURNED TWICE!

Spartan already returned compensation in the form of permits, chattels, services, or other property."

A de novo standard of review should be applied to the court's ruling.

# THE COURT ERRED IN AWARDING DISGORGEMENT OF COMPENSATION PAID BY RESPONDENTS CORPORATION WHO WAS NEVER A PARTY TO THE ACTION

Claims for injury or damage to a corporation or its property belong to the corporation, not its stockholders. They have no standing to sue for such wrongs even if the value of their stock is diminished. The loss suffered by the stockholder is deemed incidental to the wrong suffered by the corporation. Jones v H.F. Ahmanson & Co. (1969) 1 C3d 93, 107, and Gantman v United Pacific Insurance Co., 232  C3d 1560.

Returning to Respondents Transfer Extract (EXHIBIT [32-2]) what's conveniently missing is the payor.

EXHIBIT [32] evidences payments to Spartan from Humphreys & Associates, Inc., "H&A", Respondent Gary Humphreys company, who was never a party to this action.  The checks, as evidenced below, total $495,000.






For the $495,000 H&A paid Spartan, H&A was the real party in interest not Respondents. Every action must be prosecuted in the name of the real party in interest. See also (RT 032817 13-24–14-14)

As a party, H&A would minimally have been required to establish it's claim by producing the following evidence:

(1) Its Articles of Incorporation proving it had the chartered authority to engage in the personal vacation home remodel affairs of it's shareholder's, i.e. Gary Humphreys; and that Gary Humphreys was authorized to prosecute actions on it's behalf.

(2) Who it's multiple shareholders were so they could be deposed regarding the authorization for Gary Humphreys to purportedly take a $495,000 loan or withdrawal from the company assets (RT 62-12); *Karen Humphreys was not an owner or shareholder.

(3) A general ledger showing payments to Spartan, and the loan/withdrawal to Gary Humphreys;

(4) Corporate distribution statements indicating $495,000 in profit distributed to Gary Humphreys including K-1's or W-2s. (RT 163-25 –165-5)

(5) Checks, authenticated by H&A's accountant and whomever signed them. Only one of the checks from H&A was signed by Gary Humphreys. The others were not authenticated by the signors or anyone else at trial.

(6) Authenticated S Corporation Election for tax year 2013.

(7) Evidence of any agreement or contract with Spartan or Adam Bereki.

(8) A valid cause of action or claim.

Gary Humphreys testified H&A was a subchapter S elected corporation yet provided no physical evidence of this election or the above evidence required for standing.

Despite this lack of evidence, let alone H&A having never even stated a claim, the court concluded H&A did not have to be a party pursuant it's flowing through to Mr. Humphreys (RT 032817 20-9 – 21-23).

A subchapter S election does not constitute a waiver of due or judicial process which require a claim, notice and a hearing including the opportunity to confront witnesses under oath regarding authenticated evidence.

Respondents had no standing to collect on the claims of H&A's payments to Spartan because H&A is a separate legal entity who utilized the services of Spartan. H&A's payments were to a licensed contractor which is not unlawful.

It should also be noticed Spartan too, was a subchapter S elected corporation. Based on the court's ruling would that mean that since it's profits ultimately flowed through to Adam Bereki, Spartan would never have had to bring a cause of action either?

**Surely if this new legal principle were applied without prejudice to Adam Bereki as it was to Respondents the court could never have awarded judgment against him.**

In all fairness, no one is disputing these payments were made. The end does not justify the means here. Our system of jurisprudence requires the real party in interest to state a claim and for the evidence of that claim to be tested commensurate with a hearing proceeding

according to law, not the arbitrary will or caprice of a judge. These are Rights secured by our Constitutions and Mr. Chaffee's duty is to safeguard NOT trample or deny them.

A de novo standard of review should be applied to the court's ruling.

## THE COURT ERRED BY NOT DISMISSING RESPONDENTS CASE FOR FAILING TO STATE A CONSTITUTIONALLY MANDATED CAUSE OF ACTION RESULTING IN A BILL OF ATTAINDER

Adam Bereki has the Right to a judicial court in the first instance. Cohens v Virginia, 6 Wheat. 264

"A bill of attainder is a legislative act which inflicts **punishment without a judicial trial**. If the punishment be less than death, the act is termed a bill of pains and penalties". Cummings v Missouri, 71 US 277 (1867)

Art 1, §9 of the Constitution of the State of California and Article 1, §9 of Constitution for the united States guarantees that no Bill of Attainder shall be passed.

In order that Adam *not* be subjected to a Bill of Attainder/ Pains and Penalties, he had the Right to a judicial trial.

In Steel Co. v Citizens for Better Environment, 523 US 83, 103 (1998), the united States Supreme Court reiterated the requirements of "cases" or "controversies" for a justiciable cause of action to proceed in the judicial courts of our nation:

> First and foremost, there must be alleged (and ultimately proved) an "**injury in fact**"– harm suffered by the plaintiff that is concrete and or "actual or imminent" not 'conjectural' or 'hypothetical'…

> Second, there must be **causation**– a fairly traceable connection between the Plaintiffs injury and the complained– of conduct of the defendant.

And third, there must be **redressability**– a likelihood that the requested relief will redress the alleged injury.

This triad of injury in fact, causation and redressability constitutes the core of Article III case or controversy requirement…

Respondents alleged claim does not meet even one, let alone all three elements of justiciability. As such, they lacked any standing to sue having completely failed to state a valid, Constitutionally mandated justiciable cause of action.

## INJURY IN FACT

There are three issues surrounding the matter of "injury in fact" in this case:

a) There is no "law" requiring Adam to be licensed (See Section ).

b) Respondents alleged Adam was required to be licensed but presented no evidence at trial of any damages proximately caused by Adam's *alleged* failure to be licensed.

c) Respondents alleged "injury" was based on a false unconstitutional presumption of incompetence requiring licensure. Adam was never given a hearing (and was therefore denied one) pertaining to his competence in "construction". See also Probate Codes 810 and 811.

Ordering judgment against Adam Bereki without evidence of violation of any law is a Bill of Attainder.

\*  \*        \*

The definition of a license is: Permission by some *competent* authority to do some act which, without such permission, would be illegal. Black's Law Dictionary, 4th Ed.

As will be evidenced, §7028 and §7031 ONLY apply to *fictitious* persons because by nature they have no cognitive functioning and are entirely incompetent.

To apply these statutes to Adam Bereki or to require him to be licensed based on such a presumption extends the same presumption of incompetence to him as innate with fictions of law.

"The power to create presumptions is not a means of escape from constitutional restrictions". Bailey v Alabama, 219 US 219.

Moreover, how in the world could the State of California – itself a fiction of law – acquire the competency to then declare its human creators incompetent and require them to submit to such examination?

There is no such authority delegated anywhere in any Constitution.

Pursuant to the Rights of due and judicial process as guaranteed by our Constitutions, Adam had the Right to a hearing on his competency which was denied when the court directed a verdict upon its unfounded, unconstitutional presumption of his incompetence that was also never even disclosed.

See The Estate of Buchman, 123 Cal. App. 2d 546, 559 which directly speaks to the necessity of a competency hearing:

> The fundamental conception of a court of justice is condemnation only after notice and hearing. No one may be deprived of anything which is his to enjoy until he shall have been divested thereof by and according to law…Due process of law does not mean according to the whim, caprice, or will of a judge…it means according to law.

Judicial absolutism is not a part of the American way of life. The odious doctrine that the end justifies the means does not prevail in our system for the administration of justice. The power vested in a judge is to hear and determine, not to determine without hearing.

See also, In re Lambert, 134 Cal. 626 and County of Ventura v Tillett, infra.

Having been denied a hearing on his competence and the fact Respondents presented no evidence of any damages proximately caused by Adam's alleged incompetence, Respondents failed to meet to the requirements of injury in fact.

Furthermore, in regards to Spartan, Adam had passed the licensing requirements. Respondents failed to produce any evidence they had been deprived of the protections of the CSLL's.

The CSLB's requirements for a license however also do not comply with the Constitutional requirements for a judicial hearing and determination of "compentence".

CAUSATION

Without proof of any damages, let alone proof of Adam's "incompetency" in construction, there is no "causation" or connection between Respondents non-existent injury and their complained of conduct.

REDRESSIBILITY

Finally, given no proof of any harm or damages at trial, there was no evidence a punitive damage award against Adam would redress Respondents non-existent injury.

Respondents gave no testimony or evidence at trial of how Adam's alleged failure to be licensed caused them harm.

**Without standing, there is no actual or justiciable controversy, and courts will not entertain such cases.** (3 Witken, Cal. Procedure (3rd ed.1985) Actions § 44, pp 70-72.)

"Typically, … the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. " Allen v. Wright, 468 U.S. 737, 752 (1984)

Respondents failed to bring the court's power into action to adjudicate their claim because they did not file a Constitutionally mandated cause of action pursuant to Article 3, §2.

A de novo standard of review should be applied to the court's ruling.

# 7031 IS UNCONSTITUTIONAL AS APPLIED

Business & Professions Code §7031(b) is unconstitutional as applied by the court to Adam Bereki because it:

    1) violates the Constitutional provisions of punitive damage awards;

    2) does not meet the requirements of justiciability (See Section );

    3) violates due process;

    4) is void for vagueness as to the term compensation in "return all compensation paid".

    5) Is purely punitive and requires Rights guaranteed to a criminal defendant


California authorizes four penalties for "engaging in the business of, or acting in the capacity of, a "contractor" without a license – a criminal penalty, a civil penalty, a shield penalty and a sword penalty:

    1) The first offense **criminal penalty** can be a misdemeanor conviction with a fine up to $5,000, plus restitution for any actual economic loss. The fine is payable to the government, the economic loss to the customer.

    2) The **civil penalty** is a citation by the Registrar of Contractors, an administrative hearing, and a penalty up to $5,000, except for certain named violations.   The civil penalty is payable to the government.

    3) The **shield penalty** bars the unlicensed contractor from using the courts to collect money owed for work performed.   This penalty vindicates the judicial system by preventing use of the court to enforce unlicensed work performed in violation of law.

4) The **sword penalty** is disgorgement. It allows the customer to recover all compensation paid to the unlicensed contractor. Disgorgement, like compensatory damages, is payable to a private party, not the government.

Disgorgement is a form of damages assessed against the unlicensed contractor and paid to its customer for the violation of the license law.

Disgorgement is a monetary award to a private party, not the government.

Punitive damages are defined as being independent from, and not in any way compensation for, any actual damages suffered. Regardless of whether disgorgement is a legal or equitable remedy, and regardless of what it is labeled, disgorgement is clearly a penalty, unrelated to actual damages as it has been applied by the courts in the form of punitive damages paid to a private party.

California courts have repeatedly held disgorgement to be lawful – on its face – despite the potential harshness or draconian nature of the remedy. However, even though the Legislature allows juries to assess punitive damages under a statute that is clearly constitutional on its face (Civil Code § 3294), the courts routinely determine whether punitive damages assessed by a jury in a particular case exceed constitutional bounds. The same must be true for disgorgement.

## 7031 VIOLATES THE PROVISIONS OF PUNITIVE DAMAGE AWARDS

The U.S. Supreme Court has established a three part test for evaluating the validity of punitive damages in civil cases. See State Farm Mutual Auto Insurance Co. v Campbell, 538 US 408 (2003):

    1) the reprehensibility of the conduct being punished;

    2) the reasonableness of the relationship between the harm and the award; and

3) the difference between the award and the civil penalties authorized in comparable cases.

Under this test, use of the disgorgement sword to *hypothetically* take anything more than nominal damages from Adam and give them to Respondents fails every element of the test for the following reasons:

REASONABLENESS

First, the relationship between the "harm" and disgorgement of $848,000 is grossly disproportionate. At "trial", <u>Respondents presented no evidence of any damages proximately cause by Adam's *alleged* failure to be licensed.</u>

Compensatory damages are intended to redress the concrete loss the 'victim' has suffered by reason of the 'perpetrators' wrongful conduct. By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution. Id 416

California and federal courts have constrained awards of punitive damages to a reasonable relationship to the actual damages suffered.

In the instant case, disgorgement of anything would be an infinite multiple of the non-existent damages.

COMPARABLE CASE AWARDS

Second, the difference between the $848k disgorgement award and both the criminal and civil penalties authorized in comparable cases is astronomic. As previously noted, the maximum criminal penalty is $5,000 plus restitution of <u>actual</u> economic loss.

*Again, Respondents presented no witnesses or evidence at "trial" of any actual loss whatsoever.*

The maximum civil penalty that could be assessed by the CSLB is also $5,000. **Thus, a "disgorgement" of $848k would be 169 TIMES the comparable criminal or civil penalty.**

The judgment in this case is more than three times the financial penalty for treason, – the highest crime of our country– which is $250,000. Furthermore, it forces Adam into elements of financial ruin and bankruptcy.

Punitive damages in excess of $5000 therefore do not pass Constitutional muster.

REPREHENSIBLE

Third, the conduct is not reprehensible. Not only was there no evidence of any damages whatsoever, had there been, they would have been purely economic. No one was hurt or injured. There was no evidence of fraud, oppression, or malice.

No evidence was presented the compensation by Spartan or Adam had not been returned.

Respondents interacted exclusively with Adam Bereki who had the work experience and passed the competency exam to qualify for Spartan's contractors license. It is unknown how Respondents could therefore be deprived of the CSLL protections.

Prior to hiring Adam Bereki or Spartan, Respondent Gary Humphreys was intimately aware of Adam's competency by the previous projects he had done at Respondents business and for other family members (RT 93–10).

Furthermore, as mentioned, Mr. Humphreys is a nationally recognized expert in project management and government contractor who teaches project management around the world including to the construction industry. He is not a member of the public who needs protection from incompetence and dishonesty from those who provide building and construction services. In fact he has decades more training and experience than Adam Bereki who doesn't even possess a college degree.

While Mr. Humphreys claims he does not have specific experience in building construction itself, the project management principles he teaches most definitely are fundamental to every project. The preface of his near eight hundred page book on project management states: "Please do not conclude that a sample does not apply to those of you in the construction, software, or other industries." (CT 400-401, RT 97)

See Jet Source Charter, Inc. v Doherty, 148 Cal. App. 4th 1, (2007)

A de novo standard of review should be applied to the court's ruling.

## 7031 VIOLATES DUE PROCESS

See <u>Pacific Mutual Life v Haslip</u>, 499 US 1 and <u>Honda Motor Co. Ltd v Oberg,</u> 512 US 415

A de novo standard of review should be applied to the court's ruling.

# §7031 IS PURELY PUNITIVE AND THEREFORE A PENAL ACTION REQUIRING PROCEEDINGS GUARANTEED TO A CRIMINAL DEFENDANT

Referring back to Gilbert, supra, one of the absurd and troubling results the court cautioned was "the broad combination of civil liability with criminal sentencing."

In State Farm, supra, the Supreme Court stated:

> Great care must be taken to avoid use of the civil process to assess criminal penalties that can be imposed only after the heightened protections of a criminal trial have been observed, including, of course, its higher standards of proof. Punitive damages are not a substitute for the criminal process, and the remote possibility of a criminal sanction does not automatically sustain a punitive damages award. *Id* 428

Violation of a regulatory statute is quasi-criminal. However, there is no such jurisdiction of law found in our Constitutions known as "quasi-criminal". Due to the punitive and nature of §7031 in contradistinction to the maximum and civil penalties, the Rights afforded a defendant in a criminal proceeding must be applicable and were denied to Adam.

A de novo standard of review should be applied to the court's ruling.

# THE COURT ERRED IN DETERMING ADAM BEREKI, A HUMAN BEING, WAS A FICTITIOUS PERSON

The Contractors State License Laws, apply to very different and distinct entities or "persons".

At times, they apply exclusively to natural persons (human beings) while at other times they apply to _fictitious_ persons, such as corporations.

As such, it is crucial to be aware and vigilant about which person is being referenced because THE LAW MAY NOT APPLY.

**The court determined Adam violated §7031(b) but §7031(b) ONLY applies to _fictitious_ persons, which Adam is clearly NOT.**

7031(b) has two requisite elements to which it extends jurisdiction. Those two elements are:

    1) The class of **'persons'** to whom it applies; and,

    2) the return of all compensation paid to an unlicensed contractor for any act or contract.

Each of these elements of the offense will be examined individually below, beginning with whom the law applies to.

The Business & Professions Code, Chapter 9, §7000 et seq., defines two different, separate "persons" to whom the codes apply. Those are a 'person' otherwise known as a '_fictitious_ person' or fiction of law, and a '_natural_ person'.

'_Fictitious_ Persons' are defined in the beginning of the Chapter at §7025(b):

    "Person" as used in this chapter includes an individual, a firm, partnership, corporation limited liability company, association, or other organization, or any combination thereof.

Shortly thereafter, the code identifies the other class of person, a natural person at §7168.1.

> The <u>person</u> qualifying on behalf of an individual or firm under paragraph (1), (2), (3), or (4) of subdivision (b) of Section 7068 shall be responsible for exercising that <u>direct supervision and control of his or her employer's or principal's construction operations to secure compliance with this chapter and the rules and regulations of the board.</u>
>
> (c)(2)   "Person" is limited to natural persons, <u>notwithstanding</u> the definition of "person" in Section 7025.

This section is in reference to the class of person who can qualify for a contractors license. It states that ONLY a <u>natural person</u> can qualify for a license.

The legislature had very obvious intent by using the words <u>**"notwithstanding"**</u> because a corporation or *fictitious* person – an entity with no cognitive functioning – cannot qualify for it's own license.

Here, the legislature made it clear only a natural person – a human being –  could qualify. In doing so they completely differentiated a natural person from that of the fictitious person referenced in §7025(b).

| PERSON | NATURAL PERSON |
|---|---|
| individual, a firm, partnership, corporation limited liability company, association, or other organization, or any combination thereof. | |

So now that these two different classes of person are identified, we then need to examine which class of 'person' is required to be licensed.

§7028(a) makes it a misdemeanor for a **person** to engage in the business of, or act in the capacity of, a **contractor** within this state under either of the following conditions: (1) The *person* is not licensed in accordance with this chapter…

NOWHERE IN CHAPTER 9 IS THERE ANY KNOWN CODE THAT REQUIRES A NATURAL PERSON TO BE LICENSED.

In Rundle v Delaware & Raritan Canal Co., 55 US 80, 99 (1852) Mr. Justice Daniel in his dissent warned of the issue surrounding differentiating corporations from human beings more than 150 years ago:

> …This must mean the natural physical beings composing those separate communities, and can by no violence of interpretation be made to signify artificial, incorporeal, theoretical, and invisible creations. A corporation, therefore, being not a natural person, but a mere creature of the mind, invisible and intangible, cannot be a citizen of a state, or of the United States, and cannot fall within the terms or the power of the above mentioned article, and can therefore neither plead nor be impleaded in the courts of the United States.

> These principles are always traceable to a wise and deeply founded experience; they are therefore ever consentaneous and in harmony with themselves and with reason, and whenever abandoned as guides to the judicial course, the aberration must lead to BEWILDERING UNCERTAINTY AND CONFUSION.

The trial court determined Adam was a *fictitious* person and then adjudged him according to §7031(b).

Adam was never required to be licensed because he is a human being and therefore was NOT subject to §7031(b).

To further prove this, §7031(b) must be examined to determine which class of "person" it applies to:

> (b) Except as provided in subdivision (e), a **person** who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.

**It is clear the "person" being referenced in §7031 is precisely the '*fictitious* person' defined by §7025(b) not a 'natural person' as referenced in §7068.1**

It is also be prudent to examine what class of 'person' defines a "contractor":

> §7026.1 states the term "contractor" includes all of the following:
>
> (2) (A) Any **person**, consultant to an owner-builder, firm, association, organization, partnership, business trust, corporation, or company…

Here again, the code continues to only refer to a *fictitious* 'person' pursuant to §7025(b) and never references that it applies to 'natural persons'.

This isn't just some fluke of the legislature. The legislature clearly defined a natural person as <u>notwithstanding</u> a fictitious person. This is also obvious in our own human experience that a human being is not a fiction.

Furthermore, an example such as Evidence Code §175 clearly illustrates the legislature knows exactly when it wants to indicate the law applies to *both* natural and fictitious persons:

> "Person" includes a *natural person*, firm, association, organization, partnership, business trust, corporation, limited liability company, or public entity.

Yet another profound example is found in Chapter 9. Contractors where the legislature redefined an entire Article as applying <u>only</u> to natural persons, striking out its previous application to *fictitious* persons.

> Current §7150:
> "Person" as used in this article is limited to natural persons, notwithstanding the definition of person in Section 7025.
>
> Previous §7150. (The above amendment happened in 1972):
>
> Substituted the section for the former section which read: " 'Person' includes any person, firm, association, organization, partnership, business trust, corporation, or company.

The final question then is: is an "individual" in §7025(b) the same as a natural person? a human being? According to 7068.1(c)(2) it can't be. For if it were, 7068.1(c)(2) wouldn't make sense. The statute would read like this:

> "Person" is limited to natural persons, notwithstanding the definition of "*natural* person" and other "persons" in Section 7025.

If an individual were a natural person, why use a different word to convey the exact same meaning? An individual what?

The word is different because the lawful status is different.

It turns out an "individual" is what becomes of the business name or DBA on an Application For Original Contractors License. This name is what the CSLB considers the entity in commerce and like all other fictitious entities in commerce, are spelled in all CAPITAL LETTERS. Each and every business name, including those in the name of human beings is

represented in all capital letters as the license name. These names are what the CSLB then sells in large document bundles as articles of commerce for several hundred dollars.[1]

This is why pursuant to §7068.1 a natural person is required to qualify for an "individual":

> The <u>person</u> qualifying on behalf of an *individual* or firm under paragraph (1), (2), (3), or (4) of subdivision (b) of Section 7068 shall be responsible.

A human being is not "in commerce".[2]

A human being has creator endowed inalienable Rights as secured by our Constitutions which are vastly different from revocable privileges extended by government to corporations and other fictions of law. The Right to enjoy the ownership of one's body and products of his or her faculties (property) being one of them. See Section.

Because <u>'whom' the law applies to is an essential element of the offense</u>, Respondents had the burden of proof at trial that §7031 extended jurisdiction to the class of "persons" of which Adam Bereki, a human being is. They failed to meet this burden.

Respondents instead, repeatedly and fraudulently represented to the court Adam was a "person" or "individual" pursuant to §7025(b) required to be licensed. (RT 18, 23 – RT 19, 7; CT 872, 24-25; CT 870, 21). There is no such law requiring Adam to be licensed.

There is no evidence on the record of this court or anywhere else Adam Bereki is not a human being or is incompetent.

 See Thompson v City of Louisville, 362 US 199, 204 (1960):

---

[1] See also Reno v Condon, 528 US 141 & US v Lopez, 514 US 549.

[2] See 13th Amendment US Constitution

"Under the words of the ordinance itself, if the evidence <u>fails to prove all three elements</u> of this [ ] charge, the conviction is not supported by evidence, in which event it <u>does not comport with due process of law.</u> The record is entirely lacking in evidence to support any of the charges.

@206: Just as "[c]onviction upon a charge not made would be sheer denial of due process," so is it a violation of due process to convict and punish a man without evidence of his guilt.

As a result, §7031 does not extend jurisdiction to the court in this case to adjudicate Respondents claim in their favor.

The trial court denied Adam a judicial hearing on his status and standing.

It is unknown exactly what status Adam has beyond "human being" or "man". It is certainly not any one of the fictions of law as defined  by §7025. He cannot be adjudged without a lawful hearing. See <u>Windsor v McVeigh</u>, 93 US 274 (1876); <u>The Estate of Buchman,</u> 123 Cal. App. 2d 546

The trial court directed a verdict as to an essential element of the offense charged:

<u>Bass v US,</u> 784 F.2d 1282:

On appeal, Bass asserts seven points of error, including (1) that the district court should not have instructed the jury that, as a matter of law, he was an "employee…"

This court finds that the district court usurped the role of the jury as the fact–finder when it instructed that, as a matter of law, Bass was an "employee." Because this

instruction <u>directed a verdict as to an essential element of the offense charged</u>, we reverse Bass's conviction and remand for a new trial."

A de novo standard of review should be applied to the court's ruling.

# THE TRIAL COURT ERRED, SANCTIONING A BILL OF ATTAINDER WHEN IT REFUSED TO PRODUCE A FINDINGS OF FACTS AND CONCLUSIONS OF LAW

CCP §632, and CRC 3.1590(d) are Unconstitutional as they sanction a Bill of Attainder.

On 10/23/17, Adam requested a Statement of Decision (findings of fact and conclusions of law, "FFCL") (CT 1518).  All of the findings and conclusions requested were relevant to Adam presenting a meaningful and substantive appeal. Adam acknowledged the request was not within the ten days as 'required' by CCP §632 and/or Rules of Court, Rule 3.1590(d). However, these Rules conflict with due process and the Supreme Court's ruling in Miranda v Arizona, 384 US 436, 491:

> "Where rights secured by the Constitution are involved, there can be no rule-making or legislation which would abrogate them."

Any and all allegedly applicable 'state' laws, rules, regulations, etc., even if lawfully enacted, do not apply to an appeal or petition invoking Rights secured by the Constitution, since their misuse could, and very often would, result in denying the Right to invoke the judicial power of the united States.

To someone especially such as Adam who never received any formal training or education in the Constitution, history, and laws of the United States necessary to effect litigation such as in this case, let alone an appeal the FFCL's of the trial court are unquestionably required.

A failure to provide a "FFCL" is a violation of due and judicial processes, resulting in a Bill of Attainder, or its lesser equivalent, a Bill of Pains and Penalties. It denies the full Right of a lawful

hearing including a final decision and to be informed of the nature and cause of charges against oneself. See e.g. Windsor v McVeigh, supra

The trial court denied Adam's Request (CT 1518) for "failing to comply with statutory requirements per rules of court" (CT 1533).

Without the FFCL's there has been no decision. If there is no decision, there is potentially nothing to appeal amongst other serious implications.

> Findings of fact and conclusions of law constitute decision of court, <u>not its statements or opinions expressed during course of trial</u>. <u>Hirsch v. Hancock</u>, 173 Cal. App. 2d 745,  (1959)

> The decision is the concluding part of a trial by the court without a jury and is requisite to judgment. <u>In re Sullivan</u>, 139 Cal. 257, (1903).

See also FRCP Rule 52.

The court did issue a Minute Order for trial  (CT 951 ) however that fails to state even the most basic requisites of a lawful judgment establishing the courts jurisdiction of the subject matter such as:

> 1) What code sections or laws were violated;

> 2) Who the witnesses were, what they testified to and how the court determined their competency;

> 3) What facts were evidenced and how they were admitted (ie not hearsay etc);

> 4) How the facts were material, relevant, and trustworthy;

> 5) How the evidence presented substantiated each element of the offense charged with.

The elements of jurisdiction must be found on the record of each case to empower the court to adjudicate a claim and are not found on the record of this case.

A de novo standard of review should be applied to the court's ruling.

# THE TRIAL COURT ERRED COMMITTING FRAUD AND OTHER DUE PROCESS VIOLATIONS SUBSEQUENT TO TRIAL

A de novo standard of review should be applied each of the court's rulings.

Adam challenged jurisdiction subsequent to trial three separate times:

1) Writ of Error on 4/18/17
2) Demand For Bill of Particulars Pertaining (CT 1117)
3) Motion to Compel Bill of Particulars
4) Request For Statement of Decision (Findings of Facts and Conclusions of Law)

See McNutt v General Motors Acceptance Corp. 298 U.S. 178 (1936):

> ….a plaintiff in the District Court must plead the essential jurisdictional facts and must carry throughout the litigation the burden of showing that he is properly in court; **if his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof,** and, even where they are not so challenged, the court may insist that the jurisdictional facts be established by a preponderance of evidence, or the case be dismissed.

Respondents and the court violated due process failing to respond to the mandatory jurisdictional challenges.

WRIT OF ERROR

Prior to the  courts order for judgment on 4/20/17, Adam filed and properly served a Writ of Error (Order to Vacate Judgment).

Adam raised the jurisdictional issues pertaining to Humphreys & Associates, Inc.'s standing (CT 995) and that payments to licensed contractors were not unlawful (CT 997), amongst others.

Respondents and the court failed to even acknowledge let alone reply.

Standing is jurisdictional and may be raised at any time. <u>Common Cause v. Board of Supervisors</u>, 49 Cal. 3d 432

The court had a duty to notify Adam if his pleadings were deficient and how, specifically, to correct them, but failed to.

> See <u>Haines v Kerner</u>, 404 US 459:
> Pro se litigants are held to less stringent pleading standards than bar licensed attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims.

> And, <u>Platsky v Cia</u>, 953 F.2d 25:
> Court errs if court dismisses the pro se litigant without instruction of how pleadings are deficient and how to repair pleadings.

DEMAND FOR BILL OF PARTICULARS (CT 1117)

On 6/28/17 Adam then challenged jurisdiction by serving a lawful Demand For Bill of Particulars pertaining to Nature and Cause of the Accusations.

Please see questions : 19, 21, 22 (CT 1121), 14 (CT 1120), 4 (CT 1118)

Most especially 37(CT 1123):

37. Your office has in actual possession conclusive evidence that Adam Alan Bereki is in Fact a "person" within the meaning of Business and Profession Code Section 7025:
( ) Yes: (specify):_____
( ) No

Respondents and the court again failed to answer let alone acknowledge this jurisdictional challenge.

## MOTION TO COMPEL BILL OF PARTICULARS[3]

A Bill of Particulars is NOT a discovery motion. See USA v Smith, 776 F.2d 1104 (1985)

On 8/25/17, Adam filed a Motion to Compel Bill of Particulars (CT 1160).

Respondents filed their Opposition on 9/13/17 (CT 1175) alleging Adam was abusing the discovery process.

Adam filed a Reply to Opposition and Motion to Disqualify Judge For Cause on 9/27/17.

See especially (CT 1202) concerning the natural person argument and (CT 1211) evidenced below:

> Jurisdiction can be challenged at any time, most particularly when I had neither effective assistance of counsel and/or had no way to know about the absence of jurisdiction since there are no meaningful and substantive curricula in the mandatory public "education" system for the study of the Constitution, history and laws of the united States.

> When jurisdiction is challenged, it is incumbent upon the party asserting jurisdiction to prove, on the record wherein there are no jurisdictional failings. Where

---

[3] It should be noted the following Clerk's Transcript documents referenced after CT 1150 were denied admission to the Appeal record by this court. It is presumed Madam Presiding Justice was unaware of the due process violations contained therein, including an order for sanctions, all of which effect the judgment and jurisdiction of the trial court in this case. With all due respect Adam has nevertheless referenced the documents herein in the hopes the court will reexamine its decision given this additional information and allow the documents admitted.

the court has actual knowledge of a jurisdictional failing, the court has a non-discretionary duty to dismiss the matter and vacate all orders relative to the matter which support the plaintiff.

Upon receipt of the direct attack on jurisdiction, the court had a duty to (1) inform me if my pleading was defective and how to correct it (if it was defective) and/or (2) take no action until Plaintiffs met their burden of proof. Either or both of these duties is attributable to at least the oath of office of the judge pursuant to Article VI, Section 3 of the Constitution for the united States since he is bound by "this Constitution and laws enacted in pursuance thereof".

A hearing had been scheduled to hear the Motion on 9/29/17. Due to Adam's Motion to Disqualify the Judge For Cause, he believed the hearing would not be held due to the necessity of finding another judge for the hearing and providing opposing counsel and/or the judge opportunity to reply. As such Adam did not attend. He emailed Respondents counsel to notify him of the same a day prior to the hearing.

On 9/29/17, despite having notice of Adam's non–attendance and the Motion to Disqualify Judge For Cause, Mr. Bissell appeared and proceeded with the hearing anyway. It is believed he never informed the court of Adam's Reply to Respondents Opposition or the Motion to Disqualify despite having been served and there digital evidence of his receipt.

Adam had attempted the day before to call the court to confirm the hearing had been cancelled but was unable to make contact despite repeated calls. He also emailed Spartan's counsel of his intent to cancel as well. Spartan did not make an appearance.

The court ultimately sanctioned Adam $1500 for apparently abuse of the discovery process also claiming the Bill of Particulars "appears to be irrelevant". (CT 1460-1461)

Adam has a Right to challenge jurisdiction at any time and to know the nature and cause of the accusations against him at any time. The elements of jurisdiction must appear on the record but are not there and were denied to Adam.

The Order For Sanctions can be found at (CT 1507).

See also Adams First Amended Reply to Opposition, Motion to Vacate Void Judgment, and Request for Emergency Protective Order (CT 1466) which were also never given hearing.

When a Notice of Appeal is filed, the trial court loses jurisdiction to do anything with the case that would affect the judgment until determination of the appeal. Portillo v. Superior Court, 10 Cal. App. 4th 1829 citing People v. Perez (1979) 23 Cal.3d 545, 554

ORDER STRIKING STATEMENT OF DISQUALIFICATION (CT 1510)

On 10/6/17 Judge Chaffee filed an Order Striking Statement of Disqualification. In addition to using the Civil Code of Procedure and California Rules of Court to deny Adam's Rights secured by the Constitution (see Miranda v Arizona, supra), Chaffee claims "[Adam's] Reply [and' Motion to Disqualify are untimely and demonstrate on their face no legal grounds for disqualification, they are order stricken.."

There is no such thing as an "untimely" challenge to jurisdiction. Where a court has lost jurisdiction due to fraud and violations of due process, is not merely a "disagreement with the Court's judgment, rulings, and findings" (CT 1513, 16).

The assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice. Davis v. Wechsler, 263 US 22, 24.

# THE TRIAL COURT LACKED SUBJECT MATTER JURISDICTION TO RENDER ANY JUDGMENT DUE TO FRAUD, DUE PROCESS VIOLATIONS, AND RESPONDENTS FAILURE TO PROVE THE FACTUAL SUFFICIENCY OF THEIR CLAIM

A court of California does not have jurisdiction to render a judgment that violates the California Constitution or the Constitution of the United States.
County of Ventura v Tillett, 133 Cal. App. 3d 105

While a court has jurisdiction to hear and decide cases, it does not have jurisdiction adjudicate a case upon the commission of a crime such as fraud or violations of due process such as those evidenced above that occurred in this case.

A court only has subject matter jurisdiction to adjudicate a claim upon substantial proof of the factual sufficiency of each element of that claim by competent sworn testimony regarding authenticated evidence.

In the case of a violation of statute, jurisdiction *only* extends once the factual sufficiency of each element of the offense has been met.

In this way, subject matter jurisdiction is a two sided coin.

One side of the subject matter jurisdiction coin involves the common law, statutory authority, or contract upon which there was a duty to do or not do something and the court's empowerment to deal with that subject matter as authorized by Constitution or Statute.

The first prong of the jurisdiction analysis is to determine which state courts have subject matter jurisdiction. The court in which the action is filed must be competent

under California law to render a judgment; i.e., the state constitution or statutes must empower it to adjudicate the type of lawsuit involved and to render a judgment for the amount in controversy. [See Marriage of Jensen (2003) 114 CA4th 587, 593, 7 CR3d 701, 705 (citing text)]

"The principle of 'subject matter jurisdiction' relates to the inherent authority of the court involved to deal with the case or matter before it." [Varian Med. Systems, Inc. v. Delfino (2005) 35 C4th 180, 196, 25 CR3d 298, 311]

The other side of the coin (or second prong) rests on the factual sufficiency of the claim. Without the factual sufficiency of the claim there would be no proven violation of law for the court to render judgment/verdict. The court would not have jurisdiction over the subject matter because a law has not been proven to have been violated – there is no proof of a claim for it to adjudicate. At that point the court has a non-discretionary duty to dismiss the case for want of subject matter jurisdiction. See FRCP 12(b)(6)

The factual sufficiency of the claim must establish there was a known duty the breach of which was the causation of damages as attested to by at least one competent fact witness testifying under oath and subject to cross examination regarding authenticated evidence.

See also Buis v State, 1990 OK CR 28.

Respondents:

1) failed to offer any competent sworn testimony Adam Bereki was a person to whom §7028 and §7031 applied

2) failed to offer any competent sworn testimony as to what work Adam Bereki did on their project that was required to be licensed and the amount he was compensated for

that work required to be licensed as differentiated from work done NOT required to be licensed or the work done by Spartan.

3) failed to controvert Spartans testimony and evidence of obtaining the permits, doing the work, and receiving $758,000 in compensation.

4) committed fraud on the court by making false or misleading statements to gain a civil advantage.

5) failed to prove they had paid personally $495,000 that was paid by Humphreys & Associates, Inc. and therefore had no standing to collect on its damages.

6) Failed to respond to multiple challenges to jursidiction violating due process

7) Failed to state a justiciable cause of action and subjected Adam to an unknown jurisdiction of law foreign to our Constitutions.

The trial court did not have cognizance of a case pursuant to §7028 or §7031 B&P against Adam Bereki because these causes of action do not meet the requirements for a justiciable controversy as evidenced.

The proper parties were NOT present because there were none who could be pursuant to the first requirement. See Reynolds v Stockton, 140 US 254, 268 (1891)

See also Saffer v Jp Morgan Chase, 225 CA4th 1239, 1246 (2104); Parrott v Mooring Townhomes Ass'n Inc., 112 CA 4th 876; Chromy v Lawrance, 233 CA3d 1521, 1527.

A de novo standard of review should be applied to the court's ruling.

# THE TRIAL COURT ERRED IN VIOLATING THE PRIVILEGES AND IMMUNITIES CLAUSE, ARTICLE 4, §2, OF THE CONSTITUTION FOR THE UNITED STATES

Article 4, §2 states:

> "The Citizens of each State shall be entitled to all Priviliges and Immunities of Citizens of the several States".

As a result of Article 4, §2 no Citizen can have an inferior set of Rights to any other Citizen.

Refer also to:

FEDERALIST PAPERS NO. 42,

…[T]hose who come under the denomination of free inhabitants of a State, although not citizens of such State, are entitled, in every other State, to all the privileges of free citizens of the latter; that is, to greater privileges than they may be entitled to in their own State.

FEDERALIST PAPERS NO. 80:

It may be esteemed the basis of the Union, that "the citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States."

ARTICLES OF CONFEDERATION MARCH 1,1871:

The better to secure and perpetuate mutual friendship and intercourse among the people of the different States in this Union, the free inhabitants of each of these States, paupers, vagabonds, and fugitives from justice excepted, shall be entitled to all privileges and immunities of free citizens in the several States; and the people of each State shall free

ingress and regress to and from any other State, and shall enjoy therein all the privileges of trade and commerce, subject to the same duties, impositions, and restrictions as the inhabitants thereof respectively, provided that such restrictions shall not extend so far as to prevent the removal of property imported into any State, to any other State, of which the owner is an inhabitant; provided also that no imposition, duties or restriction shall be laid by any State, on the property of the United States, or either of them.

The State of Arizona does not have a disgorgement statute. It's statutes can be found online: https://roc.az.gov/rules

A de novo standard of review should be applied to the court's ruling.

# IT IS UNCONSTITUTIONAL TO REQUIRE THE SURRENDER OF CONSTITUTIONALLY RECOGNIZED RIGHTS IN EXCHANGE FOR A PRIVELEGE

For, the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself.

[Yick Wo v. Hopkins, 118 U.S. 356, 370 (1886)]

Whose property is Adam Bereki's body?

Who is entitled to the property Rights of his bodily faculties?

The 14th Amendment states:

"…nor shall any State deprive any person of life, liberty, or **property**, without due process of law…

If a human being must ask the government for permission to use his or her body to earn a living and/or must pay a fee for the privileged (revocable) use thereof then clearly the government believes it owns the property Rights of that human beings time and labor.

A State cannot convert a constitutional Right into a privilege and then require a license and charge a fee for it. <u>Murdock v. Pennsylvania,</u> 319 US 105 (1943).

The Declaration of Independence states:

"We hold these truths to be self-evident, that all men are created equal, that they are **endowed by their Creator with certain unalienable Rights**, that among these are Life, Liberty and the pursuit of Happiness. That to secure these rights, Governments are instituted among Men, deriving their just powers from the <u>consent of the governed</u>…"


Regulating an industry does NOT require unconstitutional presumptions of incompetence or relegations of one's creator endowed inalienable Rights.

Blacks Law Dictionary 4th Ed. P 1693 defines Unalienable or Inalienable as: incapable of being a-lien-ed, that is, sold and transferred.

"We have repeatedly held that, as to property reserved by its owner for private use, "the right to exclude [others is] *one of the most essential sticks in the bundle of rights that are commonly characterized as property.*" *(citations omitted)* <u>Nollan v. California Coastal Comm'n</u>, 483 U.S. 825 (1987)


CHECK THESE CITES

"In this case, we hold that the "right to exclude," so universally held to be a fundamental element of the property right, [11] falls within this category of interests that the Government <u>cannot take without compensation</u>."

> [11]…As stated by Mr. Justice Brandeis, "[a]n essential element of individual property is the legal right to exclude others from enjoying it." <u>*International News Service v. Associated Press,* 248 U. S. 215</u>, (1918) (dissenting opinion) <u>Kaiser Aetna v. United States</u>, 444 US 164 (1979).


Property Rights include Rights protected by the Constitution which include the RIGHT to control use of it by others, the Right to exclude others from benefitting from it's use in any way and the Right to penalize others for unauthorized use.[4]


Just what exactly the Constitutional Rights are pertaining to one's occupation or "use of faculties" was elaborated by James Madison, the father of our Constitution:

> This term [property] in its particular application means "that dominion which one man claims and exercises over the external things of the world, in exclusion of every other individual." In its larger and juster meaning, it embraces every thing to which a man may attach a value and have a right; and which leave to every one else, the like advantage.

---

[4] See 5th Amendment and Just Compensation Clause 14th Amendment

…He has property very dear to him in the safety and liberty of his person.

He has an equal property in the free use of his faculties and free choice of the objects on which to employ them.

In a word, as a man is said to have a right to his property, he may be equally said to have property in his rights.

"Government is instituted to protect property of every sort… **This being the end of government,** that alone is a just government, which <u>impartially</u> secures to ever man, whatever is his own.

…That is not a just government, nor is property secure under it, where arbitrary restrictions, exemptions, and monopolies deny to part of its citizens that free use of their faculties, and free choice of their occupations, which not only constitute their property in the the general sense of the word; but are the means of acquiring property so called.

…If there be a government then which prides itself on maintaining the inviolability of property; which provides that none shall be taken directly even for public use without indemnification to the owner, and yet directly violates the property which individuals have in their opinions, their religion, their persons, **and their faculties;** nay more, which indirectly violates their property, in their actual possessions, in the labor that acquires their daily subsistence, and in the hallowed remount of time which ought to relieve their fatigues and soothe their cares, the interference will have been anticipated, that <u>such a government is a not a pattern for the United States."</u>
–The National Gazette, March 29, 1792

"The protection of these faculties" Madison wrote in The Federalist No. 10, "is the first object of government."

The right to acquire the means of supporting life by honest labor and skill is an inherent right of a law-abiding citizen. State v Wiggenjost, 130 Neb. 450 (Supreme Court)

The CSLL's deny Adam Bereki and other human beings their property Rights to the use of their bodily faculties in the pursuit of happiness to earn a living requiring not only a surrender of Constitutionally protected Rights but the purported and impossible conversion of that Right into a privilege upon which a fee is charged.

The US supreme Court's findings in Hale v Henkel, 201 US 43, (1906) not only echo Madison above, they further elaborate why B&P §7028 only extends jurisdiction to legal fictions and not human beings:

> …We are of the opinion that there is a clear distinction in this particular between an individual and a corporation…

> The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the State or to his neighbors to divulge his business, or to open his doors to an investigation, so far as it may tend to criminate him. He owes no such duty to the State, since he receives nothing therefrom beyond the protection of his life and property. His rights are such as existed by the law of the land long antecedent to the organization of the State, and can only be taken from him by due process of law, and in accordance with the Constitution. Among his rights are a refusal to incriminate himself and the immunity of himself and his property from arrest or seizure except under a warrant of the law. He owes nothing to the public so long as he does not trespass upon their rights.

Upon the other hand, the corporation is a creature of the State. It is presumed to be incorporated for the benefit of the public. It receives certain special privileges and franchises, and holds them subject to the laws of the State and the limitations of its charter. Its powers are limited by law. It can make no contract not authorized by its charter. Its rights to act as a corporation are only preserved to it so long as it obeys the laws of its creation.

## AN APPLICATION FOR ORIGINAL CONTRACTORS LICENSE IS AN UNCONSCIONABLE CONTRACT OF ADHESION

If the government already possessed ownership or control of "the People" and their faculties, why would they then have to "apply" and give their signed consent?

There is no law requiring such consent as already evidenced.

The courts and CSLB have been subjecting the People through the deprivation of property and liberties (fines and incarceration) to, under duress and coercion – a government gun to their head – consent to a waiver of their Rights by submitting to an Application.

Nowhere on the Application is there any disclosure whatsoever that the applicant is required to consent to a waiver of his or her Rights yet that is precisely what an Application requires.

The US Supreme Court has held waivers of Rights must be knowing, voluntary, and intelligent. See Johnson v Zerbst, 304 US 458.

The People of California are never lawfully informed of the presumption of their incompetence purportedly requiring their licensure in the first place not to mention the fact that they will be

required to surrender Rights to judicial process and be 'forced' into mandatory arbitration for which there is not only no Right to an appeal, but not even any statutory authority.

Upon acceptance of a license, having accepted the benefit one cannot then challenge its constitutionality and must bear the burden.

The case of In Re Meador, 16 Federal Cases 1294, held that:

> "And here a thought suggests itself. As the Meadors, subsequently to the passage of this Act of July 20, 1868 applied for and obtained from the government a license or permit to deal in manufactured tobacco, snuff, and cigars, I am inclined to be of the opinion that they are, by their own voluntary act, **precluded from assailing the constitutionality of this law, or otherwise controverting it**. For the granting of a license or permit — the yielding of a particular privilege — and the acceptance by the Meadors was **a contract,** in which it was implied that the provisions of the statute which governed, or in any way affected their business, and all other statutes previously passed, which were in pari materia with those provisions should be recognized and obeyed.

> "When the Meadors sought and accepted the privilege, the law was before them and can they now impugn the constitutionality or refuse to obey its provisions and stipulations and so exempt themselves from the consequences of their own acts ?

Adam Bereki discovered the issue surrounding the requirement of "mandatory arbitration" after the CSLB held a mandatory arbitration hearing without even notifying him of the proceedings. (RT 144-15 –145-3)

Adam had also qualified for the license for Blackrock General, Inc. A complaint was received after Blackrock had gone out of business in the housing crash of 2008. The CSLB contacted Adam and Adam requested it provide the documentation of the complaint so it could be handled. No evidence was ever received.

A "mandatory arbitration" hearing was then conducted pursuant to §7085 B&P years later.

Adam was never notified of the hearing despite his address and phone number correctly indicated on the application.

As a result, the CSLB then suspended Blackrock **and** Spartan's license for failure to comply with the arbitration award despite the fact Adam sent multiple letters to the Registrar informing him of the defect in the proceedings.

On 8/7/15 Adam sent a letter stating:

> **"I, as the qualifier for that license, never received notification of the arbitration proceedings."**

This letter has apparently gone *missing* from the CSLB's official certified records file. However, David Fogt, Chief of the CSLB Enforcement Division replied insisting the judgment was valid and stating Adam could reapply for a license in approximately two years only after submitting to the judgment award.

Mr. Fogt, even when notified of unlawful conduct acted in violation of his duties to further sanction this abomination of justice.[5]

This is why Spartan's license at present is "suspended/revoked". (RT 144-25).

---

[5] It has been discovered pursuant to a CSLB document request Mr. Fogt was not lawfully in office as the Chief of Enforcement given that he does not have an Oath of Office pursuant to his position.

Another letter was sent in reply on 2/4/16 (CT 1404) which was never replied to.

Subsequent to the suspension of Spartan's license, Adam applied for a license in his name which was also denied. As a result, he remains in constructive custody allegedly unable to obtain a license and fined $848,000 for operating with one.

With a timely lawful disclosure of any or all of these terms and conditions of the Application for Contractors license how many willing applicants would there be to these illicit acts of executive and judicial legerdemain?

"The state cannot diminish rights of the people." <u>Hurtado v. People of the State of California</u>, 110 U.S. 516.

All the powers of the government *[including ALL of its civil enforcement powers against the public—ed]* must be carried into operation by individual agency, either through the medium of public officers, or contracts made with [private—ed] individuals. See e.g. Osborn v Bank of US, 22 US 738 (1824).

Adam cannot be compelled to enter a public office or enter and unconscionable contract of adhesion to earn a living.

A de novo standard of review should be applied to the court's ruling.

# IT IS UNLAWFUL TO REQUIRE SUBMISSION TO MULPTIPLE LICENSES

Once a natural person has passed the licensing requirements and maintains a valid license as a Qualifying Individual, the only requisite for an additional license becomes one's ability to pay the licensing and bond fees. This ability to pay a tax or fees is not the purpose the CSLL's were established for– "the protection of the public from dishonesty or incompetence in the construction industry". As such, any requirements for an additional license once one has qualified and maintains a license is beyond the scope the designated purpose of the CSLL's and is therefore unlawful.

A de novo standard of review should be applied to the court's ruling.

## REQUEST FOR COSTS ON APPEAL

Recovery of appellate costs is governed by CRC 8.278(a)(1).

## CONCLUSION

§7031 only extends jurisdiction to work done by an unlicensed contractor who received compensation.

Spartan was a licensed contractor who performed the work and received compensation.

For all of the foregoing reasons, this court should:

1) Find that both judgment orders on appeal are void for want of jurisdiction and Respondents cause of action be dismissed with prejudice.

2) Provide findings and explanations for each of the questions in the Statement of Issues on Appeal.

3) Find that natural persons are not required to be licensed pursuant to Business & Professions Code, Chapter 9.

Respectfully Submitted,

Dated: January 8, 2018

_____

Adam Bereki, In Propria Persona

**96**

# EXHIBIT C

Court of Appeal, Fourth Appellate District, Division Three
Kevin J. Lane, Clerk/Executive Officer
Electronically FILED on 10/31/2018 by Sandra Mendez, Deputy Clerk

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GARY HUMPHREYS et al., | |
| Cross-complainants and Respondents. | G055075 |
| v. | (Super. Ct. No. 30-2015-00805807) |
| ADAM BEREKI, | O P I N I O N |
| Cross-defendant and Appellant, | |

Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge. Affirmed.

Adam Bereki, in pro. per., for Plaintiff and Appellant.

William G. Bissell for Defendants and Respondents.

\*          \*          \*

This case involves the purported general contractor for a condominium remodel project, Adam Bereki, on one side, and the condominium owners, Gary and Karen Humphreys (the Humphreys), on the other. After the Humphreys terminated Bereki's involvement, a now defunct corporation formerly owned by Bereki, Spartan Associates, Inc. (Spartan Associates), sued Humphreys, claiming they still owed approximately $83,000 for work on the project. The Humphreys denied the allegations and cross-complained against Bereki and Spartan Associates. Among the remedies they sought was disgorgement of all payments made for the project, pursuant to Business and Professions Code section 7031, subdivision (b)[1], due to Bereki's alleged failure to possess a required contractor's license.

Following a bifurcated bench trial on the disgorgement cause of action, the trial court found in favor of the Humphreys and ordered Bereki to repay them all monies received in relation to the remodel work — $848,000. Its ruling and a stipulation by the parties disposed of the remainder of the case and Bereki appealed. He challenges the disgorgement on a variety of constitutional, legal, and factual grounds. We find no merit in his contentions and, therefore affirm the judgment.

I

FACTS

The Humphreys own a condominium on Lido Isle in the City of Newport Beach. It was originally two separate units. The couple hired Bereki to do some remodeling which would, among other things, turn the two units into a single unit. After an on-site walkthrough, the Humphreys exchanged e-mails with Bereki to confirm the scope of the project. In one of his e-mails, Bereki stated he and his partner would perform the work for a specified rate.

---

[1]    All further statutory references are to the Business and Professions Code unless otherwise indicated.

2

**99**

The Humphreys agreed to the proposed scope and rates, and also inquired whether a written contract was necessary.  Bereki responded that it was not; their "'words/commitment [was] enough.'"  To start the project, Bereki asked the Humphreys for a $15,000 check deposit payable to him, personally.

Several months into the remodel the Humphreys, at Bereki's request, started making their progress payments to Spartan Associates instead of paying Bereki directly as an individual.  Bereki never gave them an explanation for the change or what, if any, involvement Spartan Associates had in the project, but the accountings he sent included the name "Spartan Associates."

After approximately a year and a half, the Humphreys terminated Bereki's involvement and later hired a different general contractor to complete the project.

Believing the Humphreys still owed approximately $82,800 for materials used in the remodel and labor performed, Spartan Associates sued to recover that amount. The Humphreys generally denied the allegations in the complaint, and filed a cross-complaint against Bereki, Spartan Associates, and a surety company.  Among the allegations were causes of action for negligence, intentional misrepresentation, and negligent misrepresentation.  The trial court later granted them leave to amend the cross-complaint to include a cause of action for disgorgement of funds paid to an unlicensed contractor, pursuant to section 7031, subdivision (b).

At the Humphreys' request, the trial court bifurcated the disgorgement claim from the remainder of the claims in the cross-complaint, and it held a trial on that issue first.  During the course of the two-day bench trial on the disgorgement cause of action, the court heard testimony from the Humphreys and Bereki.

Karen Humphreys testified it was her understanding, based on the initial e-mails exchanged with Bereki, that she and her husband were contracting with Bereki and his partner to do the work.  They wanted a licensed contractor to do the work and obtain all the necessary permits, and she "took [Bereki] at his word that he had a license."

3

**100**

She also testified there was no mention of Spartan Associates until months after the project began and insisted they never entered into a contract with Spartan Associates.

Gary Humphreys concurred with his wife's testimony about the remodel details, the series of events that transpired between them and Bereki, and the agreement he believed they entered into with Bereki. In addition, he confirmed Bereki told him he was a licensed contractor and stated he would not have hired him if he knew it was otherwise.

In contrast, Bereki testified the contract for the couple's remodel project was between the Humphreys and Spartan Associates. He nevertheless acknowledged his initial e-mail communications to the Humphreys made no mention of Spartan Associates, including the one which set forth the proposed scope of work and hourly rates. When asked about contractor's licenses, he admitted he never possessed one as an individual or as a joint venture with his partner. Spartan Associates, however, did have a contractor's license at the time of the project.

As for the work done for the Humphreys, Bereki testified he believed Spartan Associates performed all of it. He testified that the three city permits for the project were all obtained by, and issued to, Spartan Associates. Additionally, he produced contracts with subcontractors who performed aspects of the remodel work. The majority of these contracts were between the given subcontractor and Spartan Associates.[2]

The trial court found in favor of the Humphreys on the disgorgement cause of action based on its determination that Bereki, not Spartan Associates, was the

---

[2]   Bereki filed an unopposed motion to augment the record on appeal with certain exhibits admitted in the trial court. We deny the request because the exhibits already are "deemed part of the record" by Court Rule. (Cal. Rule of Court, rule 8.122(a)(3).) We have considered the copies of the exhibits he provided in conjunction with our review of this appeal.

contractor who performed all the remodel work.  As a result, the court also found in favor of the Humphreys on Spartan Associates's complaint.  The remainder of the cross-complaint was dismissed without prejudice at the Humphreys' request.

## II

### DISCUSSION

Bereki challenges the portion of the judgment disgorging all compensation paid to him for his work on the Humphreys' remodel project. [3]  Though articulated in various ways, his arguments boil down to the following:  (1) disgorgement under section 7031, subdivision (b), is unconstitutional or, alternatively, criminal in nature; (2) the trial court erred in ordering disgorgement because Spartan Associates, not Bereki, performed the work and Spartan Associates held a contractor's license; (3) even assuming Bereki performed the work, the state's contractor licensing requirement does not apply to him as a "natural person"; (4) there was insufficient evidence to support disgorgement, including no evidence of injury due to Bereki's failure to be individually licensed; (5) the court should have offset the disgorgement amount by the value the Humphreys received through the remodel work; (6) it was improper to order full disgorgement because certain payments were not made from the Humphreys' personal accounts; and (7) the court

---

[3]    Bereki appears to also challenge a postjudgment sanctions order the trial court issued based on Bereki's motion to compel a response to a demand for a bill of particulars filed after entry of judgment.  The sanctions order is not encompassed by his earlier appeal from the judgment.  And although such a postjudgment order is separately appealable (Code Civ. Proc., § 904.1, subds. (a)(2) & (b)), Bereki did not file another appeal.  Accordingly, the issue is not before us.  (*Silver v. Pacific American Fish Co., Inc.* (2010) 190 Cal.App.4th 688, 693 [court without jurisdiction to review postjudgment order from which no appeal is taken].)

erroneously failed to provide a written statement of decision.[4]  We find no merit to any of these contentions.

## A.    Disgorgement Remedy Under Section 7031

Relying heavily on *White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 517 (*White*), the decision in *Alatriste v. Cesar's Exterior Designs, Inc.* (2010) 183 Cal.App.4th 656, 664-666 (*Alatriste*) aptly summarizes the nature, purpose and scope of the litigation prohibition and the disgorgement remedy provided in section 7031, subdivisions (a) and (b).

"Section 7031[, subdivision] (b) is part of the Contractors' State License Law (§ 7000 et seq.), which 'is a comprehensive legislative scheme governing the construction business in California.  [This statutory scheme] provides that contractors performing construction work must be licensed unless exempt.  [Citation.]  "The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business.  [Citations.]"

---

[4]    After briefing was complete, Bereki filed a motion asking that we take judicial notice of a plethora of items, among which are the federal Constitution and other foundational documents for this country, federal and state statutes, and a variety of case law.  To begin, "[r]equests for judicial notice should not be used to 'circumvent [ ]' appellate rules and procedures, including the normal briefing process."  (*Mangini v. R. J. Reynolds Tobacco Co*. (1994) 7 Cal.4th 1057, 1064, overruled on another point as stated in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257.)  Further, "[a] request for judicial notice of published material is unnecessary.  Citation to the material is sufficient." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45, fn. 9.)  We therefore deny Bereki's request as unnecessary to the extent it included such materials.  As for the remaining items, we likewise deny the request because we find them not properly the subject of a request for judicial notice and/or irrelevant to resolution of the matters before us.  (Evid. Code, §§ 451, 452; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1089, fn. 4 [appellate court will not take judicial notice of irrelevant material].)

[Citation.]  The [laws] are designed to protect the public from incompetent or dishonest providers of building and construction services.  [Citation.]'  [Citation.]

"This statutory scheme encourages licensure by subjecting unlicensed contractors to criminal penalties and civil remedies.  [Citation.]  The civil remedies 'affect the unlicensed contractor's right to receive or retain compensation for unlicensed work.'  (*Ibid*.)  The hiring party is entitled to enforce these remedies through a defensive 'shield' or an affirmative 'sword.'  [Citation.]

"The *shield*, contained in section 7031[, subdivision] (a), was enacted more than 70 years ago, and provides that a party has a complete defense to claims for compensation made by a contractor who performed work without a license, unless the contractor meets the requirements of the statutory substantial compliance doctrine. [Citation.]  Section 7031[, subdivision] (e), the substantial compliance exception, provides relief only in very narrow specified circumstances, and '*shall not apply* . . . where the [unlicensed contractor] has never been a duly licensed contractor in this state." [Citation.]

"The California Supreme Court has long given a broad, literal interpretation to section 7031[, subdivision] (a)'s shield provision.  [Citation.]  The court has held that [it] applies even when the person for whom the work was performed *knew* the contractor was unlicensed.  [Citation.] . . . .  [It] explained that ""Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties*, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state.  [Citation.] . . .'"" [Citation.] '"Because of the strength and clarity of this policy [citation]," the bar of section 7031 [,  subdivision] (a) applies "[r]egardless of the equities."' [Citations.]

"In 2001, the Legislature amended section 7031 to add a *sword* remedy to the hiring party's litigation arsenal.  This sword remedy, contained in section

7031[,subdivision] (b), currently reads:  'Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.'  [¶]  By adding this remedy, the Legislature sought to further section 7031[,subdivision] (a)'s policy of deterring violations of licensing requirements by 'allow[ing] persons who utilize unlicensed contractors to recover compensation paid to the contractor for performing unlicensed work.  [Citation.]'  [Citation.]"  (*Alatriste, supra*, 183 Cal.App.4th at pp. 664-666, fns. omitted.)

Based on the statutory language and legislative history, both *Alatriste* and *White* "concluded that the Legislature intended that courts interpret sections 7031[, subdivision] (a) and 7031[, subdivision] (b) in a consistent manner, resulting in the same remedy regardless of whether the unlicensed contractor is the plaintiff or the defendant." (*Alatriste, supra*, 183 Cal.App.4th at p. 666, citing *White, supra*, 178 Cal.App.4th at pp. 519-520.)  These principles are well-settled under the law.

Bereki contends the disgorgement remedy is penal in nature and, therefore, a contractor defending against such a claim must be afforded all criminal rights and protections.  Not so.  Disgorgement is a civil consequence — "an equitable remedy" — for performing work without a required contractor's license.  (*S.E.C. v. Huffman* (5th Cir. 1993) 996 F.2d 800, 802 (*S.E.C.*); see *Walker v. Appellate Division of Superior Court* (2017) 14 Cal.App.5th 651, 657 [§ 7031 contemplates civil proceedings].)  The Legislature created a separate criminal penalty.  Specifically, section 7028 provides that acting or operating in the capacity of a contractor without a required license is a criminal misdemeanor subject to jail time, or fines, and restitution.  (§ 7028, subds. (a)-(c), (h).)

For similar reasons, Bereki's attempt to characterize disgorgement as an award of unconstitutional punitive damages is unavailing.  As an equitable remedy, disgorgement is not punishment and, therefore, it does not implicate the excessive fines

8

**105**

clause of the Eighth Amendment to the United States Constitution.  (*S.E.C., supra*, 996 F.2d at p. 802; see *U.S. v. Philip Morris USA* (D.C. 2004) 310 F.Supp.2d 58, 62-63.)

B.    *Contractor Licensing Requirement*

Before turning to application of section 7031, subdivision (b), we address Bereki's claim that he, in his individual capacity, did not need a contractor's license.  His argument is twofold, one part legal and the other part factual.  We reject both.

As for the legal argument, Bereki asserts that licensing requirements only apply to "fictitious" persons, not "natural" persons such as himself.  He cites no authority for his unique interpretation of the relevant statutes.  And, the statutes provide otherwise.  Contractors who are required to obtain a license include "[a]ny person . . . who . . . undertakes, offers to undertake, purports to have the capacity to undertake, or submits a bid to construct any . . . home improvement project, or part thereof."  (§ 7026.1, subd. (a)(2).)  In turn, "'[p]erson'" is defined to include "an individual[,]" as well as a variety of types of business entities and associations.  (§ 7025, subd. (b).)  "In ordinary usage[,] the word 'individual' denotes a natural person not a group, association or other artificial entity.  (See Webster's Third New Internat. Dict. (2002 ed.) p. 1152 [giving a primary definition of 'individual' as 'a single human being as contrasted with a social group or institution'].)"  (*City of Los Angeles v. Animal Defense League* (2006) 135 Cal.App.4th 606, 623, disapproved of on other grounds in *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 416.)  There is nothing in the statutes that indicates a different, specialized meaning.  (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238 ["In examining the language, the courts should give to the words of the statute their ordinary, everyday meaning [citations] unless, of course, the statute itself specifically defines those words to give them a special meaning"].)

**106**

Bereki's factual attack concerns the trial court's conclusion that he, not Spartan Associates, was the contractor who performed the remodel work for the Humphreys.  Though he implores us to engage in de novo review of this issue, it is a factual determination which we review for substantial evidence.  (*Escamilla v. Deppartment of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 514.)  There is ample evidence in the record supporting the court's conclusion.[5]

Both of the Humphreys testified that on the first day they met Bereki for a walkthrough of the site, he informed them that he and his partner would act as the general contractor for the project.  Bereki followed up with a written proposal and estimate, which he sent to the couple from his personal e-mail address.  When they inquired whether he had a contractor's license, he assured them he did, and when they asked him to whom they should make out their payment checks, he told them to put them in his name.

At no time during this series of events did Bereki ever mention Spartan Associates.  Notably, Bereki did not apply to the State Board of Equalization to register Spartan as an employer until roughly three months after the remodel work began.  Then, about four months into the project, he introduced the corporation into the mix by asking the Humphreys, without any explanation, to make future payments to Spartan Associates.

---

[5]    Bereki filed a motion asking us to consider additional evidence not presented in the trial court, among which are two declarations, an e-mail correspondence and a letter.  He believes the documents are relevant to establishing the identity of the contracting parties.  We deny the motion as "[i]t has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, *upon a record of matters which were before the trial court for its consideration*.'"  (*In re Zeth S.* (2003) 31 Cal.4th 396, 405, italics added.)  Circumstances warranting an exception to this rule are very rare and we do not find them extant here, particularly in light of the conflicting evidence weighed by the trial court.  (See *Diaz v. Professional Community Management, Inc.* (2017) 16 Cal.App.5th 1190, 1213 ["'The power to take evidence in the Court of Appeal is never used where there is conflicting evidence in the record and substantial evidence supports the trial court's findings.'"].)

Based on what transpired, the couple believed they contracted with Bereki, in his individual capacity, to complete the remodel work.

While Bereki claims the Humphreys lied when they testified at trial because some of their factual statements purportedly contradicted those they made at the summary judgment stage, our role is not to resolve factual disputes or to judge the credibility of witnesses. (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518.) The trial court bore that responsibility in this case, and our review of the record reveals substantial evidence to support its conclusion that Bereki, not Spartan Associates, was the contractor for the job.

C.   *Disgorgement Remedy Under Section 7031*

Separate from his general attacks on section 7031, subdivision (b), Bereki challenges its application under the specific facts of this case. He first asserts disgorgement is an improper remedy because it gives the Humphreys a double benefit — the remodel improvements and the money they otherwise would have paid for them. In the context of the statute at issue, however, courts have uniformly rejected such an argument and required disgorgement, even though this remedy often produces harsh results. (See, e.g., *Alatriste, supra*, 183 Cal.App.4th at pp. 672-673; *White, supra*, 178 Cal.App.4th at pp. 520-521; see also *Jeff Tracy, Inc. v. City of Pico Rivera* (2015) 240 Cal.App.4th 510, 521.) Full disgorgement is required; offsets and reductions for labor and materials received are not permitted.

Equally meritless is Bereki's contention that there was no justiciable claim under the statute because there was no evidence the Humphreys were injured by his lack of a contractor's license. Bereki cites no authority for that novel proposition. Injury is not an element of a cause of action under the statute. The disgorgement consequence is not remedial in nature. Similar to the licensing requirement, it is a proactive measure

11

**108**

intended to decrease the likelihood of harm due to "incompetent or dishonest providers of building and construction services." (*White, supra*, 178 Cal.App.4th at pp. 517.)

We also are not persuaded by Bereki's objection to the amount the court ordered him to repay to the Humphreys. He highlights evidence showing that some of the payment checks came from Gary Humphreys' corporation, and he argues the Humphreys are not entitled to those amounts given they did not pay them in the first instance. While we do not necessarily see eye-to-eye with Bereki's legal reasoning, we need not reach the legal aspect of his argument due to the trial court's factual findings.

The trial court, relying on Gary Humphreys' uncontradicted testimony, found that the contested payments ultimately were attributable to Gary Humphrey himself. Substantial evidence supports this conclusion. The Humphreys testified that the business is an S corporation, and at the relevant time Gary Humphreys was the sole shareholder and an employee. Gary Humphreys explained he was traveling often for business during the remodel, including at times when Bereki insisted on needing money "'right away.'" To facilitate the payments, Gary Humphreys had persons in his corporation with signing authority write checks from the corporate account. The amounts paid on the Humphreys behalf were then accounted for through a reduction in the regular income Gary Humphreys received from the corporation. He paid income taxes on those amounts because they were included in the figures listed on his annual W-2 form.

Under these circumstances, we find ample evidence to support the trial court's factual finding that although certain payments to Bereki were made from the Humphreys' business account, they ultimately were accounted for in a way that ensured they were personal payments from the Humphreys, as individuals. Accordingly, the Humphreys were entitled to "all compensation paid." (§ 7031, subd. (b).)

We recognize that the provisions of section 7031, including the disgorgement remedy, are harsh and may be perceived as unfair. As courts have explained, however, they stem from policy decisions made by the Legislature.

(*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 423; *Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995; *Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 151; see *Judicial Council of California v. Jacobs Facilities, Inc.* (2015) 239 Cal.App.4th 882, 896; *Alatriste, supra*, 183 Cal.App.4th at p. 672.)  "[T]he choice among competing policy considerations in enacting laws is a legislative function" (*Coastside Fishing Club v. California Resources Agency* (2008) 158 Cal.App.4th 1183, 1203), and absent a constitutional prohibition, we may not interfere or question the wisdom of the policies embodied in the statute.  (*Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 25; *Alatriste, supra*, 183 Cal.App.4th at p. 672.)

D.     Statement of Decision

        Though he admits he did not timely request a statement of decision, Bereki claims the trial court should have nevertheless provided one after he made an untimely request.  To the contrary, "[n]o statement of decision is required if the parties fail to request one." (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970; see also Code Civ. Proc., § 632.)  The trial court's denial was proper.  (See *In re Marriage of Steinberg* (1977) 66 Cal.App.3d 815, 822 [upholding court's refusal to make findings of fact and conclusions of law due to party's failure to timely request them].)

III

DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.

14

**111**

# EXHIBIT D

Case No. S_____      **IN THE**

## SUPREME COURT OF CALIFORNIA

_____

Adam Bereki, *Petitioner,*

vs.

Karen and Gary Humphreys, *Respondents,*

_____

After Appeal to the Court of Appeal

Fourth Appellate District, Division Three

Court of Appeal Case No. G055075

Orange County Superior Court Case No. 30-2015-00805807

---

## PETITION FOR REVIEW

_____

Adam Bereki

In Propria Persona

Postal Svc. Address: 818 Spirit

Costa Mesa, California [92626]

abereki@gmail.com | 949.241.6693

# TABLE OF CONTENTS

**a. Were the trial and appellate courts deprived of jurisdiction to render and affirm judgment that violates the due process requirements of punitive damage awards?………………………………………………………………….6**

**b. Were the trial and appellate courts deprived of jurisdiction to render and affirm judgment if Respondents failed to establish all of the elements of the offense as defined in CACI 4560?…………………………………………..12**

**c. Was Petitioner was denied a judicial hearing of his 'competency'?………17**

*I.    Presumptions are not a means of escaping constitutional protections………17*

*II.   Petitioner is not an artificial person, fiction of law or thing in commerce….18*

*III.  The BPC only requires artificial persons to obtain a license………………..20*

**d. Has Petitioner has been denied a Republican form of government?……..26**

**e. Is Petitioner is in Constructive Custody?…………………………………..39**

Word Count Certificate………………………………………………….41
Proof of Service………………………………………………………….42

Exhibit [A] Court of Appeal Opinion……………………………………44

## TABLE OF AUTHORITIES

PAGE                              CASES

9……………. Austin v United States, 509 US 602

17……………Bailey v Alabama, (1911) 219 US 219

26,33,37……. Baines v James and Catherine, (1832) 2 F. Cas. 410

8…………… Bank of Columbia v Okely  (1819), 17 US 235

24……………Bass v United States, 784 Fed. 2d. 1282

8……………. Bell v Wolfish,  441 US 520

16……………Buis v State 19 OK CR 28

9…………… BMW of North America, Inc. v. Gore (1996) 517 U.S. 559

16……………Breedlove v. Breedlove, 161 Cal. App. 2d 712

22……………Caha v. U.S. (1894), 152 U.S. 211

8,22………… Cohens v Virginia  (1821)19 US 264, 404

24……………Connecticut Insurance v Johnson, (1938) 303 US 77

11……………County of Ventura v Tillett, (1982) 133 Cal. App. 3d 105

17……………Cummings v Missouri, (1867) 71 US 277

18……………Ex parte Bakelite Corp., (1929) 279 US 438

18,37……….. FRC v General Electric, (1930) 281 US 464

7…………… .Huntington v. Attrill, (1892) 146 U. S. 657

39……………Johnson v Zerbst, (1938) 304 US 458

22,23……… Julliard v. Greenman (1884), 110 U.S. 421

11……………Klugh v United States, 620 F. Supp. 892

6…………… Kokesh v SEC, (2017) 518 US ____

6…………… Lewis & Queen v. N. M. Ball Sons, (1957) 48 Cal. 2d 141

5…………… Marriage of Oddino, (1997) 16 C 4th 67, 73

16, 33,37…….McNutt v General Motors (1936) 298 US 178

26……………Miranda v Arizona, (1966) 384 US 436, 491

20……………Murdock v Pennsylvania, (1943) 319 US 105

24……………Ngiraingas v Sanchez, (1990) 495 US 182

19……………Rundle v Delaware & Raritan Canal Co., (1852) 55 US 80

9……………..State Farm Mutual v Campbell, (2003) 538 US 408

17……………The Estate of Buchman, (1954) 123 Cal. App. 2d 546

36……………The Mayor v. Cooper, (1867) 73 U.S. 247, 252

23……………..The Slaughterhouse Cases, (1873)  83 U.S. 36

16……………Thompson v Louisville, (1960) 382 US 199

14……………United States v Lovett, (1938) 328 US 303

23……………Van Valkenburg v Brown, (1872) 43 Cal. 43

17……………White v Cridlebaugh (2009) 178 Cal.App.4th 506

17……………Windsor v McVeigh, (1876) 93 US 274

22……………Yick Wo v. Hopkins (1886), 118 U.S. 356


## STATUTES

### Business and Professions Codes

26……………§21

21……………§7025

6, 29…………§7031(b)

21……………§7068.1

21……………§7150


### California Code of Civil Procedure

16…………….§632

30……………§17


### Federal

22,24…………5 USC §552a

31,32…………26 USC §3121

31……………26 USC  §7701

32……………27 CFR §72.11

33-35…………28 USC §3002

26,37………..16 Stat. 419

*28……………13 Stat. 223, The Act of June 30, 1864*


<u>Constitution for the United States of America</u>

32……………Article 1, §8, cl. 17

8,17…………Article 1, §9

32……………Article 4, §3, cl. 2

26,37…………Article 4, §4

34……………Article 5

20……………13th Amendment

22,23…………14th Amendment


<u>California Council Civil Jury Instructions</u>

15,24…………4560

## ISSUES PRESENTED

1. Is disgorgement pursuant to §7031(b) B&P a penalty/punishment? Did the trial and appeal courts err in rendering judgment which violates the due process provisions of punitive damage awards and denies a defendant protections afforded in criminal proceedings?

2. Does a trial/appeal court obtain jurisdiction over the subject matter if a Plaintiff fails to prove all of the elements of the offense as required by the Judicial Council?

3. Has Petitioner been denied a Republican form of government?

4. Is Petitioner in constructive custody?

## WHY REVIEW SHOULD BE GRANTED

This case involves issues of statewide importance effecting all professions regulated by the Business and Professions Code in California, most especially, Contractors. It further effects all remedies available under the code to consumers.

The structural jurisdictional errors of this case are of even greater moment to every action in California as they concern the fundamental power of every court, including this supreme court to act. As such, they require this court's intervention and  must be addressed *(Marriage of Oddino (1997) 16 C 4th 67, 73)*.

## STATEMENT OF FACTS AND LEGAL DISCUSSION

**a. Were the trial and appellate courts deprived of jurisdiction to render and affirm judgment that violates the due process requirements of punitive damage awards?**

The instant case involves an $848,000 penalty of disgorgement against Petitioner for allegedly contracting without a license in the remodel of Respondents vacation home (Business and Professions Code, "BPC", or "the code", §7031(b)). The trial and appellate courts denied Petitioner the due process protections of grossly excessive punitive damage awards.

In *Kokesh v SEC, (2017) 518 US _____* the US supreme court held SEC disgorgement in reference to 28 USC §2462 (a five year statute of limitations on the imposition of penalties) had all the hallmarks of a penalty and was therefore punitive in nature.

Based on the supreme court's historical jurisprudence as reaffirmed in *Kokesh*, the judgment in the instant case is also a penalty and therefore subject to the due process provisions of punitive damage awards.

The appeal court however affirmed the trial court's judgment and claimed disgorgement was "an equitable remedy" and therefore not a penalty/punishment (Op. p8 ).

In *Lewis & Queen v. N. M. Ball Sons (Cal. 1957), 48 Cal. 2d 141, 308* this court held: courts may not resort to equitable considerations, such as unjust enrichment, in defiance of §7031.

If equitable considerations including set-off or unjust enrichment are denied, it can't possibly be an equitable action or remedy. Equity is defined as the quality of being fair and impartial. Without these considerations, the concept of equity of destroyed. This is one of the reasons why in *Kokesh* the US supreme court concluded disgorgement was punishment.

In legal terms disgorgement is defined as the giving up or return of "ill gotten gains" or "profits". California courts have interpreted "all compensation paid" as used in §7031(b) to mean not only the disgorgement of "profits" or "ill gotten gains", but all payments made whatsoever, including reimbursement for material costs, irrespective of any injury or damage, and *without* equitable considerations.

Punitive damages on the other hand are defined as being independent from, and not in any way compensation for, any actual damages suffered.

In *Kokesh* the court examined it's historical jurisprudence on the nature of penal actions citing *Huntington* v. *Attrill*, (1892) 146 U. S. 657:

The definition of "penalty" as a "punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws,", gives rise to two principles. First, whether a sanction represents a penalty turns in part on "whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual." *Id.*, at 668. Second, a pecuniary sanction operates as a penalty if it is sought "for the purpose of punishment, and to deter others from offending in like manner" rather than to compensate victims. *Ibid.*

Application of these principles readily demonstrates disgorgement pursuant to §7031(b) constitutes a penalty.

First, §7031(b) is a matter of <u>public</u> policy effecting commerce and is therefore a wrong to the public even though the penalty is paid to an individual party and not the government. It is a consequence for violating public laws and not in the private non-commercial setting, especially considering all of the payments made were by commercial paper/negotiable instruments *(Bank of Columbia v Okely (1819), 17 US 235, 243; Cohens v Virgina, (1821) 19 US 264, 403; Constitution for the United States [1787-1791] "Constitution", Article 1,§9)*

Second, the jurisprudence of this state has repeatedly reaffirmed §7031's deterrence nature (Op. Pp. 7-8). Sanctions imposed for the purpose of deterring infractions of public laws are inherently punitive because "deterrence [is] not [a] legitimate nonpunitive governmental objectiv[e]." *(Bell v Wolfish, 441 US 520, 539)*

Third, it is not compensatory. §7031(b) requires no evidence of any injury or damage and none were evidenced in this case.

Nor is it a remedial sanction that restores the status quo. Equitable considerations were denied and no evidence was admitted to differentiate profits or gains from costs or benefits conferred or exchanged.

The project was done at cost for the family of close friends. <u>There were no gains or profits.</u> Materials and labor were provided commensurate to the agreement in direct exchange for the compensation received without markups. In this sense a<u>ll compensation had already been returned throughout the remodel project without evidence of any injury or damage thereby making the award entirely punitive.</u>

*Kokesh* continues:

"As demonstrated here…disgorgement may be ordered without consideration of a defendant's expenses that reduced the amount of illegal profit. In such cases, disgorgement does not simply restore the status quo; it leaves the defendant worse off and is therefore punitive."

Although disgorgement may serve compensatory goals in some cases, "sanctions frequently serve more than one purpose" *(Austin v United States, 509 US 602, 610)*. Because they "go beyond compensation, are intended to punish, and label defendants wrong- doers" as a consequence of violating public laws, (citation), disgorgement orders represent a penalty…"

The US Supreme Court has established a three part test for evaluating the validity of punitive damages in civil cases (*State Farm Mut. Automobile Ins. Co. v. Campbell (2003) 538 U.S. 408)*[1]:

1) the reprehensibility of the conduct being punished;

2) the reasonableness of the relationship between the harm and the award;and

3) the difference between the award and the civil penalties authorized in comparable cases.

Under this test, use of the disgorgement sword to *hypothetically* take anything more than nominal damages from Petitioner and give them to Respondents <u>fails every element of the test</u> for the following reasons:

---

[1] *BMW of North America, Inc. v. Gore (1996) 517 U.S. 559, 568)*

REASONABLENESS

First, the relationship between the "harm" and disgorgement of $848,000 is grossly disproportionate. At "trial", <u>Respondents presented no evidence of any damages proximately cause by Petitioner's *alleged* failure to be licensed.</u>

Compensatory damages are intended to redress the concrete loss the 'victim' has suffered by reason of the 'perpetrators' wrongful conduct. By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution. *Id 416*

California and federal courts have constrained awards of punitive damages to a reasonable relationship to the actual damages suffered.

In the instant case, disgorgement of anything would be an infinite multiple of the non-existent damages.

COMPARABLE CASE AWARDS

Second, the difference between the $848k disgorgement award and both the criminal and civil penalties authorized in comparable cases is astronomic. The maximum criminal penalty is $5,000 plus restitution of <u>actual</u> economic loss. The maximum civil penalty that could be assessed by the Contractors State License Board, "CSLB", is also $5,000. Thus, a "disgorgement" of $848k would be 169 TIMES the comparable criminal or civil penalty.

The judgment in this case is more than three times the financial penalty for treason, – the highest crime of our country– which is $250,000. Furthermore, it forces Peititioner into elements of financial ruin and bankruptcy.

Punitive damages in excess of $5000 therefore do not pass Constitutional muster.

REPREHENSIBLE

Third, the conduct is not reprehensible. Not only was there no evidence of any damages whatsoever, had there been, they would have been purely economic. No one was hurt or injured. There was no evidence of fraud, oppression, or malice.

No evidence was presented the compensation had not been returned in the form of materials and labor services provided.

Respondents interacted exclusively with Petitioner who had the work experience and passed the competency exam to qualify for numerous contractors licenses.

Prior to hiring Petitioner or his company, Respondent Gary Humphreys was intimately aware of Petitioner's competency by the previous projects he had done at Respondents business and for other family members (RT 93–10).

*        *        *

A judgment is void if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process (*Klugh v United States, 620 F. Supp. 892*)

"A court of this state does not have jurisdiction to render a judgment that violates the California Constitution or the Constitution of the United States…" *(County of Ventura v Tillett (1982) 133 Cal. App. 3d 105).*

**b. Were the trial and appellate courts deprived of jurisdiction to render and affirm judgment if Respondents failed to establish all of the elements of the offense as defined in CACI 4560?**

The California Judicial Council adopted CACI 4560 which explicitly declares each of the elements of a cause of action pursuant to §7031(b):

To establish this claim, [Respondents] must prove **<u>ALL</u>** of the following:

1. That there was a contract between Respondents and Petitioner under which Petitioner was required to perform services for Respondents;

2. That a valid contractor's license was required to perform these services; and

3. That the Respondents paid Petitioner for contractor services that Petitioner performed as required by the contract.

Having failed to prove each of the elements of their cause of action, the court had a <u>non-discretionary duty</u> to dismiss Respondents claim.

Petitioner was the sole owner of The Spartan Associates, Inc., "Spartan", a class B general contractor which was a small business that did construction work for Petitioner's friends or referrals therefrom. Petitioner was close friends with Respondents son and brother who hired Spartan to work for them over the course of about five years. Based on their mutual friendship the written contractual formalities were sometimes relaxed.  Regardless, it was understood Spartan was performing the work as evidenced by the invoices it created and the payments that were made directly thereto (Exhibit [39]).

Spartan also, right before it began the project of this case, worked directly for Respondents company, Humphreys & Associates, Inc. (Exhibit [39]).

In April of 2012, Respondents son referred Petitioner and Spartan to meet with Respondents to remodel their south California waterfront vacation home. At the time of the meeting, Respondents had purchased one upstairs unit of a three unit condominium and desired to do a "face-lift" remodel consisting roughly of new paint, carpet, etc.

Subsequent to the initial project walk through, Petitioner sent Respondents an email specifying the details of the work they wished to have performed. Nowhere in this email however was the word "Spartan" used.

Initial work began on the project a few days later which included packing up all of Respondents property, moving and storing it, and basic demolition work. Throughout this phase, which is work that is NOT required to be licensed, the building was discovered to be in a state of serious disrepair and presented a plethora health and safety issues. Based on the expanded scope of the project effecting the entire building, Respondents decided to purchase the other upstairs unit and combine their two units into one. This work would require architectural and engineering drawings and building permits.

Spartan and obtained the building permits as evidenced at trial (Exhibit [34]). The description of the work on the permits states: "188 SF DEMO TO COMBINE 2nd FLOOR UNITS (B&C) TO CREATE 1…" indicating the actual project that commenced. Spartan was also listed as the contractor.

Prior to trial, Respondents filed a Motion For Summary Judgment (CT 231) wherein they claimed the **"undisputed facts"** were that they had contracted with Spartan and Spartan performed the work (not Adam Bereki/ Petitioner). They represented the April 2012 emails mentioned above memorialized this agreement.

At trial however, Respondents took the opposite position to support an amended first cause of action they filed about <u>one month before trial</u>. That first cause of action was for disgorgement where they claimed they never contracted with Spartan, but rather with Petitioner, and another man, Glenn Overley who had also done some work on the project. Despite having allegedly formed the central agreement of this case with Mr. Overley, he was never deposed, never mentioned in their complaint, and never called to testify at trial. The entire judgment award was subsequently made against Petitioner.

At trial, Respondents admitted some of the April 2012 emails and claimed they were the sole agreements for the entire project. Nowhere in those emails is there any mention of two units or combining them. The quote for work therein is for $75k, not $848k.

Spartan admitted the building permits it obtained detailing the <u>actual project</u> that transpired (Exhibit [34]) and testified it performed all of the work. It further admitted a seventy (70) page Interior and Exterior design presentation (Exhibit [31]) it created which on every page includes the logo and words "Spartan Construction" and details all of the interior and exterior design elements of the project agreed upon by Respondents.

Additionally, Exhibit [303] was admitted, which is a spreadsheet created by Respondents detailing to whom they made their payments. Of the $848,000 paid, $795,000 was directly deposited into Spartan's checking account. Some of these checks were made directly to "Adam Bereki" (Petitioner) or "Adam Bereki Spartan Construction" despite Petitioner asking Respondents to make their checks payable to Spartan.

The significance of all of this is that Respondents failed to rebut any of Spartan's testimony that it exclusively performed the work on the project. They failed to call a single witness or produce any evidence of what specific work was performed, what work was required to be licensed, who performed it, and who accepted compensation for it which are all required by CACI 4560. This information is requisite to establish a cause of action especially because a large portion of the work performed was not required to be licensed, such as interior design.

Additionally, Spartan hired other licensed contractors who also performed work and accepted compensation (Exhibit [33]). Their compensation is NOT subject to disgorgement pursuant to §7031(b).

**The trial court was required to differentiate work performed by licensed contractors and work not performed by licensed contractors. The same goes for work required to be licensed and work not required to be licensed. In error, the court took the entire amount of compensation ($848,000) which wasn't even paid to Petitioner, and ordered Petitioner to disgorge all of it.**

Even more alarming, both the trial and appellate courts appear to have based their judgments on the April 2012 emails that don't even contain the scope of work for the project. **This is evidenced by the appellate court's misstatement of material facts in its Opinion p2.**    It appears the court derived these misstatements, not from the evidence, but the misrepresentation in Respondents Reply Brief, p7. The court was repeatedly warned about Respondents misstatements.   Fraud upon the court was also repeatedly evidenced throughout Petitioners Briefs.

Legislature did not extend jurisdiction to a cause of action that only meets one or two of these three elements. Rather, **<u>ALL</u>** of them must be met in order to vest the trial court with jurisdiction over the subject matter empowering it to act and award judgment *(Thompson v Louisville, (1960) 382 US 199; McNutt v General Motors (1936) 298 US 178; Buis v State 19 OK CR 28)*

The appeal court concluded there was ample evidence to sustain the trial courts award yet omitted stating what this evidence actually is. The same problem occurred with the trial court. The only evidence of it's findings are an <u>unsigned</u> minute order that doesn't even state the code section violated *(See Breedlove v. Breedlove, 161 Cal. App. 2d 712)*. Petitioner believes this is also a violation of due process because findings of facts and conclusions of law are necessary to present a meaningful and substantive appeal or petition and were repeatedly denied. The facts establishing jurisdiction which includes the court's findings of facts and conclusions of law must be affirmatively in the record.    The constitutionality of §632 CCP was also challenged on appeal which the court did not address.

**c. Was Petitioner was denied a judicial hearing of his competency?**

California courts have repeatedly held the contractors state licensing laws, "CSLLs", are "designed to protect the public from _incompetent_ or dishonest providers of building and construction services."[2] This results in an unconstitutional presumption the People of California are incompetent and dishonest and denies them a judicial hearing resulting in a Bill of Attainder.

*I*

**_"Presumptions are not a means of escaping constitutional protections"_**

*(Bailey v Alabama (1911) 219 US 219)).*

LICENSE. Permission by some _competent_ authority to do some act which, without such permission, would be illegal. (Black's Law Dictionary, 4th Ed. West Publishing (1968)).(*emphasis* added)

The presumption of incompetence as repeatedly affirmed in the jurisprudence of California courts results in two deprivations of Rights. First, it denies the People their Right to notice and a judicial hearing of their 'competency' (*Windsor v McVeigh (1876) 93 US 274; The Estate of Buchman (1954) 123 Cal. App. 2d 546).* Second, the courts inflict punishment for the violation of certain sections such as §7031(b) without any nexus to an injury or damage. The result is a Bill of Attainder/Pains and Penalties[3] *(Article 1, §9; Cummings v Missouri (1867) 71 US 277; United States v Lovett (1938) 328 US 303)*. In the instant case the denial of a judicial hearing also includes the the denial of protections afforded in criminal proceedings.

---

[2] *White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 517

[3] A Bill of Pains and Penalties is specifically punishment without a judicial hearing.

The result is defendants, including Petitioner, are subjected to a deprivation of their property and Rights by a non-judicial legislative/administrative tribunal cloaked as a judicial constitutional proceeding *(FRC v General Electric (1930) 281 US 464; Ex parte Bakelite Corp. (1929) 279 US 438).*

While the presumption of incompetence is certainly true for artificial persons/ fictions of law, it is definitely not so for the People[4].

*II*

***Petitioner is not an artificial person, fiction of law or thing in commerce.***

In 2009, Petitioner provided the work experience and passed the Contractor's State License Board's, "CSLB's" exam to become a "qualifying individual" for a contractors license in the name of a California corporation/ artificial "person", The Spartan Associates, Inc.

A "qualifying individual" is defined as the person listed in CSLB's personnel of record,  who has demonstrated his or her knowledge and experience through the application process, *and holds one or more license classifications.* Qualifiers must exercise direct supervision and control of construction operations[5].

The reasoning here is legitimate. A corporation (artificial person/entity/thing in commerce) has no cognitive functioning and therefore cannot qualify for it's own license. It also cannot supervise and control operations.

---

[4] If the People are 'incompetent' how can they form the intent to violate the offense? How are they suddenly 'competent' on election day?

[5] http://www.cslb.ca.gov/Newsletter/2012-Winter/qualifier.asp

It is the qualifying individual, the biological being who brings 'competency' to the license of an artificial commercial entity. The license cannot 'survive' without the qualifier and §7096 declares that a qualifying individual is a "licensee".

The problem here is the same standards and requirements of licensing for artificial commercial entities are applied across the board to biological beings. This is a systemic cancer within the legal and justice system of America evidenced by our country's history with slavery. The People are NOT things/ entities in commerce and have inalienable (not lien-able, non-commercial) Rights.

Mr. Justice Daniel in his dissent in *Rundle v Delaware & Raritan Canal Co., (1852) 55 US 80, 99* warned of the issue surrounding differentiating corporations/ commercial entities from living beings more than 150 years ago:

...This must mean the natural physical beings composing those separate communities, and can by no violence of interpretation be made to signify artificial, incorporeal, theoretical, and invisible creations.

Having passed the state's non-judicial competency exam for licensing as a qualifying individual, the trial and appellate courts proceeded to determine Petitioner "incompetent" and awarded/affirmed judgment against him without any hearing on the matter whatsoever relying on the erroneous legislative presumption.

Argument could loosely be made this was because Petitioner didn't obtain a license in his name. At that point – momentarily excluding all other issues raised thus far – the only qualifying difference would be his ability to pay a tax or licensing fee for another license,  qualifications which are beyond the state's use of police powers.

Petitioner is not challenging a state's authority to regulate an industry. What is being challenged is the means of doing so which, in most cases, is through the use of fictions and presumptions that have no basis in factual reality, are therefore without merit and in violation of numerous foundational Constitutional protections.

Petitioner's inalienable (not lien-able, non-commercial) Rights to his time and labor cannot be commercially liened by legislative enactments unconstitutionally expanding Congress' commerce clause powers to convert his Rights into a privilege for which he is then required to obtain a license and charged a fee for *(Murdock v Pennsylvania, (1943) 319 US 105)*. The lien of Petitioners property Rights as punishment without a judicial hearing in the specific manner executed in this case is also a violation of the 13th Amendment resulting in involuntary servitude.

**If Petitioner must ask the state's permission and pay a tax or fee for the revocable *privilege* of being able to earn a living, then clearly he has no inalienable Right to his property in the form of his time and labor and, as has transpired here, he can be excluded from earning a living in his profession entirely and therefore in constructive custody. (see part e.)**

### *III*

### *The BPC only requires artificial persons to obtain a license.*

The Business and Professions Code clearly defines the relationship amongst the "persons" or entities upon which it acts. It defines a "person" in §7025 as: an

individual, a firm, partnership, corporation, limited liability company, association or other organization, or any combination thereof.

§7068.1 further defines that a "natural person" must qualify <u>on behalf of</u> an "individual" or "firm" (as found in §7025). This is because an "individual" or "firm" are artificial persons having no cognitive functioning. They are not competent to perform work without the work experience and supervision of a natural person or more specifically, a biological being.

<u>Nowhere in the code does it require a "natural person" or biological being to be licensed.</u>

In fact, entire sections of the code refer only to "natural persons" further differentiating a "natural person" from an "individual". See §7150.

To interpret the meaning of a particular statute or statutory definition, one must employ the same rules of statutory interpretation which were used to compose such statute or definition. Of the eight rules of statutory interpretation, the rule *noscitur a sociis* (known by its associates) applies:

> when a word or phrase is of uncertain meaning, it should be construed in the light of the surrounding words . . . A Dictionary of Law, 7th ed., Jonathan Law and Elizabeth Martin, eds. (Oxford: Oxford University Press, 2009), 295

The surrounding words of "individual", defining a "person" in §7025 are all fictions of law. Therefore, just as a natural person must qualify for these other fictions of law, it must also do so for an "individual" as required by §7068.1.

An individual is not defined anywhere in the code with the exception of §7068.1. An Application For Original Contractors License however <u>requires</u> the qualifying

individual to submit a Social Security or other tax payer identification number. This requirement clearly indicates the jurisdiction and venue of the contract is for all intents and purposes federal as the Application will not be processed without it. Therefore, we must look to federal authority for further clarity.

Under government organization and employees, 5 USC §552a(a)2 defines an "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence". It further defines an "individual" as an "officer or employee of the government of the United States" (5 USC §552a(a)13) .

Petitioner is not a "citizen of the United States", "employee or officer of the government of the United States"or an "alien lawfully admitted for permanent residence".

The Fourteenth Amendment of July 9, 1868, has numerous defects and is easily debunked, the most significant flaw being found in the first portion of Section 1 defining who exactly is a citizen of the United States:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States . . .

Americans are People (The unanimous Declaration of the thirteen united States of America, Preamble; Constitution, Preamble), not persons (political subjects with certain rights and duties).

Secondly and most importantly, "persons born or naturalized in the United States" are not "citizens of the United States" strictly by birth or naturalization: They also must be "subject to the jurisdiction" of the United States.

This is why residents of Puerto Rico, Guam, the Virgin Islands, etc. are legally classified as citizens of the United States: The United States has jurisdiction over the territory in which those bodies politic reside.

There is no geographic area anywhere in the Union that is subject to the jurisdiction of the United States, (*Cohens v Viriginia, (1821) 19 US 264, 434; Caha v. U.S. (1894), 152 U.S. 211, 215, Julliard, infra)*; the American People are the sovereign author and source of all law in America, (*Yick Wo v. Hopkins (1886), 118 U.S. 356, 370);* and no American domiciled and residing without federal territory is subject to the jurisdiction of the United States.

Not being subject to the jurisdiction of the United States, Americans domiciled and residing throughout the Union do not qualify as 14th Amendment "citizens of the United States."

*The Slaughterhouse Cases, (1873)   83 U.S. 36, 73–74,* provide some additional historical context:

> The first clause of the fourteenth article was primarily intended to confer citizenship on the negro race, and secondly to give definitions of citizenship of the United States and citizenship of the States, and it recognizes the distinction between citizenship of a State and citizenship of the United States by those definitions.

In *Van Valkenburg v Brown, (1872) 43 Cal. 43,* this court declared *"*No white person…owes the status of citizenship to the recent amendments to the Federal Constitution" (referring specifically to the so-called 14th Amendment).

Clearly, there is a significant difference in State Citizenship and citizenship conferred by the so-called 14th Amendment. State Citizen's have inalienable

Rights and delegated certain sovereign powers to ordain and establish government. Powers delegated do not equal powers surrendered. So-called 'citizens of the United States' receive revocable government privileges aka "civil rights".

[T]here is no such thing as a power of inherent sovereignty in the government of the United States. It is a government of delegated powers, supreme within its prescribed sphere [federal territory] but powerless outside of it [the Union]. In this country, sovereignty resides in the people, and Congress can exercise no power which they have not, by their Constitution, entrusted to it; all else is withheld *(Julliard v. Greenman (1884), 110 U.S. 421, 467).*

In *Connecticut Insurance v Johnson, (1938) 303 US 77,* the US supreme Court ruled the word "person" as referenced in the so-called 14th Amendment includes corporations (artificial persons). Corporations, like so-called 14th Amendment "persons" have no inalienable Rights.

Among the "joint tenants in the sovereignty," Chisholm, supra, that comprise the American People, none is a so-called person. The American People are the supreme political authority in the Republic, Yick Wo, supra.

While not explicitly stated, CACI 4560 (2) includes the burden of proof of whether Petitioner was a "person" required to be licensed  (as explained above) which is entirely absent from the record (see also *Bass v United States, 784 Fed. 2d. 1282)*. While it is unclear exactly what Petitioner's status actually is, it certainly is not a fiction of law or commercial entity and must be determined in a judicial proceeding.

The appeal court attempted to 'resolve' the issue over the definition of an "individual" in §7025 by referring to Webster's Dictionary (Op. p9). This is not correct because an "individual" is in fact defined by 5 USC §552a which is NOT a "natural person" or biological being.

Just as we are not liberty to seek ingenious analytical instruments to avoid giving a congressional enactment the broad scope its language and origins may require, (citations omitted), so too are <u>we not at liberty to recast the statute to expand its application beyond the limited reach Congress gave it"</u> (*Ngiraingas v Sanchez, (1990) 495 US 182*).

The Business and Professions Code §7000 et seq only applies to artificial persons and cannot be recast to extend beyond the limited reach given by denying Constitutional protections.

There was no evidence presented at trial Petitioner is an "individual", 'citizen of the United States', 'resident' of the District of Columbia, "alien lawfully admitted for permanent residence" or a thing/entity in commerce.

**d. Has Petitioner has been denied a Republican form of government?**

On every voter application, and nearly every application for a professional license, an applicant is required to declare under penalty of perjury they are a "citizen of the united states". That sounds well and good until one discovers there are in fact two "United States". One is representative of the collective government of the States united, the other, a municipal corporation (16 Stat. 419) also known as the District of Columbia, "the District". The municipal law of the District of Columbia is Roman Civil Law.

Roman Civil Law equates to absolute, exclusive territorial, personal, and subject-matter legislative power (and executive and judicial jurisdiction) over residents of municipal territory.

"It is therefore a self evident proposition, that the jurisprudence of the United States[6] is not founded in the civil law" (*Baines, infra.).* This is in large part because the Constitution for the United States (Article 4, §4) ensures a Republican, <u>not</u> a municipal form of government.

The best symbol of Roman Civil Law is the badge of authority borne before Roman magistrates in ancient Rome, the fasces (Lat., from plural of fascis bundle)—a bundle of rods with an ax bound up in the middle and the blade projecting—as displayed on the Seal of the United States Senate, the wall behind

---

[6]  the government of the States united!

the podium in the House of Representatives, reverse of the Mercury dime, National Guard Bureau insignia, Seal of the United States Tax Court, etc.

These images are important to see and confirm for oneself:[7]






United States Tax Court: https://en.wikipedia.org/wiki/United_States_Tax_Court#/media/ File:Seal_of_the_United_States_Tax_Court.svg

Americans who do not physically reside in the District of Columbia today nevertheless are treated as residents of that municipality for legal purposes based on certain stealth legislation, fraud, and misrepresentation.

The purpose of the stealth legislation is revenue. That is to re-venue the unsuspecting American People to a jurisdiction foreign to their Constitution and unacknowledged by their Laws by giving their purported 'consent' to be ruled under Roman Civil Law/ Admiralty.

The 'sleight of hand' in changing the venue and jurisdiction from a judicial State admitted under common Law to a municipal territory under civil law is accomplished in several steps. First, by federal government control of the information in the 'mandatory' education system so that children aren't taught the *actual* nature of the Constitution, history and laws of their country.

Second, through the implementation of millions of codes, statutes, and regulations the average person – living in survival mode just to make ends meet – has no time to be able to comprehend. Any attempt at doing so often results in despair and being utterly overwhelmed.

Third, by changing the common meanings of words to their opposite such as "person"  (a living being) in law almost always means or includes a corporation, a lifeless 'dead' fiction.

Another example is the transmutation of the word "State" in violation of literally dozens of legal principles and supreme court decisions to mean the District of Columbia such as found in The Act of June 30, 1864, 13 Stat. 223, 306:

SEC. 182. And be it further enacted, That wherever the word state is used in this act it shall be construed to include the territories and the District of Columbia, where such construction is necessary to carry out the provisions of this act.

The District of Columbia is not a "State" as defined by the Constitution.

Since June 30, 1864, in all congressional statutes and constitutional amendments, such as the Fourteenth, Sixteenth, and Eighteenth Articles of Amendment to the Constitution, "state," "State," and "United States" are defined or construed to mean, ultimately, the District of Columbia.

The fourth and final straw is the implementation of a judiciary that when confronted with these abominations of justice, either has no idea it's happening and thinks a Petitioner is some sort of crack pot, or in fact knowingly conceals all of it by denying any remedy[8].

It's important to see how this is actually carried out within the Business and Professions Code.

The statute used in this case, §7031(b) reads as follows:

"…a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.

---

[8] The appellate "court" denied Petitioner's Motion For Judicial Notice on this issue violating judicial process and the supreme court's holdings in *Miranda v Arizona, (1966) 384 US 436, 491:"Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them."*

Why not just say "may bring an action in California". The reason is, the de jure State "California" is NOT the venue.

The General Provisions of the BPC at §21 define the word "state" as: "State" means the State of California, unless applied to the different parts of the United States. In the latter case, it includes the District of Columbia and the territories. (emphasis added)

YOU CANNOT READ THE DEFINITION OF §21 USING YOUR DEFINITION OF WHAT A STATE IS. YOU MUST READ IT AS IF YOU DON'T KNOW BECAUSE §21 IS GIVING IT A NEW MEANING!

You can't use the word "state" to define "*state* of california". That's like saying "zirca means zirca of California". We still don't know what "zirca" means.

Again, why not just say "State means California". It obviously doesn't say that because that's not what it means.

The only definition *actually* given by §21 is that it includes the District of Columbia and the territories.

The California Civil Code of Procedure §17 upon which jurisdiction was alleged for the appeal court to hear this case defines "state" as: "State" includes the District of Columbia and the territories when applied to the different parts of the United States, and the words "United States" may include the district and territories. It can't get any clearer!

There is no Constitutional authority for any de jure State to have jurisdiction over the District of Columbia or the territories or vice versa.

Let's return to an "Application For Original Contractors License".

The Application reveals the <u>mandatory</u> requirement of submission to the District of Columbia by providing a Social Security Number (SSN), Individual Tax Payer Identification Number (ITIN) or Federal Employer Identification Number (FEIN):

If you fail to disclose your SSN, ITIN, or FEIN, your application will not be processed (Page 8, Application For Original Contractors License (6/17); http://www.cslb.ca.gov/Resources/FormsAndApplications/ApplicationForOriginalContractorsLicense.pdf

The controlling definition of "State" in the chapter of the Internal Revenue Code ("IRC" or "26 U.S.C.") relating to Social Security payroll and Medicare taxes, Chapter 21 Federal Insurance Contributions Act (FICA), is Section 3121(e)(1); to wit:

(e) . . . For purposes of this chapter—

. . . (1) State

The term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa.

Because "includes" is also an IRC term and appears in the above definition of "State," we first must account for its definition and meaning before we can determine the full extent of the meaning of "State."

The controlling definition of the IRC term "includes" is found at 26 U.S.C. § 7701(c); to wit:

The terms "includes" and "including" when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined.

Another way of saying the same thing in fewer words is "The terms 'includes' and 'including' do not exclude things not enumerated which are in the same general class." (27 C.F.R. § 72.11).

This means that other things, though not expressed in a particular definition, nevertheless are included in its meaning if they are of the same general class as those listed.

[Is your mind numb yet? Are you tuning out? That's the point of all this confusing legalese   legislation! It's actually a form of psychological warfare upon the People.]

In the above definition of the IRC term "State," what the District of Columbia, Commonwealth of Puerto Rico, Virgin Islands, Guam, and American Samoa have in common is that they are all bodies politic (a) subject to the exclusive legislative power of Congress[9] and (b) whose respective government imposes its own income taxes and withholding taxes on its own residents[10].

There is one and only one other body politic of this same general class: the Commonwealth of the Northern Mariana Islands.

Wherefore, the 26 U.S.C. § 3121(e)(1) "States" are the District of Columbia, Commonwealth of Puerto Rico, Virgin Islands, Guam, American Samoa, and Commonwealth of the Northern Mariana Islands and no other body politic.

---

[9] Constitution, Articles I, sec. 8, cl. 17 and IV, sec. 3, cl. 2.

[10] IRS.gov, "Persons Employed In a U.S. Possession / Territory - FIT,"  https://www.irs.gov/individuals/international-taxpayers/persons-employed-in-us-possessions (accessed September 10, 2018).

This means that for purposes of Social Security payroll and Medicare taxes, only residents of the "State" of District of Columbia are liable (the five other so-called States have their own withholding taxes); residents of Union-members (e.g., Florida, Idaho, Oklahoma, etc.) are excluded.

Therefore if one does not reside in the District of Columbia but is paying Social Security payroll and Medicare taxes, they are being treated (and conducting themselves) as a resident, for legal purposes, of the "State" of District of Columbia.

The same thing happens when one submits an "Application" for a "Contractors License".

Certain proceedings in courts of the United States

Every civil or criminal proceeding in every court of the United States regarding an alleged debt allegedly owed to the United States is administered in accordance with the provisions of 28 U.S.C. Judiciary and Judicial Procedure, Chapter 176, Federal Debt Collection Procedure, which provides its own exclusive definition of "State" and "United States"; to wit:

§3002. Definitions

As used in this chapter:

. . . (14) "State" means any of the several States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Marianas, or any territory or possession of the United States.

(15) "United States" means—

(A) a Federal corporation;

(B) an agency, department, commission, board, or other entity of the

United States; or

(C) an instrumentality of the United States.

<u>Rules and principles of statutory interpretation</u>

To interpret the meaning of a particular statute or statutory definition, one must employ the same rules of statutory interpretation which were used to compose such statute or definition.

We cannot know the exact meaning of the above definition of "State" until we account for the following things: (a) there is a phrase of uncertain meaning in the definition, "the several States," and (b) there is another 28 U.S.C. § 3002 term in the definition, "United States."

Regarding (a): Whereas, it is not possible to know the meaning of the phrase "the several States" until the meaning of "State" is determined, the rule that allows us to interpret the meaning of this phrase correctly is Rule 8, noscitur a sociis (known by its associates).

Applying noscitur a sociis, the surrounding words in the statute, i.e., "any of . . . the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Marianas, or any territory or possession of the United States," tell us that the phrase "the several States" means the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Marianas, and each respective territory and possession of the United States and no other body politic.

Regarding (b): Inspecting subsections (A), (B), and (C) of the above controlling definition of the statutory term "United States" at 28 U.S.C. § 3002(15), we see that the controlling subsection is (A): "a Federal corporation."

Whereas, the only Federal corporation possessed of agencies, departments, commissions, boards, instrumentalities, and other entities, as those things are expressly listed in subsections (B) and (C) of the definition, is the District of Columbia, a Federal municipal corporation:

● The meaning of the 28 U.S.C. § 3002(15) term "United States" equates to the District of Columbia; and

● The District of Columbia (a Federal municipal corporation) is also known as and doing business as "United States."

<u>Correct interpretation of the meaning of the 28 U.S.C. § 3002(14) term "State"</u>

The 28 U.S.C. § 3002(14) term "State" means any of the following: the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Marianas, Guam, American Samoa, Virgin Islands, Republic of the Marshall Islands, Federated States of Micronesia, Republic of Palau, Palmyra Atoll, Wake Atoll, Baker Island, Howland Island, Jarvis Island, Johnston Atoll, Midway Atoll, Sand Island, Kingman Reef, or Navassa Island[11] and <u>no other body politic.</u>

Notice that none of the members of the Union (e.g., New Mexico, Vermont, Oregon) are included in the meaning of the definition of the 28 U.S.C. § 3002(14) term "State."

---

[11] See U.S. Dept. of the Interior, Office of Insular Affairs, "Islands We Serve," <u>http://www.doi.gov/ oia/islands/index.cfm</u>, and "Puerto Rico," <u>https://www.doi.gov/oia/islands/puertorico</u>; and U.S. Fish & Wildlife Service, "Navassa Island," <u>https://www.fws.gov/refuge/Navassa_Island</u>, and "Pacific Remote Islands: <u>https://www.fws.gov/refuge/ Pacific_Remote_Islands_Marine_National_Monument</u>;

Correct interpretation of the meaning of the 28 U.S.C. § 3002(15) term

"United States"

Congress have created a special "United States" for use in all civil or criminal proceedings in all courts of the United States regarding an alleged debt allegedly owed to the "United States" (District of Columbia)—and each and every mention of "United States" in any such civil or criminal proceeding (as in United States District Judge, United States District Court, United States Marshal, United States Attorney, etc.) literally and legally means "a Federal corporation" and equates to the District of Columbia, a Federal municipal corporation.

Every legislative, executive, and judicial officer of that certain government established by the Constitution must have constitutional authority for every official act he undertakes; to wit (Underline emphasis added.):

As regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it. Their concurrence is necessary to vest it. . . . It can be brought into activity in no other way. . . . (*The Mayor v. Cooper, (1867) 73 U.S. 247, 252*).

**There being no provision of the Constitution that gives officers of a municipal corporation the capacity to take jurisdiction anywhere outside the territory occupied by the body politic of the subject municipality, no act of Congress can supply anything that creates jurisdiction for such officers anywhere else.**

Modernly, all counties are municipal corporations incorporated under the authority of the "state" / "State" / "STATE," each of which is a statutory term the ultimate meaning of which in all American bodies of law is the District of Columbia.

In the dictionary, the primary definition of the word "state" equates to a body politic, not a geographical area. Since the words "state" / "State" / "STATE" have been transmuted into meaning ultimately, the District of Columbia (a particular body politic), the title "State of California" literally is code for District of Columbia of California, i.e. that certain body politic of legal residents of the District of Columbia who physically reside in California.

Article IV, Section 4 of the Constitution for the United States of America, "Constitution", provides, in pertinent part, that "The United States shall guarantee to every State in this Union a Republican Form of Government."

Notwithstanding this guarantee, the current form of government found in "every State in this Union," id., though seemingly republican in form, is ultimately municipal—because, as evidenced, every such State (i.e., body politic, not geographic area) has been transmuted into a political subdivision of the District of Columbia, a municipal corporation, 16 Stat. 419, whose municipal law is Roman Civil Law.

"…the jurisprudence of the United States is not founded in the civil law" (*Bains v James and Catherine, (1832) 2 F. Cas. 410)*.

Based on this evidence it is apparent neither the trial court nor the appellate court, nor this Supreme Court are "judicial constitution courts" *(FRC, supra)*. Has the de jure State: California been legally transmuted to a territory?

Jurisdiction was directly challenged at the trial court and on appeal. As such, Respondents have the burden of proving it which they have repeatedly failed to do. The courts therefore have a non-discretionary duty to dismiss this case. *(McNutt v General Motors (1936) 298 US 178)*.

Both the trial and appeal courts have refused to provide the actual details of the evidence they rely upon to substantiate jurisdiction and/or find Petitioner in violation of the offense. This cannot possibly be considered judicial process or fair and impartial proceedings.

In this instance it is imperative as commensurate with Article 5 of the Constitution, a convention of the People must be convened to decide these issues effecting their collective status and standing. Constitutionally speaking, this nor any other court or legislative body has such status, standing, or capacity to do so.

### e. Is Petitioner in Constructive Custody?

Petitioner was also the qualifying individual on another contractors license. Subsequent to the closure of that business pursuant to the housing crisis, a complaint was generated with the CSLB. The CSLB investigated the complaint over a period of years and then conducted a "mandatory arbitration" hearing pursuant to §7085 which it failed to notify Petitioner (as the qualifying individual) of. The hearing was conducted and judgment awarded without Petitioner able to represent his interests resulting in a suspension of all licenses upon which Petitioner was the qualifying individual. Spartan, whose licensed was also effected was also not notified. (This happened after the conclusion of Respondents project.)

Petitioner wrote numerous letters to the CSLB repeatedly saying he had never been notified of the hearing. The Chief of Enforcement replied, insisting the judgment was valid and to obtain a license he must pay the award.

§7085 does not give any legislative authority to conduct "mandatory arbitration". It allows for arbitration upon consent of both parties which Petitioner nor Spartan or Blackrock ever consented to. There is no indication anywhere on the Application For Original Contractors License or elsewhere one is making a knowing, voluntary, and intelligent waiver of their rights to judicial process to be subject to arbitration without appeal *(Johnson v Zerbst, (1938) 304 US 458)*.

Pursuant to a certified public records act request, Petitioner confirmed the CSLB never sent a notification to him or Spartan of the proceedings and further confirmed, by other documents no consent was made.

Based on the unLawful behavior of the courts in this case and the CSLB, Petitioner is unable to work in his profession in fear of the threat of incarceration

for contracting without a license or further cruel and unusual fines and punishment. He is faced with being forced into bankruptcy and being divested of his entire estate. He has been deprived of his property – the Right to work in his profession using his talents, his State Citizenship and Rights protected thereby, and his humanity as a biological being, without just compensation.

Despite raising all of these Constitutional issues on appeal, the appeal court failed to address them with the exception of part a. There is no mention of them in it's Opinion which Petitioner feels is another violation of judicial process. The court cannot deny a litigants Constitutional claims by ignoring them.

"We have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given. The one or the other would be **treason** to the Constitution" (*Cohens v Virigina, supra.*)

Petitioner respectfully requests this court grant this Petition for Review.

Adam Bereki
In Propria Persona
December 9, 2018

## WORD COUNT CERTIFICATE

Not including sections identified by CRC 8.204(c)(3), this brief has 8357 words. I rely upon the word-counting function of Pages, the word-processing program used to generate this Petition, in making this certification.

Dated: December  10, 2018     _____

                                   Adam Bereki, In Propria Persona

Court of Appeal, Fourth Appellate District, Division Three
Kevin J. Lane, Clerk/Executive Officer
Electronically FILED on 10/31/2018 by Sandra Mendez, Deputy Clerk

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GARY HUMPHREYS et al., | |
| Cross-complainants and Respondents. | G055075 |
| v. | (Super. Ct. No. 30-2015-00805807) |
| ADAM BEREKI, | O P I N I O N |
| Cross-defendant and Appellant, | |

Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.

Adam Bereki, in pro. per., for Plaintiff and Appellant.

William G. Bissell for Defendants and Respondents.

\*          \*          \*

This case involves the purported general contractor for a condominium remodel project, Adam Bereki, on one side, and the condominium owners, Gary and Karen Humphreys (the Humphreys), on the other.  After the Humphreys terminated Bereki's involvement, a now defunct corporation formerly owned by Bereki, Spartan Associates, Inc. (Spartan Associates), sued Humphreys, claiming they still owed approximately $83,000 for work on the project.  The Humphreys denied the allegations and cross-complained against Bereki and Spartan Associates.  Among the remedies they sought was disgorgement of all payments made for the project, pursuant to Business and Professions Code section 7031, subdivision (b)[1], due to Bereki's alleged failure to possess a required contractor's license.

Following a bifurcated bench trial on the disgorgement cause of action, the trial court found in favor of the Humphreys and ordered Bereki to repay them all monies received in relation to the remodel work — $848,000.  Its ruling and a stipulation by the parties disposed of the remainder of the case and Bereki appealed.  He challenges the disgorgement on a variety of constitutional, legal, and factual grounds.  We find no merit in his contentions and, therefore affirm the judgment.

I

Facts

The Humphreys own a condominium on Lido Isle in the City of Newport Beach.  It was originally two separate units. The couple hired Bereki to do some remodeling which would, among other things, turn the two units into a single unit.  After an on-site walkthrough, the Humphreys exchanged e-mails with Bereki to confirm the scope of the project.  In one of his e-mails, Bereki stated he and his partner would perform the work for a specified rate.

---

[1]    All further statutory references are to the Business and Professions Code unless otherwise indicated.

2

The Humphreys agreed to the proposed scope and rates, and also inquired whether a written contract was necessary.  Bereki responded that it was not; their "'words/commitment [was] enough.'"  To start the project, Bereki asked the Humphreys for a $15,000 check deposit payable to him, personally.

Several months into the remodel the Humphreys, at Bereki's request, started making their progress payments to Spartan Associates instead of paying Bereki directly as an individual.  Bereki never gave them an explanation for the change or what, if any, involvement Spartan Associates had in the project, but the accountings he sent included the name "Spartan Associates."

After approximately a year and a half, the Humphreys terminated Bereki's involvement and later hired a different general contractor to complete the project.

Believing the Humphreys still owed approximately $82,800 for materials used in the remodel and labor performed, Spartan Associates sued to recover that amount. The Humphreys generally denied the allegations in the complaint, and filed a cross-complaint against Bereki, Spartan Associates, and a surety company.  Among the allegations were causes of action for negligence, intentional misrepresentation, and negligent misrepresentation.  The trial court later granted them leave to amend the cross-complaint to include a cause of action for disgorgement of funds paid to an unlicensed contractor, pursuant to section 7031, subdivision (b).

At the Humphreys' request, the trial court bifurcated the disgorgement claim from the remainder of the claims in the cross-complaint, and it held a trial on that issue first.  During the course of the two-day bench trial on the disgorgement cause of action, the court heard testimony from the Humphreys and Bereki.

Karen Humphreys testified it was her understanding, based on the initial e-mails exchanged with Bereki, that she and her husband were contracting with Bereki and his partner to do the work.  They wanted a licensed contractor to do the work and obtain all the necessary permits, and she "took [Bereki] at his word that he had a license."

She also testified there was no mention of Spartan Associates until months after the project began and insisted they never entered into a contract with Spartan Associates.

Gary Humphreys concurred with his wife's testimony about the remodel details, the series of events that transpired between them and Bereki, and the agreement he believed they entered into with Bereki.  In addition, he confirmed Bereki told him he was a licensed contractor and stated he would not have hired him if he knew it was otherwise.

In contrast, Bereki testified the contract for the couple's remodel project was between the Humphreys and Spartan Associates.  He nevertheless acknowledged his initial e-mail communications to the Humphreys made no mention of Spartan Associates, including the one which set forth the proposed scope of work and hourly rates.  When asked about contractor's licenses, he admitted he never possessed one as an individual or as a joint venture with his partner.  Spartan Associates, however, did have a contractor's license at the time of the project.

As for the work done for the Humphreys, Bereki testified he believed Spartan Associates performed all of it.  He testified that the three city permits for the project were all obtained by, and issued to, Spartan Associates.  Additionally, he produced contracts with subcontractors who performed aspects of the remodel work.  The majority of these contracts were between the given subcontractor and Spartan Associates.[2]

The trial court found in favor of the Humphreys on the disgorgement cause of action based on its determination that Bereki, not Spartan Associates, was the

---

[2]   Bereki filed an unopposed motion to augment the record on appeal with certain exhibits admitted in the trial court.  We deny the request because the exhibits already are "deemed part of the record" by Court Rule.  (Cal. Rule of Court, rule 8.122(a)(3).)  We have considered the copies of the exhibits he provided in conjunction with our review of this appeal.

contractor who performed all the remodel work.  As a result, the court also found in favor of the Humphreys on Spartan Associates's complaint.  The remainder of the cross-complaint was dismissed without prejudice at the Humphreys' request.

## II

### DISCUSSION

Bereki challenges the portion of the judgment disgorging all compensation paid to him for his work on the Humphreys' remodel project. [3]  Though articulated in various ways, his arguments boil down to the following:  (1) disgorgement under section 7031, subdivision (b), is unconstitutional or, alternatively, criminal in nature; (2) the trial court erred in ordering disgorgement because Spartan Associates, not Bereki, performed the work and Spartan Associates held a contractor's license; (3) even assuming Bereki performed the work, the state's contractor licensing requirement does not apply to him as a "natural person"; (4) there was insufficient evidence to support disgorgement, including no evidence of injury due to Bereki's failure to be individually licensed; (5) the court should have offset the disgorgement amount by the value the Humphreys received through the remodel work; (6) it was improper to order full disgorgement because certain payments were not made from the Humphreys' personal accounts; and (7) the court

---

[3]   Bereki appears to also challenge a postjudgment sanctions order the trial court issued based on Bereki's motion to compel a response to a demand for a bill of particulars filed after entry of judgment.  The sanctions order is not encompassed by his earlier appeal from the judgment.  And although such a postjudgment order is separately appealable (Code Civ. Proc., § 904.1, subds. (a)(2) & (b)), Bereki did not file another appeal. Accordingly, the issue is not before us.  (*Silver v. Pacific American Fish Co., Inc.* (2010) 190 Cal.App.4th 688, 693 [court without jurisdiction to review postjudgment order from which no appeal is taken].)

erroneously failed to provide a written statement of decision.[4]  We find no merit to any of these contentions.

A.    *Disgorgement Remedy Under Section 7031*

Relying heavily on *White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 517 (*White*), the decision in *Alatriste v. Cesar's Exterior Designs, Inc.* (2010) 183 Cal.App.4th 656, 664-666 (*Alatriste*) aptly summarizes the nature, purpose and scope of the litigation prohibition and the disgorgement remedy provided in section 7031, subdivisions (a) and (b).

"Section 7031[, subdivision] (b) is part of the Contractors' State License Law (§ 7000 et seq.), which 'is a comprehensive legislative scheme governing the construction business in California.  [This statutory scheme] provides that contractors performing construction work must be licensed unless exempt.  [Citation.]  "The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business.  [Citations.]"

---

[4]    After briefing was complete, Bereki filed a motion asking that we take judicial notice of a plethora of items, among which are the federal Constitution and other foundational documents for this country, federal and state statutes, and a variety of case law.  To begin, "[r]equests for judicial notice should not be used to 'circumvent [ ]' appellate rules and procedures, including the normal briefing process."  (*Mangini v. R. J. Reynolds Tobacco Co*. (1994) 7 Cal.4th 1057, 1064, overruled on another point as stated in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257.)  Further, "[a] request for judicial notice of published material is unnecessary.  Citation to the material is sufficient."  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45, fn. 9.)  We therefore deny Bereki's request as unnecessary to the extent it included such materials.  As for the remaining items, we likewise deny the request because we find them not properly the subject of a request for judicial notice and/or irrelevant to resolution of the matters before us.  (Evid. Code, §§ 451, 452; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1089, fn. 4 [appellate court will not take judicial notice of irrelevant material].)

[Citation.]  The [laws] are designed to protect the public from incompetent or dishonest providers of building and construction services.  [Citation.]'  [Citation.]

"This statutory scheme encourages licensure by subjecting unlicensed contractors to criminal penalties and civil remedies.  [Citation.]  The civil remedies 'affect the unlicensed contractor's right to receive or retain compensation for unlicensed work.'  (*Ibid.*)  The hiring party is entitled to enforce these remedies through a defensive 'shield' or an affirmative 'sword.'  [Citation.]

"The *shield*, contained in section 7031[, subdivision] (a), was enacted more than 70 years ago, and provides that a party has a complete defense to claims for compensation made by a contractor who performed work without a license, unless the contractor meets the requirements of the statutory substantial compliance doctrine. [Citation.]  Section 7031[, subdivision] (e), the substantial compliance exception, provides relief only in very narrow specified circumstances, and '*shall not apply* . . . where the [unlicensed contractor] has never been a duly licensed contractor in this state."  [Citation.]

"The California Supreme Court has long given a broad, literal interpretation to section 7031[, subdivision] (a)'s shield provision.  [Citation.]  The court has held that [it] applies even when the person for whom the work was performed *knew* the contractor was unlicensed.  [Citation.] . . . .  [It] explained that ""Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties*, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state.  [Citation.] . . .'""  [Citation.] '"Because of the strength and clarity of this policy [citation]," the bar of section 7031 [,  subdivision] (a) applies "[r]egardless of the equities."'  [Citations.]

"In 2001, the Legislature amended section 7031 to add a *sword* remedy to the hiring party's litigation arsenal.  This sword remedy, contained in section

7031[,subdivision] (b), currently reads: 'Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.' [¶] By adding this remedy, the Legislature sought to further section 7031[,subdivision] (a)'s policy of deterring violations of licensing requirements by 'allow[ing] persons who utilize unlicensed contractors to recover compensation paid to the contractor for performing unlicensed work. [Citation.]' [Citation.]" (*Alatriste, supra*, 183 Cal.App.4th at pp. 664-666, fns. omitted.)

Based on the statutory language and legislative history, both *Alatriste* and *White* "concluded that the Legislature intended that courts interpret sections 7031[, subdivision] (a) and 7031[, subdivision] (b) in a consistent manner, resulting in the same remedy regardless of whether the unlicensed contractor is the plaintiff or the defendant." (*Alatriste, supra*, 183 Cal.App.4th at p. 666, citing *White, supra*, 178 Cal.App.4th at pp. 519-520.) These principles are well-settled under the law.

Bereki contends the disgorgement remedy is penal in nature and, therefore, a contractor defending against such a claim must be afforded all criminal rights and protections. Not so. Disgorgement is a civil consequence — "an equitable remedy" — for performing work without a required contractor's license. (*S.E.C. v. Huffman* (5th Cir. 1993) 996 F.2d 800, 802 (*S.E.C.*); see *Walker v. Appellate Division of Superior Court* (2017) 14 Cal.App.5th 651, 657 [§ 7031 contemplates civil proceedings].) The Legislature created a separate criminal penalty. Specifically, section 7028 provides that acting or operating in the capacity of a contractor without a required license is a criminal misdemeanor subject to jail time, or fines, and restitution. (§ 7028, subds. (a)-(c), (h).)

For similar reasons, Bereki's attempt to characterize disgorgement as an award of unconstitutional punitive damages is unavailing. As an equitable remedy, disgorgement is not punishment and, therefore, it does not implicate the excessive fines

8

clause of the Eighth Amendment to the United States Constitution.  (*S.E.C., supra*, 996 F.2d at p. 802; see *U.S. v. Philip Morris USA* (D.C. 2004) 310 F.Supp.2d 58, 62-63.)

B.    *Contractor Licensing Requirement*

          Before turning to application of section 7031, subdivision (b), we address Bereki's claim that he, in his individual capacity, did not need a contractor's license.  His argument is twofold, one part legal and the other part factual.  We reject both.

          As for the legal argument, Bereki asserts that licensing requirements only apply to "fictitious" persons, not "natural" persons such as himself.  He cites no authority for his unique interpretation of the relevant statutes.  And, the statutes provide otherwise.  Contractors who are required to obtain a license include "[a]ny person . . . who . . . undertakes, offers to undertake, purports to have the capacity to undertake, or submits a bid to construct any . . . home improvement project, or part thereof."  (§ 7026.1, subd. (a)(2).)  In turn, "'[p]erson'" is defined to include "an individual[,]" as well as a variety of types of business entities and associations.  (§ 7025, subd. (b).)  "In ordinary usage[,] the word 'individual' denotes a natural person not a group, association or other artificial entity.  (See Webster's Third New Internat. Dict. (2002 ed.) p. 1152 [giving a primary definition of 'individual' as 'a single human being as contrasted with a social group or institution'].)"  (*City of Los Angeles v. Animal Defense League* (2006) 135 Cal.App.4th 606, 623, disapproved of on other grounds in *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 416.)  There is nothing in the statutes that indicates a different, specialized meaning.  (*Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238 ["In examining the language, the courts should give to the words of the statute their ordinary, everyday meaning [citations] unless, of course, the statute itself specifically defines those words to give them a special meaning"].)

Bereki's factual attack concerns the trial court's conclusion that he, not Spartan Associates, was the contractor who performed the remodel work for the Humphreys. Though he implores us to engage in de novo review of this issue, it is a factual determination which we review for substantial evidence. (*Escamilla v. Deppartment of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 514.) There is ample evidence in the record supporting the court's conclusion.[5]

Both of the Humphreys testified that on the first day they met Bereki for a walkthrough of the site, he informed them that he and his partner would act as the general contractor for the project. Bereki followed up with a written proposal and estimate, which he sent to the couple from his personal e-mail address. When they inquired whether he had a contractor's license, he assured them he did, and when they asked him to whom they should make out their payment checks, he told them to put them in his name.

At no time during this series of events did Bereki ever mention Spartan Associates. Notably, Bereki did not apply to the State Board of Equalization to register Spartan as an employer until roughly three months after the remodel work began. Then, about four months into the project, he introduced the corporation into the mix by asking the Humphreys, without any explanation, to make future payments to Spartan Associates.

---

[5]    Bereki filed a motion asking us to consider additional evidence not presented in the trial court, among which are two declarations, an e-mail correspondence and a letter. He believes the documents are relevant to establishing the identity of the contracting parties. We deny the motion as "[i]t has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, *upon a record of matters which were before the trial court for its consideration*.'" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405, italics added.)  Circumstances warranting an exception to this rule are very rare and we do not find them extant here, particularly in light of the conflicting evidence weighed by the trial court. (See *Diaz v. Professional Community Management, Inc.* (2017) 16 Cal.App.5th 1190, 1213 ["'The power to take evidence in the Court of Appeal is never used where there is conflicting evidence in the record and substantial evidence supports the trial court's findings.'"].)

Based on what transpired, the couple believed they contracted with Bereki, in his individual capacity, to complete the remodel work.

While Bereki claims the Humphreys lied when they testified at trial because some of their factual statements purportedly contradicted those they made at the summary judgment stage, our role is not to resolve factual disputes or to judge the credibility of witnesses.  (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518.)  The trial court bore that responsibility in this case, and our review of the record reveals substantial evidence to support its conclusion that Bereki, not Spartan Associates, was the contractor for the job.

## C.   *Disgorgement Remedy Under Section 7031*

Separate from his general attacks on section 7031, subdivision (b), Bereki challenges its application under the specific facts of this case.  He first asserts disgorgement is an improper remedy because it gives the Humphreys a double benefit — the remodel improvements and the money they otherwise would have paid for them.  In the context of the statute at issue, however, courts have uniformly rejected such an argument and required disgorgement, even though this remedy often produces harsh results.  (See, e.g., *Alatriste, supra*, 183 Cal.App.4th at pp. 672-673; *White, supra*, 178 Cal.App.4th at pp. 520-521; see also *Jeff Tracy, Inc. v. City of Pico Rivera* (2015) 240 Cal.App.4th 510, 521.)  Full disgorgement is required; offsets and reductions for labor and materials received are not permitted.

Equally meritless is Bereki's contention that there was no justiciable claim under the statute because there was no evidence the Humphreys were injured by his lack of a contractor's license.  Bereki cites no authority for that novel proposition.  Injury is not an element of a cause of action under the statute.  The disgorgement consequence is not remedial in nature.  Similar to the licensing requirement, it is a proactive measure

intended to decrease the likelihood of harm due to "incompetent or dishonest providers of building and construction services." (*White, supra*, 178 Cal.App.4th at pp. 517.)

We also are not persuaded by Bereki's objection to the amount the court ordered him to repay to the Humphreys. He highlights evidence showing that some of the payment checks came from Gary Humphreys' corporation, and he argues the Humphreys are not entitled to those amounts given they did not pay them in the first instance. While we do not necessarily see eye-to-eye with Bereki's legal reasoning, we need not reach the legal aspect of his argument due to the trial court's factual findings.

The trial court, relying on Gary Humphreys' uncontradicted testimony, found that the contested payments ultimately were attributable to Gary Humphrey himself. Substantial evidence supports this conclusion. The Humphreys testified that the business is an S corporation, and at the relevant time Gary Humphreys was the sole shareholder and an employee. Gary Humphreys explained he was traveling often for business during the remodel, including at times when Bereki insisted on needing money "'right away.'" To facilitate the payments, Gary Humphreys had persons in his corporation with signing authority write checks from the corporate account. The amounts paid on the Humphreys behalf were then accounted for through a reduction in the regular income Gary Humphreys received from the corporation. He paid income taxes on those amounts because they were included in the figures listed on his annual W-2 form.

Under these circumstances, we find ample evidence to support the trial court's factual finding that although certain payments to Bereki were made from the Humphreys' business account, they ultimately were accounted for in a way that ensured they were personal payments from the Humphreys, as individuals. Accordingly, the Humphreys were entitled to "all compensation paid." (§ 7031, subd. (b).)

We recognize that the provisions of section 7031, including the disgorgement remedy, are harsh and may be perceived as unfair. As courts have explained, however, they stem from policy decisions made by the Legislature.

(*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005)
36 Cal.4th 412, 423; *Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988,
995; *Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 151; see *Judicial Council
of California v. Jacobs Facilities, Inc.* (2015) 239 Cal.App.4th 882, 896; *Alatriste, supra*,
183 Cal.App.4th at p. 672.)  "[T]he choice among competing policy considerations in
enacting laws is a legislative function" (*Coastside Fishing Club v. California Resources
Agency* (2008) 158 Cal.App.4th 1183, 1203), and absent a constitutional prohibition, we
may not interfere or question the wisdom of the policies embodied in the statute.  (*Marine
Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 25; *Alatriste, supra*,
183 Cal.App.4th at p. 672.)

D.    *Statement of Decision*

         Though he admits he did not timely request a statement of decision, Bereki
claims the trial court should have nevertheless provided one after he made an untimely
request.  To the contrary, "[n]o statement of decision is required if the parties fail to
request one."  (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959,
970; see also Code Civ. Proc., § 632.)  The trial court's denial was proper.  (See *In re
Marriage of Steinberg* (1977) 66 Cal.App.3d 815, 822 [upholding court's refusal to make
findings of fact and conclusions of law due to party's failure to timely request them].)

III

DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.

ARONSON, J.

WE CONCUR:

O'LEARY, P. J.

GOETHALS, J.

14

**167**

POS-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY:        STATE BAR NO: | FOR COURT USE ONLY |
|---|---|
| NAME: Adam Bereki | |

FIRM NAME: In Propria Persona
STREET ADDRESS: 818 Spirit
CITY: Costa Mesa                    STATE: Ca    ZIP CODE: [92626]
TELEPHONE NO.: 949.241.6693        FAX NO. :
E-MAIL ADDRESS: abereki@gmail.com
ATTORNEY FOR (name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS: 700 W. Civic Center Dr
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

Plaintiff/Petitioner: Adam Bereki

Defendant/Respondent: Karen and Gary Humphreys

CASE NUMBER:
G055075/ 30-2015-00805807

JUDICIAL OFFICER:
Chaffee

DEPARTMENT:
C-20

## PROOF OF SERVICE—CIVIL
**Check method of service** *(only one):*

☐ By Personal Service  ☒ By Mail  ☐ By Overnight Delivery
☐ By Messenger Service  ☐ By Fax

---

***Do not use this form to show service of a summons and complaint or for electronic service.***
***See USE OF THIS FORM on page 3.***

1. At the time of service I was over 18 years of age **and not a party to this action**.

2. My residence or business address is:

    818 Spirit Costa Mesa, California, [92626]

3. ☐ The fax number from which I served the documents is *(complete if service was by fax):*

4. On *(date):* 12/7/18          I served the following **documents** *(specify):*
    Peition For Review

    ☐ The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:
    a. Name of person served: Clerk of Court *Contractors State License Board*
    b. ☐ *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*

       Business or residential address where person was served:
       Central Justice Center Attn Clerk of Court 700 W. Civic Center Drive Santa Ana 92701 *: CSLB PO Box 26000 Sacramento, CA 95826*

    c. ☐ *(Complete if service was by fax.)*

       Fax number where person was served:

    ☐ The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify):*
    a. ☐ **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

---

**Page 1 of 3**

Form Approved for Optional Use
Judicial Council of California
POS-040 [Rev. February 1, 2017]

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**

Code of Civil Procedure, §§ 1011, 1013, 1013a,
2015.5; Cal. Rules of Court, rule 2.306
www.courts.ca.gov

**168**

POS-040

| CASE NAME: | CASE NUMBER: |
|---|---|
| Spartan v. Humphreys | G055075 |

6. b. [×] **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one)*:

    (1) [ ] deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2) [ ] placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

    I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*

  c. [ ] **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery *carrier* and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection *and overnight* delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

  d. [ ] **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

  e. [ ] **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 12/9/18

Roseanne Bereki
_____
    (TYPE OR PRINT NAME OF DECLARANT)

    ► _____
    (SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

### DECLARATION OF MESSENGER

[ ] **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

    At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

    I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
    (NAME OF DECLARANT)

    ► _____
    (SIGNATURE OF DECLARANT)

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**

**169**

# EXHIBIT E

SUPREME COURT
FILED

Court of Appeal, Fourth Appellate District, Division Three - No. G055075 JAN 3 0 2019

Jorge Navarrete Clerk

S252954

# IN THE SUPREME COURT OF CALIFORNIA

Deputy

**En Banc**

GARY HUMPHREYS et al., Cross-complainants and Respondents,

v.

ADAM BEREKI, Cross-defendant and Appellant.

The petition for review is denied.

CANTIL-SAKAUYE

*Chief Justice*

**170**

# EXHIBIT F

No. _____

In The

# Supreme Court of the United States

————

Adam A. Bereki,

*Petitioner,*

v.

Karen and Gary Humphreys,

*Respondents,*

————

On Petition for a Writ of Certiorari
to the State of California
Fourth District Court of Appeal
Division Three

————

**PETITION FOR A WRIT OF CERTIORARI**

————

James G. Bohm
Bohm, Wildish, & Matsen, LLP
*Counsel of Record*
695 Town Center Dr., Ste. 700
Costa Mesa, CA 92626
(714)384-6380
jbohm@bohmwildish.com

i

## QUESTIONS PRESENTED

1.  Are sections §7031(a) and (b), of the California Business and Professions Code unconstitutional in effect or as applied?
2.  Is disgorgement under the laws of restitution and unjust enrichment a penal forfeiture? What Constitutional safeguards apply?

ii

## PARTIES TO THE PROCEEDING

Adam A. Bereki, Petitioner

Karen and Gary Humphreys, Respondents

28 USC §2403(b) applies. The California Attorney General has been served.

There is no parent or publicly held company involved in this proceeding.

## TABLE OF CONTENTS

PETITION FOR WRIT OF CERTIORARI...............1

OPINIONS BELOW..................................................1

JURISDICTION .......................................................1

STATUTORY PROVISIONS INVOLVED ................1

INTRODUCTION.....................................................3

STATEMENT OF THE CASE ..................................9

    The Case................................................................10

    Trial.......................................................................12

    Appeal....................................................................17

    Petition For Review .............................................19

    Motion To Vacate Void Judgment ......................19

REASONS FOR GRANTING THE WRIT ..............21

    A. CALIFORNIA COURTS ARE IN DIRECT
    CONFLICT WITH THIS COURT'S BINDING
    PRECEDENT........................................................23

        I. §7031 Penalties are Not Disgorgement Under
        the Laws of Unjust Enrichment.......................25

        IIA. §7031 Actions Are Purely Penal (Criminal)
        Forfeitures Disguised as "Civil" .......................29

        IIB. Applying the "Kennedy Tests" to Determine
        a Statute's Civil or Criminal Nature ...............33

        III. The Judgment Is Grossly Excessive Under
        the "Gore Tests" For Excessive Punitive
        Damages ............................................................39

B. CALIFORNIA HAS DRASTICALLY
DEPARTED FROM ORDINARY JUDICIAL
PROCESS............................................................42

C. THIS CASE IS WORTHY OF THIS COURT'S
REVIEW..............................................................43

D. THE FOURTH DISTRICT COURT OF
APPEAL'S OPINION IS WRONG........................43

CONCLUSION........................................................44


APPENDIX A– OPINION, COURT OF APPEAL....1
APPENDIX B- TRIAL COURT MINUTE ORDER 19
APPENDIX C- SUPERIOR COURT MINUTE
ORDER ...................................................................24
APPENDIX D- §7031 B&P ......................................26
APPENDIX E- §7071.17 B&P..................................29
APPENDIX F- §3294 CIVIL CODE ........................33

v

# TABLE OF AUTHORITIES

## CASES

*Adams v Murakami,*
    54 Cal. 3d 105 (Sup. Ct. 1991) ........................ 42

*Austin v. United States,*
    509 U. S. 602 (1993) ......................................... 29

*Bailey v. Alabama,*
    219 U.S. 219 (1911) ........................................... 7

*Bass v United States,*
    784 Fed. 2d. 1282 (1986) ................................. 15

*Bell v. Wolfish,*
    441 U.S. 520, 539 (1979 ................................... 31

*Bennett v. Wilson,*
    122 Cal. 509 (Sup. Ct. 1898) ........................... 19

*Bennis v. Michigan,*
    516 U.S. 442, 454 (1996) ................................. 22

*BMW of North America v Gore,*
    517 U.S. 559 (1996) ............................... 5, 40, 41

*Boyd v. United States,*
    116 U.S. 616 (1886): ....................................... 31

*Cohens v. Virginia,*
    19 U.S. 264 (1821) ........................................... 18

*County of Ventura v. Tillet,*
    133 Cal. App. 3d 105 (1982) ...................... 18, 44

*Cummings v. Missouri,*
    71 U.S. 277 (1867) ............................................. 4

*Elliot v. Lessee Persol,*
    26 U.S. 328 (1828) ............................... 18, 20, 21

*Ex Parte Knowles,*
    5 Cal. 300 (Sup. Ct. 1855) .............................. 17

*Flemming v. Nestor,*
    363 U.S. 603 (1960) ........................................... 6

*Grand Prospect Partners, L.P. v. Ross Dress for Less,*
    *Inc.,* 232 Cal. App. 4th 1332 (2015) ............... 30
*Grupo Dataflux v. Atlas Global Group, L.P.,*
    541 U.S. 567 (2004) ......................................... 17
*Huntington v. Attrill,*
    146 U. S. 657 (1892) ....................................... 31
*Judicial Council of California v. Jacobs Facilities,*
    *Inc.,* 239 Cal. App. 4th 882 (2015) .............. 7, 25
*Kansas v. Hendricks,*
    521 U.S. 346 (1997) ......................................... 38
*Kennedy v. Mendoza-Martinez,*
    372 U.S. 144 (1963) ......................................... 33
*Kokesh v SEC,*
    581 U.S. ____ (2017) ................................. passim
*Lewis & Queen v. N. M. Ball Sons,*
    48 Cal. 2d 141 (1957). ..................................... 42
*McNutt v. General Motors Acceptance Corp.,*
    298 U.S. 178 (1936) .................................... 16, 18
*Meister v. Mensinger,*
    230 Cal. App. 4th 381 (2014) .......................... 43
*Miranda v. Arizona,*
    384 U.S. 436 (1966) ......................................... 17
*MW Erectors, Inc. v. Niederhauser Ornamental &*
    *Metal Works Co., Inc.,*
    36 Cal. 4th 412 (Sup. Ct. 2005) ...................... 31
*Pac. Mut. Life Ins. Co. v. Haslip,*
    *499 U.S. 1 (1991)* ................................ 4, 6, 33, 41
*People v Dutra,*
    145 Cal. App 4th 1339 (2006) .......................... 20
*Rufo v. Simpson,*
    86 Cal. App. 4th 573 (2001) ............................ 34
*SEC v. Huffman,*
    996 F.2d 800 (5th Cir. 1993) ............................ 28

*State Farm Mut. Automobile Ins. Co. v. Campbell,*
  538 U.S. 408 (2003) ....................................39, 41
*The Mayor v. Cooper,*
  73 U.S. 247 (1867) ......................................17, 42
*The Palmyra,*
  25 U.S. 1 (1827) ...............................................32
*Thompson v. Louisville,*
  362 U.S. 199 (1960) ...................................16, 18
*Timbs v. Indiana,*
  586 U.S. ____ (2019) ........................................22
*Town of Gilbert Prosecutor's Office v. Downie,*
  218 Ariz. 466 (2008 ..........................................29
*United States v $132,245.00 In U.S. Currency,*
  764 F.3d 1055 (9th Cir. 2014) ........................3,38
*United States v Halper,*
  490 U.S. 435 (1989) .........................................36
*United States v. Bajakajian,*
  524 U.S. 321 (1998) .........................................37
*United States v. Ursery,*
  518 U.S. 267 (1996) ...................................26, 38
*United States v. Ward,*
  448 U.S. 242 (1980) .........................................38
*Ward v. Coleman,*
  598 F.2d 1187 (10th Circuit 1979)...................33
*White v. Cridlebraugh,*
  178 Cal. App. 4th 506 (2009) .....................25, 27
*Windsor v. Mc Veigh,*
  93 U.S. 274 (1876) ......................................18, 21

## STATUTES

Civil Code
§3294 .......................................................................5
§3517 .......................................................................7

Business &Professions Code
§7028 ......................................................................36
§7028.17 ..............................................................24
§7031 .........................................................4, 5, 13, 42
§7071.17 …………………………………….……………..5,34

California Civil Jury Instructions
§4560 ....................................................................15
§3942 ....................................................................16
§4561 ....................................................................25

## OTHER AUTHORITIES

"Other Authorities" in Petition For Writ of
   Certiorari and Opening Brief of Petitioner,
   *Kokesh*, supra ........................................................22

Congressional Research Service, Crime and
   Forfeiture by Charles Doyle .................................22

Richard L. Cassin VimpelCom FCPA Disgorgement
   is third biggest ever,
   http://www.fcpablog.com/blog/2016/2/23/vimpelco
   m-fcpa-disgorgement-is-third-biggest-ever.html 22

Statement of Justice Thomas in *Leonard v Texas*,
   580 U.S.___ (2017), denial of certiorari ...............22

## PETITION FOR WRIT OF CERTIORARI

Adam A. Bereki petitions for a writ of certiorari to review the judgment of the California Fourth District Court of Appeal, Division 3.

## OPINIONS BELOW

The appellate Court's opinion on October 31, 2018 (Pet. App A, pp.1-18) is unpublished but can be found at 2018 Cal. App. Unpub. LEXIS 7469.  The denial of the petition for rehearing is unreported.

## JURISDICTION

The California Supreme Court's denial of the Petition For Review was entered on January 30, 2019. This Court has jurisdiction pursuant to 28 USC §1257.

## STATUTORY PROVISIONS INVOLVED

I. California Business and Professions Code §7031 (a) and (b), hereafter referred to as "§7031" declare:

(a) Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a

contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract regardless of the merits of the cause of action brought by the person, except that this prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029.

(b) Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.

Refer to (Pet. App. A 26-28) for §7031 in its entirety.

II. Refer to (Pet. App. E 29-32) for §7071.17 in its entirety.

III. Refer to (Pet. App. B 33-35)  for Civil Code §3294 in its entirety.

# INTRODUCTION

Even though Petitioner was the qualifying individual[1] of his company's contractor's license, he was ordered to forfeit $930,000 as a penalty because the court found the contract to remodel Respondents vacation home was with him personally instead of his licensed company. This amount is 186 times the comparable criminal monetary penalty for the same offense which is a fine of *up to* $5,000 plus restitution of actual damages (if any). This penalty was imposed without any of the safeguards mandated by the United States Constitution including the heightened protections of criminal proceedings.

"If the amount of the forfeiture is grossly disproportional to the gravity of defendant's offense, it is unconstitutional". *United States v. $132,245.00 In U.S. Currency,* 764 F.3d 1055, 1057-58 (9th Cir. 2014).

On appeal, Petitioner argued the $930,000 judgement was punitive and that he was punished when the court failed to apply any constitutional protections regarding excessive punitive damages. He argued he was denied fundamental due process including the assistance of counsel, the right to know

---

[1] "The qualifying individual is the person who meets the experience and examination requirements for the license and who is responsible for exercising that direct supervision and control of their employer's or principal's construction operations to secure compliance with CSLB's laws, rules, and regulations".http://www.cslb.ca.gov/Resources/FormsAndApplications/ApplicationForOriginalContractorsLicense.pdf

the nature and cause of the accusation, and proof beyond a reasonable doubt. He was even sanctioned by the trial court for challenging jurisdiction. This deprivation of rights effectively denied Petitioner a judicial hearing resulting in all applicable laws being a Bill of Attainder or Bill of Pains and Penalties in violation of Article 1, Section 10. *Cummings v. Missouri*, 71 U.S. 277 (1867).

The appellate Court summarily denied all of his claims finding they were without merit. It held the judgment in this case was "non-punitive" "disgorgement," an "equitable remedy" and "civil consequence."

> "Both liberty and property are specifically protected by the Fourteenth Amendment against any state deprivation which does not meet the standards of due process, and this protection is not to be avoided by the simple label a State chooses to fasten upon its conduct or its statute." *Haslip,* infra *p.*47 (1991).

§7031 actions result in a total forfeiture of all payments made by a customer as well as all unpaid balances for a project without any offsets for benefits conferred. This often creates astronomically harsh and irrational penalties capable of financially destroying defendants.

Because these forfeiture cases proceed in a civil setting and the awards are made to a private party, one might suspect the judgments amount to a punitive damage award subject to the 14th Amendment's due process protections. The problem is §7031 actions require no evidence of an actual

5

injury or damage resulting in no compensatory damages upon which to base a punitive damage award. §7031 is a strict liability statute requiring "full disgorgement" no matter how harsh the penalty. And under §7031, the penalties are virtually limitless.

A claim of fraud, oppression, or malice as required under Civil Code §3294 for a punitive damage award are also not evidenced in §7031 actions. No claim for a punitive damage award is ever made thereby depriving the court of jurisdiction to make such an award. In concert, none of the protections the Court established in *BMW of North America v. Gore,* 517 U.S. 559 (1996), *"Gore",* regarding excessive punitive damage awards are applied or reviewed de novo on appeal. This can and does result in astronomically oppressive judgments that avoid constitutional protections. A defendant's ability to pay is also never considered as required by California law.

Subsequent to trial, an additional penalty is also applied. §7071.17, requires the licensing board to suspend any affiliated license(s) – or deny any attempt at obtaining a license for one seeking rehabilitation – for failure to pay the award or obtain an equivalent payment bond. This suspension or denial occurs without any hearing, much less a judicial hearing.

"One must concede that unlimited jury discretion – or unlimited judicial discretion for that matter – in the fixing of punitive damages may invite extreme results that jar one's constitutional sensibilities."

*Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 18 (1991), "Haslip".*

This caustic statutory scheme thrives on a cascade denial of constitutional protections that can ultimately result in financially destroying a defendant while affirmatively restraining them from earning a living in their profession resulting in a form of constructive custody. (". . . by taking away his opportunity to earn a living, you can drain the blood from his veins without even scratching his skin.") *Flemming v. Nestor,* 363 U.S. 603, 629 (1960) (Justice Black Dissenting).

*****

This case continues the ongoing string of cases before this Court involving the imposition of punishment that bears no rational relation to the offense resulting in an arbitrary deprivation of property and effective denial of a judicial hearing.

Despite numerous Supreme Court challenges and Legislative petitions, California has been enforcing §7031(a) forfeitures for more than seventy years. This has resulted in unfathomable deprivations of rights to the People of California under color of law. It has further resulted in significant uncertainty and confusion in California's multibillion-dollar construction industry.

The penalty for violating §7031 is entirely based upon a hypothetical legislative presumption made without a judicial hearing that unlicensed contractors are "incompetent and dishonest." This presumption

forms the basis of the irrebuttable 'injury' upon which no evidence is required at "trial" and virtually limitless penalties are imposed under the guise of "non-punitive disgorgement."

"The power to create presumptions is not a means of escape from constitutional restrictions." *Bailey v. Alabama*, 219 U.S. 219, 239 (1911).

In a similar case, the penalty to the unlicensed contractor would have been $22.7 million dollars but for the substantial compliance exception of §7031(e) that was inapplicable to Petitioner in this case. See *Judicial Council of California v. Jacobs Facilities, Inc.,* 239 Cal. App. 4th 882 (2015). This $22.7 million was not "*Jacobs"* profit but the entire amount of the contract for work it performed. The court noted "*Jacobs*" was neither incompetent nor dishonest.

California's public policy declares "no one can take advantage of his own wrong." Civil Code §3517. But in §7031 cases, California is not accounting for any advantage a defendant actually made by gains or profits. Instead, the courts require "full disgorgement" allowing no offset for work the 'contractor' has performed. The homeowner gets to keep the work and receives a full refund resulting in a purely penal forfeiture to the 'contractor' without any evidence the 'contractor' gained or profited anything whatsoever. There is no remedy like this anywhere in the laws of unjust enrichment.

In this case, no evidence was presented that Petitioner gained or profited even one dollar.

This significant violation of Petitioner's constitutional rights cries out for this Court's intervention. California has clearly avoided the ordinary course of judicial process and is in direct conflict with the binding precedent of this court. The issues in this case were part of the federal circuit split evidenced in *Kokesh v SEC,* 581 U.S. ____ (2017), *"Kokesh",* and involve issues of nationwide importance around the rampant abuse of "civil" forfeitures that thwart constitutional protections.

Petitioner has been cruelly and excessively punished while being effectively denied a judicial hearing in every court of California involved in this case. This Court is his last opportunity for a remedy.

This court should grant certiorari.

9

## STATEMENT OF THE CASE

BACKGROUND[2]

In 2007 Petitioner provided the work experience and passed the licensing exam to become a "qualifying individual" for a class B general contractor's license. The Contractor's State License Board determined he met the minimum qualifications and issued license #927244 in the name of his company, The Spartan Associates, Inc. "Spartan".

Spartan was solely owned and operated by Petitioner. It performed remodel construction work for close friends and family members and was never a 'public' company in that sense of the word. Spartan's main client was Respondent's son, with whom, over the course of several years, Petitioner developed a close friendship. It was through this relationship that Petitioner/Spartan was introduced to Respondents to help them with their remodel involved in this case.

Based upon the mutual respect and trust that had developed between Petitioner and Respondent's son, the contractual formalities required by the Business and Professions Code became relaxed. The work requested was performed and the bill paid. It was understood Spartan was the contractor, not Petitioner.

---

[2] Some of this background information is not on the record. It is provided here only as context.

## THE CASE

On behalf of Spartan, Petitioner met with Respondents at their vacation home, an upstairs bay-facing condominium unit in Newport Beach, to discuss their remodel in April of 2012. Pursuant to the conversation, Petitioner sent them an email detailing the work to be performed and an estimate to complete the work. Spartan was not mentioned in the email.

Shortly after initial demolition work began, Respondents purchased another adjacent condo unit and desired to combine their two units into one.

Petitioner's intent was that Spartan was the contractor. As such, Spartan paid for and obtained the building permits from the City of Newport Beach where it was listed as the contractor. Spartan hired employees and subcontractors and performed the work. It invested more than $840,000 in materials and labor into the remodel and posted its sign on the building to advertise it was performing the work as the contractor.

Over the course of the project Respondents paid $758,000 to Spartan based on invoices Spartan sent them. Petitioner did initially accept checks totaling $90,000 that were made out to him and he did make payments related to the initial project from this account. Accepting payment is not a violation of the licensing laws which also require performance of the work. See California Civil Jury Instructions, CACI §4560 (3).

After a series of ongoing issues, Respondents terminated Spartan (not Petitioner) and hired another contractor. They refused to pay Spartan's final invoice amounting to about $82,000.

Spartan filed an action at law for quantum meruit and open book account. Respondents filed a cross-complaint against Spartan and Adam Bereki. Among the allegations were negligence and intentional and negligent misrepresentation.

Soon thereafter Respondents filed a Motion For Summary Judgment. The Motion stated the "undisputed facts" were that they had contracted with Spartan and Spartan had performed the work but that since Spartan had failed to comply with the contractual requirements of the licensing laws, the agreement was void and they were entitled to summary judgment.

The Court denied summary judgment on the grounds Respondents failed to establish they were entitled to such relief as a matter of law. Even though Spartan may not have complied with the specified requirements, it still had standing to pursue its causes of action and be paid for work it performed.

Subsequent to the closure of discovery, with trial about a month away, Petitioner ran out of money to pay his and Spartan's attorney and began representing himself. At the same time, Respondents filed a Motion to Amend their Cross-Complaint to reflect a new first cause of action for disgorgement pursuant to §7031(b). This was based upon a complete reversal of their earlier representations to

the Court. In their Amended Motion, they claimed they had never contracted with Spartan, but with Petitioner who was unlicensed.  Additionally, they filed a Motion For Severance to sever all other remaining causes of action.

Having no training or experience in the practice of law in this respect, Petitioner stood mute, not knowing what to do or how to do it.

By amending their Complaint with opposite factual representations and severing the remaining causes of action, Respondents effectively and essentially bypassed the due process requirements of proving any claim for injury or damage and could receive a windfall of a complete refund on top of retaining all of the remodel work performed. This is precisely one of the ways §7031 is abused and operates to commit outright theft under color of law.

The Court granted Respondent's Motions to Amend and Sever.

## TRIAL

A bench trial commenced in March of 2017. Petitioner appeared in Propria Persona.  Spartan was represented by its counsel.

Respondents testified they never believed they contracted with Spartan. They presented the initial email between them and Petitioner as the agreement for the project as well as the initial payments made directly to Petitioner, not Spartan.

**191**

Spartan testified it believed it was the contractor and presented evidence that it obtained the building permits and performed the work on the project and accepted compensation in the amount of $758,000. It also presented subsequent agreements with Respondents pertaining to the work that actually transpired on the project involving the combination of the two units as reflected by the building permits. This was in rebuttal to the initial email that made no mention of this work.

Petitioner was unaware of Respondents Motion for Summary judgment where they had represented the opposite facts. As a result they were never questioned on these conflicting statements. Spartan's counsel, likely committing malpractice, did not engage in this questioning either, despite having direct knowledge thereof. More importantly, he failed to raise any of the substantive constitutional arguments presented herein. However, like Petitioner and others who have protested these actions, he likely would not have been heard.

The trial Court determined Petitioner acted as an unlicensed contractor and awarded "disgorgement" in the amount of $848,000 to Respondents pursuant to §7031(b) (Pet. App. B, p.21 last paragragh). Spartan's claims, of approximately $82,000 were dismissed for lack of standing because it was determined not to be the contractor pursuant to §7031(a). The total forfeiture to Petitioner was therefore $930,000.

Unlike any other known industry in California, the contractors' licensing laws are based in part upon who has paid the licensing fees as opposed to who is actually 'qualified' to perform the work based on experience in the profession. In other words, even though Petitioner had the work experience and passed the licensing exam, he was unlicensed and presumed 'incompetent and dishonest' to act as a contractor. Yet Spartan on the other hand, a lifeless corporation, was qualified since it had paid the licensing fee and held Petitioner as its qualifying individual.

It remains unknown how Petitioner could be determined competent or incompetent simply because he didn't pay a fee. This is an abuse of a State's police powers. Essentially, his "crime" amounts at most to a clerical error whereby he could have done a better job of ensuring it was clear Spartan was the contractor and not him. As the Responsible Managing Officer for Spartan's license, he was competent to perform all of the tasks Respondents allege he did individually. He was the qualifying individual. Respondents presented no evidence differentiating the work Spartan performed from the work they claimed Petitioner performed as an individual. Additionally, no rebuttal was made as to all of the work Spartan evidenced it performed.

At trial, no evidence was presented of:

1) any profits or gains made by Petitioner to substantiate a cause of action for non-punitive disgorgement (see *Kokesh*, supra; Restatement

**193**

(Third) of Restitution and Unjust Enrichment §51, Comment *h*, "Restatement");

2) any actual injury or damage proximately caused by Petitioner's failure to be unlicensed to justify §7031 as remedial or restitutionary;

3) any rational nexus between the forfeiture and the "crime";

4) Petitioner's ability (or inability) to pay the judgment;

5) that Petitioner performed any of the work as required by California Civil Jury Instruction CACI §4560(3);

6) that Petitioner was a "person" to whom the statute applied. See for e.g. *Bass v United States*, 784 Fed. 2d. 1282 (1986) (Court directed verdict as to an essential element of the offense that Bass was an "employee"); *Thompson*, infra p.204 (evidence that doesn't prove all elements of charge violates due process);

7) that Petitioner was "incompetent or dishonest" as presumed by the California legislature, trial, and appellate Courts. See *Hydrotech Systems, Ltd. v. Oasis Waterpark*, 52 Cal. 3d 988, 955 (Supreme Ct. 1991).

Petitioner was never informed of this irrebuttable presumption nor given notice or a judicial hearing prior to its determination. As

previously stated, he had passed the licensing requirements and was determined to be 'competent' as a "qualifying individual." See *Vlandis v Kline,* 412 U.S. 441, 446-8 (1973) (presumption not true and state had already made determination otherwise. "Statute creating a presumption which operates to deny a fair opportunity to rebut it violates due process…"); *Thompson*, infra p.204 (evidence that doesn't prove all elements of charge violates due process).

It should be noted the trial Court's judgment order reflects only the $848,000 judgement as opposed to the entire $930,000 which was also determined pursuant to §7031(a). The judgment order characterizes the "disgorgement" as "Damages". This characterization follows California Civil Jury Instruction, CACI, §3942 which states "Damages– Payments to Unlicensed Contractors".

Subsequent to trial Petitioner challenged the jurisdiction of the Court four times. Respondents failed to substantiate the jurisdiction of the Court to render judgment which violates the Constitution.

"[A] plaintiff… must plead the essential jurisdictional facts and must carry throughout the litigation the burden of showing that he is properly in court; if his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof…" *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936), *"Mc Nutt"*.

"A court is a creature of the Constitution and laws under which it exists. To exercise any power not derived from such Constitution and laws would necessarily be a usurpation." *Ex Parte Knowles*, 5 Cal. 300 (Sup. Ct. 1855)

("[T]wo things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, and a [constitutional] act of [Legislature] must have supplied it. Their concurrence is necessary to vest it. . . . It can be brought into activity in no other way. . . .:") *The Mayor v. Cooper*, 73 U.S. 247, 252 (1867), *"The Mayor"*.

Petitioner was ultimately sanctioned for exercising his Right to challenge jurisdiction. He was told his challenge was untimely and further denied due process by the Court's use of state and local rules to deny constitutional protections in violation of Article 6, §2, as the Justices meaningfully stated in *Miranda v. Arizona*, 384 U.S. 436, 491 (1966) ("where rights secured by the Constitution are involved, there can be no rulemaking or legislation which would abrogate them"). (Jurisdiction can be challenged at any time even on appeal). *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 576 (2004).

## APPEAL

On appeal, Petitioner again directly challenged the jurisdiction of the trial Court.

The appellate Court, itself acting without jurisdiction to violate the Constitution, affirmed the trial court's

judgment and summarily dismissed all of Petitioner's claims. See (Pet. App. A p.6 "DISCUSSION" ) for the list of claims denied by the Court.

Respondents continued to fail to substantiate the trial Court's jurisdiction to render judgment in spite of all of the violations of constitutional law evidenced in Petitioner's brief. It is a further violation of due process to require a defendant to prove lack of jurisdiction. *Mc Nutt, supra*; *Elliot v. Lessee Persol,* 26 U.S. 328, 329, (1828) *"Persol"*; *Thompson v. Louisville,* 362 U.S. 199, 204 (1960), *"Thompson"*; *Cohens v. Virginia*, 19 U.S. 264, 404 (1821); *Windsor v. Mc Veigh*, 93 U.S. 274 (1876), *"Windsor"*.

The appellate Court specifically indicated that the judgment did not qualify under the 8th Amendment's Excessive Fines Clause because it was non-punitive. It therefore refused to recognize the relationship between the nonexistent harm and the penalty; the penalties imposed in similar statutes; Petitioner's (in)ability to pay; or, alternatively, any of the 14th Amendment's due process protections regarding excessive punitive damage awards, thereby committing the same due process violations as the trial Court. (A Court of California does not have jurisdiction to render judgment which violates the California Constitution or the Constitution for the United States".) *County of Ventura v. Tillet*, 133 Cal. App. 3d 105, 110 (1982), *"Tillet"*.  The Court then ordered Respondents be awarded costs on appeal.

The Court of Appeal did not address any of the due process violations by the trial Court concerning Petitioner's challenges to jurisdiction. It held that the

sanctions order was separately appealable and Petitioner had not appealed it. (all proceedings founded upon a void judgment are "equally worthless.") *Bennett v. Wilson*, 122 Cal. 509 (Sup. Ct. 1898).

A Petition for Rehearing was filed specifically pointing the Court's attention to *Kokesh,* supra where the laws of unjust enrichment were applied to a disgorgement order to determine it qualified as a penalty under a statute of limitations. The Petition was denied without explanation.


## PETITION FOR REVIEW

Petitioner challenged the jurisdiction of the trial and appellate Courts in a Petition For Review to the California Supreme Court. The petition was summarily denied on January 30, 2019 without providing Petitioner a hearing. While California has declared Supreme Court review is not a matter of right, the denial in this instance, when all access to a Constitutional judicial hearing had been denied by lower Courts, was yet another denial of substantive rights. Petitioner has thus been completely denied access to a judicial Constitutional Court in the state in which he is domiciled.


## MOTION TO VACATE VOID JUDGMENT

Upon remittitur to the trial court, Respondents filed a Memorandum of Costs on Appeal. Petitioner filed a Motion To Vacate Void Judgment challenging the

jurisdiction of the Court to award costs based on a void judgment.

Respondents opposition offered no authority contrary to the holdings of this Court as presented therein by Petitioner. Instead, Respondents insisted the judgments of the trial and appellate Courts were res judicata. A void judgment in violation of the Constitution cannot possibly be res judicata.

> "[I]f it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a remedy sought in opposition to them, even prior to a reversal. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers." *Persol*, supra p. 329

The trial Court found in favor of Respondents on the grounds the issue was res judicata. It cited *People v Dutra,* 145 Cal. App 4th 1339 (2006), which again cannot possibly apply if conclusive evidence is presented that there was a violation of substantive rights and if a challenge to jurisdiction can be made at any time.

How can a Court acting administratively or ministerially overrule the United States Supreme Court?

## REASONS FOR GRANTING THE WRIT

Petitioner has effectively been denied a judicial hearing and rights secured by the Constitution in every Court of California this case has been presented to. This Court is his last resort. ("A sentence of a court, pronounced against a party without hearing him or giving him an opportunity to be heard, is not a judicial determination of his rights and is not entitled to respect in any other tribunal.") *Windsor v Mc Veigh*, 93 U.S. 274 (1876); ("[I]f it act without authority, its judgments and orders are regarded as nullities.) *Persol*, supra.

This case presents an ideal vehicle to further establish uniform procedures governing "disgorgement" and/or penal forfeiture actions in purported "civil" cases. These cases occur nationwide and entail important questions of federal law that have resulted in the federal circuit split in *Kokesh* and others pertaining to whether restitution is punitive.

In the instant case, the holdings of California Courts are in direct opposition to the binding precedent of this Court. Serious foundational constitutional issues have surfaced in these cases involving the imposition of excessive punishment at both State and Federal levels that bears no rational relation to the offense by courts acting without any statutory or Constitutional authority.

"One unaware of the history of forfeiture laws and 200 years of this Court's precedent regarding such laws might well assume that such a scheme is

**200**

lawless—a violation of due process" *Bennis v. Michigan*, 516 U.S. 442, 454 (1996).

The questions presented in this case pick up where *Kokesh* left off – with an examination of State and Federal authority to conduct penal forfeitures disguised as non-punitive equitable disgorgement remedies in purported civil cases.

The numerous issues involved and the questions presented in this case recur frequently in countless cases across the nation. Hundreds of billions of dollars in potential liability across multiple industries[3] turn on it and there is significant history involving the repeated abuse of forfeiture proceedings[4]. ("[I]f we look at these forfeitures that are occurring today… many of them are grossly disproportionate to the crimes being charged") Justice Sotomayor, oral argument, *Timbs v. Indiana*, 586 U.S. ____ (2019).  See Congressional Research Service, Crime and Forfeiture by Charles Doyle[5].

While the forfeiture cases cited in these articles where abuses occurred are often initiated in the civil context by government, §7031 forfeiture appears to be whole new breed empowering the private party to

---

[3] Richard L. Cassin VimpelCom FCPA Disgorgement is third biggest ever, http://www.fcpablog.com/blog/2016/2/23/vimpelcom-fcpa-disgorgement-is-third-biggest-ever.html; See also "Other Authorities" in Petition For Writ of Certiorari and Opening Brief of Petitioner, *Kokesh*, supra.

[4] Statement of Justice Thomas in *Leonard v Texas*, 580 U.S.___ (2017), denial of certiorari.

[5] https://www.hsdl.org/?view&did=762005

maintain the same type of action under government 'authority'.

Only this Court can usher national uniformity, and this case is a perfect vehicle to do so. This Court should grant certiorari.

## A. CALIFORNIA COURTS ARE IN DIRECT CONFLICT WITH THIS COURT'S BINDING PRECEDENT

California has not recognized §7031's penal nature for over seventy years, which make its holdings in direct conflict with the binding precedent of this Court and due process. §7031 actions parasitically thrive on a cascade denial of constitutional protections that ultimately result in cruel, unusual, and excessive punishments capable of financially destroying defendants and their ability to earn a living as a contractor. The totality of punishment imposed by this legislative scheme, which can also include license suspension, revocation, or denial, is not considered in these actions, evidencing further abuse of fundamental protections.

The analysis in this section will evidence that California Courts have improperly characterized §7031 actions as "civil" "non-punitive" "disgorgement" "equitable remedies" when they are really criminal penal forfeitures or commercial in rem forfeitures in the Admiralty, a jurisdiction which state Courts are flatly prohibited from exercising.

California authorizes four penalties for engaging in the business of, or acting in the capacity of, a "contractor" without a license – a criminal penalty, a civil penalty, a shield penalty and a sword penalty:

1) The first offense, criminal penalty, an in personam criminal action pursuant to §7028, can be a misdemeanor conviction with a fine *up to* $5,000, plus restitution for actual economic loss (if any). The fine is payable to the government, the economic loss to the customer.

2) The "administrative" penalty, an action pursuant to §7028.17 B&P, is a citation by the Registrar of Contractors for a fine *up to* $15,000. The civil penalty is payable to the government and *in addition to* all other remedies, either civil or criminal.

3) The shield penalty is a "civil" forfeiture action pursuant to §7031(a), which bars the unlicensed contractor from using the Courts to collect money owed for work performed.

4) The sword penalty, a "civil" forfeiture action pursuant to §7031(b), allows the customer to recover "all compensation paid" to the unlicensed contractor.

Neither §7031(a) or (b) use the terms "disgorgement", "forfeiture," "punishment," or "damages," which has undoubtedly led to the confusion over what specific kind of action §7031 is and what constitutional protections apply. California Courts however, use all four of these words to describe §7031 actions in their

opinions or judgment orders, lending even greater confusion:

> "[w]e will refer to the remedies [of 7031(a) and (b)] jointly as **'forfeiture.'"** *Judicial Council*, supra p.895.

> "The licensing requirement and the **penalties** for violating that requirement…" *White*, infra. p.517

> "The Court finds judgment for… [the] Humphreys for (First Cause of Action For **Disgorgement** of Funds Paid)" (Pet. App. B p.21 last paragraph)

> Trial court Judgment Order, "**Damages** $848,000". California Civil Jury Instructions, §4561 **Damages**– All Payments Made to Unlicensed Contractors.

## I. §7031 Penalties are Not Disgorgement Under the Laws of Unjust Enrichment

"Disgorgement" is not a statutory term defined in either State or Federal law. Its only known application in law applies to a forfeiture of the ill-gotten gains or profits by a wrongdoer under the laws of Restitution and Unjust Enrichment. See Restatement (Third) of Restitution and Unjust Enrichment §51.

In *Kokesh*, the Court adopted Restatement's definitions of the nature of a cause of action for non-punitive disgorgement:

"As a general rule, the defendant is entitled to a deduction for all marginal costs incurred in producing the revenues that are subject to disgorgement. Denial of an otherwise appropriate deduction, by making the defendant liable in excess of net gains, results in a punitive sanction that the law of restitution normally attempts to avoid". Comment *h.*

"Generally, disgorgement is a form of "[r]estitution measured by the defendant's wrongful gain." Comment *a.*

See also Comment *e:* "The profit for which the wrongdoer is liable by the rule of §51(4) is the net increase in the assets of the wrongdoer, to the extent that this increase is attributable to the underlying wrong."

See also *United States v. Ursery,* 518 U.S. 267 (1996) ("Forfeitures serve a variety of purposes, but are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct").

Contrast the foregoing with the appellate Court's opinion in this case, ("[f]ull disgorgement is required; offsets and reductions for labor and materials are not permitted." (Pet. App. A, p.16 first sentence).

It should also be carefully noted that disgorgement requires a "conscious wrongdoer" (see Restatement §51(3) and Comment *e*), which it seems is indistinguishable from a finding of scienter in criminal cases, yet is entirely absent in §7031 actions.

Another layer of confusion involves use of the word "compensation" in §7031(a) and (b). California holds that "all compensation paid to an unlicensed contractor …means …without reductions or offsets for the value of material or services provided." *White v. Cridlebraugh*, 178 Cal. App. 4th 506, 520 (2009), *"White"*.

The *Kokesh* Court also used the word "compensation," but it appears only in the sense that it referred to profits or ill-gotten gains ("'[b]ecause disgorgement orders go beyond **compensation**, are intended to punish…"). (emphasis added).

Comparing these two different definitions of "compensation" reveals an astronomical difference in the amount of the penalty. Consider the following example:

> Suppose an unlicensed contractor receives $500,000 to build a new home. The contractor spends $425,000 in materials, labor, and other costs during construction, leaving the remaining $75,000 in profit or gains.

Here, California's "disgorgement" of "all compensation paid" would result in a $500,000 penalty whereas "compensation" as defined under Restatement *§51* and *Kokesh* would result in a $75,000 penalty. It is important to notice that even applying disgorgement under the laws of unjust enrichment could still potentially result in an excessive fine or punishment, which would require further analysis under the appropriate Constitutional protections. A $75,000 penalty absent

any injury is likely to be grossly disproportionate to the offense.

In its Opinion, (Pet. App. A, p.11) the Fourth District Court of Appeal applied the federal definitions of "disgorgement" and "compensation" in the case of *SEC v. Huffman*, 996 F.2d 800 (5th Cir. 1993), *"Huffman",* to justify that §7031 "disgorgement" was also a "non-punitive equitable remedy". But this is seriously wrong. *Huffman* stated that "disgorgement wrests the ill-gotten gains from the hands of a wrongdoer." *Id.* p.802. In the instant case no gains or profits were evidenced or differentiated from the other material costs of the project. These costs, independent of gains or profit, were benefits conferred to the Humphreys in the form of remodel work. The materials Spartan purchased were installed in their *custom* home and were of no gain or profit to Petitioner whatsoever.

The appellate Court found there was substantial evidence to support the trial Court's findings of "non-punitive disgorgement" when there was no evidence presented of Petitioner's gains or profits to support such a claim. Respondents never even stated a claim for non-punitive disgorgement under Restatement §51.

It is unknown how the appellate Court (and virtually all California Courts) concluded "ill-gotten gains" meant every penny involved in the transaction, as opposed to what Petitioner gained or profited.

The Arizona Supreme Court dealt with very similar issues in *Town of Gilbert Prosecutor's Office v. Downie,* 218 Ariz. 466 (2008). The Court stated:

> "[A] rule of total disgorgement regardless of any benefit conferred on the victim…may lead to absurd or troubling results." *Id.* p.24

> "[A] homeowner who received flawless work from an unlicensed contractor would be refunded the full amount paid but would nonetheless also retain the work performed. It is impossible for me to view such a victim as having suffered any loss, economic or otherwise..." Justice Hurwitz, concurring, *Id.* p.30.

The "absurd and troubling" results are precisely what is occurring here – the entire amount paid by the Humphreys is not remotely equivalent to the nonexistent profit or gains of Mr.Bereki.

Forfeitures under §7031 are therefore not non-punitive disgorgement under the laws of unjust enrichment. Nor do they conform in any way to any recognized form of restitution.

## IIA. §7031 Actions Are Purely Penal (Criminal) Forfeitures Disguised as "Civil"

"A civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Austin v. United States*, 509 U. S. 602, 621 (1993).

208

Because §7031's penalties are ordered by Courts without evidence of any injury, damage, or nexus to a defendant's (mis)conduct, they do not provide the "victim" equal value for a nonexistent loss and do not make them whole for injuries that they never evidenced. Judgments pursuant to §7031 are therefore neither remedial, compensatory, or restitutionary. They do not restore the status quo and are solely intended to deter and punish. Therefore §7031 actions are purely penal forfeitures.

In ordinary usage, a forfeiture is defined as the loss or giving up of something as a *penalty* for wrongdoing.

Black's Law Dictionary defines "forfeiture" as:

> "Something to which the right is lost by the commission of a crime or fault or the losing of something by way of penalty." (Rev. 4th Ed. 1968)

Under California law, *"any provision by which money or property is to be forfeited without regard to the actual damage suffered calls for a penalty…" Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.,* 232 Cal. App. 4th 1332, 1357 (2015), *"Grand Prospect"*. Both §7031(a) and (b) require forfeiture without regard to any actual damage suffered.

The California Supreme Court has repeatedly affirmed §7031's deterrent nature which is inherently punitive:

**209**

"Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state. [Citation.] …" *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.*, 36 Cal. 4th 412, 423 (Sup. Ct. 2005).

In *Bell v. Wolfish,* 441 U.S. 520, 539 (1979), the Court held:

"sanctions imposed for the purpose of deterring infractions of public laws are inherently punitive because 'deterrence [is] not [a] legitimate non-punitive governmental objectiv[e].'"

In *Huntington v. Attrill,* 146 U. S. 657, 668 (1892):

"A pecuniary sanction operates as a penalty if it is sought 'for the purpose of punishment, and to deter others from offending in like manner' rather than to compensate victims."

*And Boyd v. United States,* 116 U.S. 616 (1886):

"A proceeding to forfeit a person's goods for an offence against the laws, though civil in form, and whether in rem or in personam, is a "criminal case" within the meaning of that part of the Fifth Amendment…"

**210**

Petitioner has been unable to locate any cause of action, whether state or federal, evidencing a "civil" in personam forfeiture. See for e.g. U.S. Department of Justice Types of Forfeiture[6]. Federally, an in personam forfeiture is criminal and requires the government to indict the property used or derived from the crime *along with* the defendant.    The forfeiture only proceeds after the conviction of the defendant who is afforded the presumption of innocence, assistance of counsel, and other heightened protections in criminal proceedings, all of which were denied here. (Forfeiture was "a part, or at least a consequence, of the judgment of conviction.") *The Palmyra*, 25 U.S. 1, 12 (1827).

This judgment has the potential to force Petitioner into bankruptcy amounting to a forfeiture of all of his real and personal property. Historically, this was known as a forfeiture of estate. ("At common law, anyone convicted and attained for treason or a felony, forfeited all his lands and personal property. Attainder, the judicial declaration of civil death, occurred as a consequence of the pronouncement of final sentence for treason or felony…After the Revolution, the Constitution restricted the use of common law forfeiture in cases of treason, and Congress restricted its use, by statute, in the case of other crimes.") See Footnote 5.

> "There were many ways in which a man might los[e] his freedom, and with his freedom he necessarily lost his citizenship also. Thus he

---

[6] https://www.justice.gov/afp/types-federal-forfeiture.

might be sold into slavery as an insolvent debtor, or condemned to the mines for his crimes as *servus poenae" (slave punishment)* [or effectively denied judicial process–ed]. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), *"Kennedy"*, fn. 23.

## IIB. Applying the "Kennedy Tests" to Determine a Statute's Civil or Criminal Nature

"Judicial determinations as to the civil or penal nature of a particular provision generally center around the issue of 'whether the legislative aim in providing the sanction was to punish the individual for engaging in the activity involved or to regulate the activity in question.'" [Citations] *Ward v. Coleman*, 598 F.2d 1187 (10th Circuit 1979).

There is nothing about the enactment or enforcement of §7031 actions that appears to indicate a civil, regulatory nature, other than the labels affixed thereto.

> "Both liberty and property are specifically protected by the Fourteenth Amendment against any state deprivation which does not meet the standards of due process, and this protection is not to be avoided by the simple label a State chooses to fasten upon its conduct or its statute." *Haslip*, supra p.47.

In *Kennedy*, supra, the Court enumerated a series of tests traditionally applied to determine whether an Act of Congress is penal or regulatory in nature. The

**212**

following analysis will apply §7031 to each of the test criteria:

(I) Whether the sanction involves an affirmative disability or restraint:

> The imposition of a monetary penalty of this nature in comparison to the comparable maximum civil and criminal penalties unequivocally imposes a disability or restraint because it has the capability of financially destroying a defendant amounting to a forfeiture of estate. ("The purpose of punitive damages is not served by financially destroying a defendant. The purpose is to deter, not destroy.") *Rufo v. Simpson*, 86 Cal. App. 4th 573, 620 (2001).

> Additionally, in connection with §7071.17, any judgment must be reported to the Licensing Board. A bond must be posted in the amount of the judgment or the defendant will not be granted a license for rehabilitation. Any existing licenses in which the defendant is a qualifying individual will be suspended. If the defendant does not have the collateral to obtain the bond they are effectively disabled and/or restrained from earning a living as a contractor.

> While not on the record, Petitioner does not have the money or available credit to obtain the bond. The price of the bond quoted was 2% of the amount ($16,960) plus cash or credit in the amount of $848,000 required to fully collateralize the bond.

(II) Whether it has historically been regarded as a punishment:

> While monetary penalties have traditionally been applied to both criminal and civil statutes, in personam forfeitures have always been regarded as criminal. As evidenced, §7031's nature is deterrent which is also inherently punitive. So is the fact that equitable remedies are denied (see p.42) and the fine is neither compensatory, remedial, or restitutionary. Forfeiture of estate was punishment for the commission of treason or a felony.

(III) Whether it comes into play only on a finding of scienter:

> The statute, on its face, does not contain an element of scienter. Yet evidence has been presented that California uses this lack of scienter as part of the disguise of a "civil" proceeding for avoiding criminal due process requirements while dispensing astronomical and debilitating penalties. The lack of scienter in this context does not support the statute being a civil remedy.

> Under the laws of unjust enrichment, disgorgement requires a "conscious wrongdoer," which is not evidenced in §7031 actions. Restatement §51(3), Comment *e*.

(IV) Whether its operation will promote the traditional aims of punishment – retribution and deterrence:

**214**

The effect of §7031's operation promotes the traditional aims of punishment, retribution and deterrence, See e.g. *United States v Halper*, 490 U.S. 435, 448 (1989).

(V) Whether the behavior to which it applies is already a crime:

Section §7028 makes contracting without a license a misdemeanor crime. The penalty for the first offense is a fine *up to* $5,000 plus restitution for damages (if any). While the existence of legislative intent to enact a separate criminal statute may in some cases lend direction as to the nature of other statutes, it does not do so in this instance when the enforcement of the statute by courts has been affirmed by the legislature and falls squarely within the provisions of criminal punishment by more than a century or jurisprudence of the United States Supreme Court.

(VI) Whether an alternative purpose to which it may rationally be connected is assignable for it:

The licensing laws were enacted to deter unlicensed persons from engaging in contracting business. *MW Erectors*, supra. Absent an actual injury which may lend remedial, compensatory, or restitutionary characteristics, there are no alternative purposes beyond punishment that can be rationally connected to §7031 as it was enacted and has been applied for decades.

No reasonable rational connection can be made that causing Petitioner to forfeit $930,000 aids in protecting the public, especially when he met the minimum requirements for licensure and was qualified. While the traditional aims of regulation include public safety, no evidence has been presented – or rationally could be – linking Petitioner's specific behavior to harm. Petitioner's "crime" was essentially a clerical error in that he could have made his intent clearer that Spartan was the contracting party. This "error" has no substantial connection to the forfeiture. The money forfeited is not an instrumentality of the crime. See e.g. *United States v. Bajakajian*, 524 U.S. 321 (1998). Nor can a nonexistent "injury" be redressed by the forfeiture. There was also no evidence that any of the alleged "compensation" was in any way intended to be or used to commit any other crimes or offenses.

(VII) Whether it appears excessive in relation to the alternative purpose assigned:

This factor lends considerable weight to finding §7031 is criminal and not remedial in nature.

The purpose assigned to §7031 and enforced by California Courts is to deter and punish unlicensed contractors for wrongdoing by imposing a monetary penalty in the form of a forfeiture. Under §7031 (a) this results in a forfeiture of all money for services rendered that the unlicensed contractor *has not* been paid for. Under §7031(b), this results in a forfeiture of all

**216**

money the unlicensed contractor *has* been paid for services rendered. They are in effect, opposite sides of the same coin resulting in a total forfeiture as a penalty to the unlicensed contractor.

The legislature has created statutes authorizing a *variable* fine *up to* $5,000 for first offense criminal penalties for contracting without a license. Assuming the maximum award of $5,000 were "reasonable" to the purpose assigned, the judgment in this case is 186 times this amount.

"If the amount of the forfeiture is grossly disproportional to the gravity of defendant's offense, it is unconstitutional". *United States v. $132,245.00 In U.S. Currency*, 764 F.3d 1055, 1057-58 (9th Cir. 2014).

Here, "the statutory scheme [is] so punitive either in purpose or effect as to negate [the] intention to establish a civil remedial mechanism.") *United States v. Ursery*, 518 U.S. 267, 278 (1996).

Based upon the foregoing, Petitioner believes he has met the "heavy burden" of providing "the clearest proof … to negate [the legislature's] intention to deem [§7031] civil ….." *Kansas v. Hendricks*, 521 U.S. 346 (1997) citing *United States v. Ward*, 448 U.S. 242, 248 (1980).

### III. The Judgment Is Grossly Excessive Under the "Gore Tests" for Excessive Punitive Damages

Momentarily putting all arguments aside that this was a criminal action, the judgment can be examined in light of the three-part test for evaluating the validity of punitive damages in civil cases as established in *Gore,* supra.

Under this test, use of §7031(b) to hypothetically take anything more than nominal damages from Petitioner and give them to Respondents fails every element of the test for the following reasons:

REASONABLENESS

First, the relationship between the "harm" and forfeiture of $930,000 is grossly disproportionate. At trial, Respondents presented no evidence of an injury or damages proximately caused by Petitioner's alleged failure to be licensed.

"Compensatory damages are intended to redress the concrete loss the victim has suffered by reason of the defendant's wrongful conduct. [citations omitted]. By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution" [citations omitted]. *State Farm Mut. Automobile Ins. Co. v. Campbell,* 538 U.S. 408, 416 (2003)*, "Campbell".*

In the instant case, disgorgement of anything would be an infinite multiple of the nonexistent compensatory damages.

## COMPARABLE CASE AWARDS

Second, the difference between the $930,000 forfeiture award and both the criminal and civil penalties authorized in comparable cases is staggering. The maximum criminal penalty is a fine up to $5,000 plus restitution of actual economic loss. The maximum civil penalty is an administrative fine by the Registrar up to $15,000.

Punitive damages in excess of $15,000 therefore do not pass Constitutional muster.

## REPREHENSIBLE

Third, "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, supra, p. 575.

The conduct here is not reprehensible. There was there no evidence of any damages whatsoever. Had there been, they would have been purely economic. No one was hurt or injured. There was no evidence of fraud, oppression, or malice.

Respondents interacted exclusively with Petitioner, who had the work experience and passed the competency exam to qualify for Spartan's license. He was qualified.

Prior to hiring Petitioner or Spartan, Respondent Gary Humphreys was intimately aware of Petitioner's competency by the previous projects he

**219**

had done at Respondent's business and for other family members.

Furthermore, Mr. Humphreys is a nationally recognized expert in project management and a government contractor who teaches project management around the world. He is not a member of the public who needs protection from incompetence and dishonesty from those who provide building and construction services. In fact, he has decades more training and experience in project management than Petitioner, who doesn't even possess a college degree.

*    *    *

Based on the foregoing, punishment in the amount of $930,000 is grossly excessive.

"One must concede that unlimited jury discretion – or unlimited judicial discretion for that matter – in the fixing of punitive damages may invite extreme results that jar one's constitutional sensibilities." *Haslip,* supra p.18.

Subsequent to the trial court's failure to apply the *Gore* tests, the appellate court failed to comply with the requirements of a de novo review ("exacting appellate review ensures that an award of punitive damages is based upon an application of law, rather than a decision-maker's caprice.") *Campbell,* supra *p.*436 (citations omitted). Both courts also failed to take Petitioner's financial condition into account as required by State law ("evidence of financial condition is critical to whether a punitive damages award serves the purpose of punishment and

deterrence without destroying the defendant financially.") *Adams v Murakami,* 54 Cal. 3d 105, 117-118 (Sup. Ct. 1991)

## B. CALIFORNIA HAS DRASTICALLY DEPARTED FROM ORDINARY JUDICIAL PROCESS

California was admitted as a Common Law State. Yet clearly §7031 actions neither proceed at Law nor Equity despite the court's holdings that the judgments thereunder are "equitable remedies."

Since 1957 the California supreme court has held that held an unlicensed contractor cannot resort to equitable remedies such as set off or unjust enrichment in "defiance" of §7031. *Lewis & Queen v. N. M. Ball Sons,* 48 Cal. 2d 141, 152 (1957).

Equitable remedies are meant to preserve due process or the fundamental fairness of a court of Equity. The effect of denying these remedies directly evidences California's intent to enforce the statute in a purely punitive manner.

Equity abhors a forfeiture. §7031 actions cannot possibly be in Equity.

In *Kokesh*, supra, the government relied upon the Federal Court's inherent power to order restitution as its authority to order SEC disgorgement. There is no such inherent power absent statutory authority. See *The Mayor*, supra.

While California Courts proceeding according to the course of the common law do have inherent power to

order restitution, this judgment was not restitution. In fact, California refers to it as "non-restitutionary disgorgement". *Meister v. Mensinger*, 230 Cal. App. 4th 381 (2014). It appears, based on its application, that "non-restitutionary disgorgement" is another name for punishment or a penalty.

Having no apparent basis in Law or Equity and in direct violation of the binding precedent of the Supreme Court of the United States and the Constitution, California's enactment and enforcement of §7031 actions has drastically departed from the ordinary course of judicial process.

## C. THIS CASE IS WORTHY OF THIS COURT'S REVIEW

The questions presented in this case and the issues related thereto are important. This court should resolve these issues involving California's failure to heed the binding precedent of this court and the nationwide uncertainty and confusion pertaining to civil forfeiture cases. This case is a perfect vehicle.

## D. THE FOURTH DISTRICT COURT OF APPEAL'S OPINION IS WRONG

The Fourth District Court of Appeal's opinion is wrong. The Court acted without jurisdiction to affirm judgment of the trial Court that punished Mr. Bereki by depriving him of the Constitutional protections of excessive punitive damage awards or fines and the heightened protections of criminal proceedings. ("A Court of California does not have jurisdiction to render judgment which violates…the Constitution

for the United States".) *Tillet*, supra.  This imposed punishment upon Mr. Bereki while effectively depriving him of a judicial hearing, resulting in a Bill of Attainder or Pains and Penalties.

## CONCLUSION

The petition for a writ of certiorari should be granted.

Respectfully Submitted,

ADAM A. BEREKI
695 Town Center Dr.
Ste. 700
Costa Mesa, CA 92626
(714)384-6380
abereki@gmail.com

JAMES G. BOHM
BOHM, WILDISH, &
MATSEN, LLP
*Counsel of Record*
695 Town Center Dr.
Ste. 700
Costa Mesa, CA 92626
(714)384-6380
jbohm@bohmwildish.com

**APPENDIX A– OPINION, COURT OF APPEAL**

NOT TO BE PUBLISHED
IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.115.

IN THE COURT OF APPEAL
OF THE STATE OF CALIFORNIA
FOURTH APPELLATE DISTRICT
DIVISION THREE

GARY HUMPHREYS et al.
Cross-complainants and Respondents.

G055075

v.          (Super. Ct. No. 30-2015-00805807)

OPINION

ADAM BEREKI
Cross-defendant and Appellant

Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge. Affirmed.

Adam Bereki, in pro. per., for Plaintiff and Appellant. William G. Bissell for Defendants and Respondents.

2

\*\*\*\*\*

This case involves the purported general contractor for a condominium remodel project, Adam Bereki, on one side, and the condominium owners, Gary and Karen Humphreys (the Humphreys), on the other. After the Humphreys terminated Bereki's involvement, a now defunct corporation formerly owned by Bereki, Spartan Associates, Inc. (Spartan Associates), sued Humphreys, claiming they still owed approximately $83,000 for work on the project. The Humphreys denied the allegations and cross-complained against Bereki and Spartan Associates. Among the remedies they sought was disgorgement of all payments made for the project, pursuant to Business and Professions Code section 7031, subdivision (b)[7], due to Bereki's alleged failure to possess a required contractor's license.

Following a bifurcated bench trial on the disgorgement cause of action, the trial court found in favor of the Humphreys and ordered Bereki to repay them all monies received in relation to the remodel work — $848,000. Its ruling and a stipulation by the parties disposed of the remainder of the case and Bereki appealed. He challenges the disgorgement on a variety of constitutional, legal, and factual grounds. We find no merit in his contentions and, therefore affirm the judgment.

---

[7] All further statutory references are to the Business and Professions Code unless otherwise indicated.

**225**

## I. FACTS

The Humphreys own a condominium on Lido Isle in the City of Newport Beach. It was originally two separate units. The couple hired Bereki to do some remodeling which would, among other things, turn the two units into a single unit. After an on-site walkthrough, the Humphreys exchanged e-mails with Bereki to confirm the scope of the project. In one of his e-mails, Bereki stated he and his partner would perform the work for a specified rate.

The Humphreys agreed to the proposed scope and rates, and also inquired whether a written contract was necessary. Bereki responded that it was not; their "'words/commitment [was] enough.'" To start the project, Bereki asked the Humphreys for a $15,000 check deposit payable to him, personally.

Several months into the remodel the Humphreys, at Bereki's request, started making their progress payments to Spartan Associates instead of paying Bereki directly as an individual. Bereki never gave them an explanation for the change or what, if any, involvement Spartan Associates had in the project, but the accountings he sent included the name "Spartan Associates."

After approximately a year and a half, the Humphreys terminated Bereki's involvement and later hired a different general contractor to complete the project.

Believing the Humphreys still owed approximately $82,800 for materials used in the remodel and labor performed, Spartan Associates sued to recover that

amount. The Humphreys generally denied the allegations in the complaint, and filed a cross-complaint against Bereki, Spartan Associates, and a surety company. Among the allegations were causes of action for negligence, intentional misrepresentation, and negligent misrepresentation. The trial court later granted them leave to amend the cross-complaint to include a cause of action for disgorgement of funds paid to an unlicensed contractor, pursuant to section 7031, subdivision (b).

At the Humphreys' request, the trial court bifurcated the disgorgement claim from the remainder of the claims in the cross-complaint, and it held a trial on that issue first. During the course of the two-day bench trial on the disgorgement cause of action, the court heard testimony from the Humphreys and Bereki.

Karen Humphreys testified it was her understanding, based on the initial e-mails exchanged with Bereki, that she and her husband were contracting with Bereki and his partner to do the work. They wanted a licensed contractor to do the work and obtain all the necessary permits, and she "took [Bereki] at his word that he had a license."

She also testified there was no mention of Spartan Associates until months after the project began and insisted they never entered into a contract with Spartan Associates.

Gary Humphreys concurred with his wife's testimony about the remodel details, the series of events that transpired between them and Bereki, and the agreement he believed they entered into with Bereki.

In addition, he confirmed Bereki told him he was a licensed contractor and stated he would not have hired him if he knew it was otherwise.

In contrast, Bereki testified the contract for the couple's remodel project was between the Humphreys and Spartan Associates. He nevertheless acknowledged his initial e-mail communications to the Humphreys made no mention of Spartan Associates, including the one which set forth the proposed scope of work and hourly rates. When asked about contractor's licenses, he admitted he never possessed one as an individual or as a joint venture with his partner. Spartan Associates, however, did have a contractor's license at the time of the project.

As for the work done for the Humphreys, Bereki testified he believed Spartan Associates performed all of it. He testified that the three city permits for the project were all obtained by, and issued to, Spartan Associates. Additionally, he produced contracts with subcontractors who performed aspects of the remodel work. The majority of these contracts were between the given subcontractor and Spartan Associates[8].

The trial court found in favor of the Humphreys on the disgorgement cause of action based on its determination that Bereki, not Spartan Associates, was the contractor who performed all the remodel

---

[8] Bereki filed an unopposed motion to augment the record on appeal with certain exhibits admitted in the trial court. We deny the request because the exhibits already are "deemed part of the record" by Court Rule. (Cal. Rules of Court, rule 8.122(a)(3).) We have considered the copies of the exhibits he provided in conjunction with our review of this appeal.

work. As a result, the court also found in favor of the Humphreys on Spartan Associate's complaint. The remainder of the cross- complaint was dismissed without prejudice at the Humphreys' request.

## II. DISCUSSION

Bereki challenges the portion of the judgment disgorging all compensation paid to him for his work on the Humphreys' remodel project[9]. Though articulated in various ways, his arguments boil down to the following: (1) disgorgement under section 7031, subdivision (b), is unconstitutional or, alternatively, criminal in nature; (2) the trial court erred in ordering disgorgement because Spartan Associates, not Bereki, performed the work and Spartan Associates held a contractor's license; (3) even assuming Bereki performed the work, the state's contractor licensing requirement does not apply to him as a "natural person"; (4) there was insufficient evidence to support disgorgement, including no evidence of injury due to Bereki's failure to be individually licensed; (5) the court should have offset the disgorgement amount by the value the

_____

[9] Bereki appears to also challenge a postjudgment sanctions order the trial court issued based on Bereki's motion to compel a response to a demand for a bill of particulars filed after entry of judgment. The sanctions order is not encompassed by his earlier appeal from the judgment. And although such a postjudgment order is separately appealable (Code Civ. Proc., § 904.1, subds. (a)(2) & (b)), Bereki did not file another appeal. Accordingly, the issue is not before us. *(Silver v. Pacific American Fish Co., Inc.* (2010) 190 Cal.App.4th 688, 693 [court without jurisdiction to review postjudgment order from which no appeal is taken].)

Humphreys received through the remodel work; (6) it was improper to order full disgorgement because certain payments were not made from the Humphreys' personal accounts; and (7) the court Bereki challenges the portion of the judgment disgorging all compensation paid to him for his work on the Humphreys' remodel project. 3 Though articulated in various ways, his arguments boil down to the following: (1) disgorgement under section 7031, subdivision (b), is unconstitutional or, alternatively, criminal in nature; (2) the trial court erred in ordering disgorgement because Spartan Associates, not Bereki, performed the work and Spartan Associates held a contractor's license; (3) even assuming Bereki performed the work, the state's contractor licensing requirement does not apply to him as a "natural person"; (4) there was insufficient evidence to support disgorgement, including no evidence of injury due to Bereki's failure to be individually licensed; (5) the court should have offset the disgorgement amount by the value the Humphreys received through the remodel work; (6) it was improper to order full disgorgement because certain payments were not made from the Humphreys' personal accounts; and (7) the court erroneously failed to provide a written statement of

8

decision[10]. We find no merit to any of these contentions.

*A. Disgorgement Remedy Under Section 7031*

Relying heavily on *White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 517 *(White),* the decision in *Alatriste v. Cesar 's Exterior Designs, Inc.* (2010) 183 Cal.App.4th 656, 664-666 *(Alatriste)* aptly summarizes the nature, purpose and scope of the litigation prohibition and the disgorgement remedy provided in section 7031, subdivisions (a) and (b).

"Section 7031 [, subdivision] (b) is part of the Contractors' State License Law (§ 7000 et seq.), which is a comprehensive legislative scheme governing the construction business in California. [This statutory scheme] provides that contractors

---

[10] After briefing was complete, Bereki filed a motion asking that we take judicial notice of a plethora of items, among which are the federal Constitution and other foundational documents for this country, federal and state statutes, and a variety of case law. To begin, "[r]equests for judicial notice should not be used to 'circumvent [ ]' appellate rules and procedures, including the normal briefing process." *(Mangini v. R. J Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1064, overruled on another point as stated in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257.) Further, " [a] request for judicial notice of published material is unnecessary. Citation to the material is sufficient." *(Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Ca1.4th 26, 45, fn. 9.) We therefore deny Bereki's request as unnecessary to the extent it included such materials. As for the remaining items, we likewise deny the request because we find them not properly the subject of a request for judicial notice and/or irrelevant to resolution of the matters before us. (Evid. Code, §§ 451, 452; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1089, fn. 4 [appellate court will not take judicial notice of irrelevant material].)

performing construction work must be licensed unless exempt. [Citation.] "The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. [Citations.]" [Citation.] The [laws] are designed to protect the public from incompetent or dishonest providers of building and construction services [Citation.] [Citation.]

"This statutory scheme encourages licensure by subjecting unlicensed contractors to criminal penalties and civil remedies. [Citation.] The civil remedies 'affect the unlicensed contractor's right to receive or retain compensation for unlicensed work.' (Ibid.) The hiring party is entitled to enforce these remedies through a defensive 'shield' or an affirmative 'sword.' [Citation.]

"The shield, contained in section 7031 [subdivision] (a), was enacted more than 70 years ago, and provides that a party has a complete defense to claims for compensation made by a contractor who performed work without a license, unless the contractor meets the requirements of the statutory substantial compliance doctrine. [Citation.] Section 7031 [subdivision] (e), the substantial compliance exception, provides relief only in very narrow specified circumstances, and 'shall not apply ... where the [unlicensed contractor] has never been a duly licensed contractor in this state." [Citation.]

"The California Supreme Court has long given a broad, literal interpretation to section 7031

[,subdivision] (a)'s shield provision. [Citation.] The court has held that [it] applies even when the person for whom the work was performed knew the contractor was unlicensed. [Citation.] . . .. [It] explained that Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state. [Citation.] ...'" [Citation.] "'Because of the strength and clarity of this policy [citation]," the bar of section 7031 [, subdivision] (a) applies "[r]egardless of the equities." ' [Citations.]

"In 2001, the Legislature amended section 7031 to add a sword remedy to the hiring party's litigation arsenal. This sword remedy, contained in section 7031 [,subdivision] (b), currently reads: 'Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract." By adding this remedy, the Legislature sought to further section 7031 [,subdivision] (a)'s policy of deterring violations of licensing requirements by 'allow[ing] persons who utilize unlicensed contractors to recover compensation paid to the contractor for performing unlicensed work. [Citation.]' [Citation.]" *(Alatriste, supra,* 183 Cal.App.4th at pp. 664-666, fns. omitted.)

Based on the statutory language and legislative history, both *Alatriste* and *White* "concluded that the Legislature intended that courts interpret sections 7031 [, subdivision] (a) and 7031[, subdivision] (b) in a consistent manner, resulting in the same remedy regardless of whether the unlicensed contractor is the plaintiff or the defendant." *(Alatriste, supra,* 183 Cal.App.4th at p. 666, citing *White, supra,* 178 Cal.App.4th at pp. 519-520.) These principles are well-settled under the law.

Bereki contends the disgorgement remedy is penal in nature and, therefore, a contractor defending against such a claim must be afforded all criminal rights and protections. Not so. Disgorgement is a civil consequence- "an equitable remedy"- for performing work without a required contractor's license. *(S.E. C. v. Huffman* (5th Cir. 1993) 996 F.2d 800, 802 (S.E.C.); see *Walker v. Appellate Division of Superior Court* (2017) 14 Cal.App.5th 651,657 [§ 7031 contemplates civil proceedings].) The Legislature created a separate criminal penalty. Specifically, section 7028 provides that acting or operating in the capacity of a contractor without a required license is a criminal misdemeanor subject to jail time, or fines, and restitution. (§ 7028, subds. (a)-(c), (h).)

For similar reasons, Bereki' s attempt to characterize disgorgement as an award of unconstitutional punitive damages is unavailing. As an equitable remedy, disgorgement is not punishment and, therefore, it does not implicate the excessive fines clause of the Eighth Amendment to the United States Constitution. (S.E.C. supra, 996 F.2d at p. 802; see

US v Philip Morris *USA* (D.C. 2004) 310 F.Supp.2d 58, 62-63.)

*B. Contractor Licensing Requirement*

Before turning to application of section 7031, subdivision (b), we address Bereki's claim that he, in his individual capacity, did not need a contractor's license. His argument is twofold, one part legal and the other part factual. We reject both.

As for the legal argument, Bereki asserts that licensing requirements only apply to "fictitious" persons, not "natural" persons such as himself. He cites no authority for his unique interpretation of the relevant statutes. And, the statutes provide otherwise. Contractors who are required to obtain a license include "[a]ny person ... who ... undertakes, offers to undertake, purports to have the capacity to undertake, or submits a bid to construct any ... home improvement project, or part thereof." (§ 7026.1, subd. (a)(2).) In turn, "'[p]erson'" is defined to include "an individual[,]" as well as a variety of types of business entities and associations. (§ 7025, subd. (b).) "In ordinary usage[,] the word 'individual' denotes a natural person not a group, association or other artificial entity. (See Webster' s Third New Internat. Diet. (2002 ed.) p. 1152 [giving a primary definition of 'individual' as 'a single human being as contrasted with a social group or institution'].)" *(City of Los Angeles v. Animal Defense League* (2006) 135 Cal.App.4th 606, 623, disapproved of on other grounds in *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 416.) There is nothing in the statutes that indicates a different, specialized meaning. *(Halbert 's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6

Cal.App.4th 1233, 1238 ["In examining the language, the courts should give to the words of the statute their ordinary, everyday meaning [citations] unless, of course, the statute itself specifically defines those words to give them a special meaning"].)

Bereki's factual attack concerns the trial court's conclusion that he, not Spartan Associates, was the contractor who performed the remodel work for the Humphreys. Though he implores us to engage in de novo review of this issue, it is a factual determination which we review for substantial evidence. *(Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 514.) There is ample evidence in the record supporting the court's conclusion.[11]

Both of the Humphreys testified that on the first day they met Bereki for a walkthrough of the site, he informed them that he and his partner would act as the general contractor for the project. Bereki followed

---

[11] Bereki filed a motion asking us to consider additional evidence not presented in the trial court, among which are two declarations, an e-mail correspondence and a letter. He believes the documents are relevant to establishing the identity of the contracting parties. We deny the motion as "[i]t has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.'" (In re Zeth S. (2003) 31 Cal.4th 396, 405, italics added.) Circumstances warranting an exception to this rule are very rare and we do not find them extant here, particularly in light of the conflicting evidence weighed by the trial court. (See Diaz v. Professional Community Management, Inc. (2017) 16 Cal.App.5th 1190, 1213 ["' The power to take evidence in the Court of Appeal is never used where there is conflicting evidence in the record and substantial evidence supports the trial court's findings.'"].)

up with a written proposal and estimate, which he sent to the couple from his personal e-mail address. When they inquired whether he had a contractor's license, he assured them he did, and when they asked him to whom they should make out their payment checks, he told them to put them in his name.

At no time during this series of events did Bereki ever mention Spartan Associates. Notably, Bereki did not apply to the State Board of Equalization to register Spartan as an employer until roughly three months after the remodel work began. Then, about four months into the project, he introduced the corporation into the mix by asking the Humphreys, without any explanation, to make future payments to Spartan Associates.

Based on what transpired, the couple believed they contracted with Bereki, in his individual capacity, to complete the remodel work.

While Bereki claims the Humphreys lied when they testified at trial because some of their factual statements purportedly contradicted those they made at the summary judgment stage, our role is not to resolve factual disputes or to judge the credibility of witnesses. *(Leff v. Gunter (1983) 33 Cal.3d 508, 518.)* The trial court bore that responsibility in this case, and our review of the record reveals substantial evidence to support its conclusion that Bereki, not Spartan Associates, was the contractor for the job.

*C. Disgorgement Remedy Under Section 7031*

Separate from his general attacks on section 7031 , subdivision (b) , Bereki challenges its application

237

under the specific facts of this case. He first asserts disgorgement is an improper remedy because it gives the Humphreys a double benefit- the remodel improvements and the money they otherwise would have paid for them. In the context of the statute at issue, however, courts have uniformly rejected such an argument and required disgorgement, even though this remedy often produces harsh results. (See, e.g., *Alatriste, supra*, 183 Cal.App.4th at pp. 672-673; *White, supra*, 178 Cal.App.4th at pp. 520-521; see also *Jeff Tracy, Inc. v. City of Pico Rivera* (2015) 240 Cal.App.4th 510, 521.) Full disgorgement is required; offsets and reductions for labor and materials received are not permitted.

Equally meritless is Bereki ' s contention that there was no justiciable claim under the statute because there was no evidence the Humphreys were injured by his lack of a contractor' s license. Bereki cites no authority for that novel proposition. Injury is not an element of a cause of action under the statute. The disgorgement consequence is not remedial in nature. Similar to the licensing requirement, it is a proactive measure intended to decrease the likelihood of harm due to "incompetent or dishonest providers of building and construction services." *(White, supra,* 178 Cal.App.4th at pp. 517.)

We also are not persuaded by Bereki's objection to the amount the court ordered him to repay to the Humphreys. He highlights evidence showing that some of the payment checks came from Gary Humphreys' corporation, and he argues the Humphreys are not entitled to those amounts given they did not pay them in the first instance. While we

**238**

do not necessarily see eye-to-eye with Bereki's legal reasoning, we need not reach the legal aspect of his argument due to the trial court's factual findings.

The trial court, relying on Gary Humphreys' uncontradicted testimony, found that the contested payments ultimately were attributable to Gary Humphrey himself. Substantial evidence supports this conclusion. The Humphreys testified that the business is an S corporation, and at the relevant time Gary Humphreys was the sole shareholder and an employee. Gary Humphreys explained he was traveling often for business during the remodel, including at times when Bereki insisted on needing money "'right away.'" To facilitate the payments, Gary Humphreys had persons in his corporation with signing authority write checks from the corporate account. The amounts paid on the Humphreys behalf were then accounted for through a reduction in the regular income Gary Humphreys received from the corporation. He paid income taxes on those amounts because they were included in the figures listed on his annual W-2 form.

Under these circumstances, we find ample evidence to support the trial court's factual finding that although certain payments to Bereki were made from the Humphreys' business account, they ultimately were accounted for in a way that ensured they were personal payments from the Humphreys, as individuals. Accordingly, the Humphreys were entitled to "all compensation paid." (§ 7031, subd. (b).)

We recognize that the provisions of section 7031, including the disgorgement remedy, are harsh and

may be perceived as unfair. As courts have explained, however, they stem from policy decisions made by the Legislature. *(MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 423; *Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995; *Lewis & Queen v. NM Ball Sons* (1957) 48 Cal.2d 141, 151; see *Judicial Council of California v. Jacobs Facilities, Inc.* (2015) 239 Cal.App.4th 882, 896; *Alatriste, supra,* 183 Cal.App.4th at p. 672.) "[T]he choice among competing policy considerations in enacting laws is a legislative function" *(Coastside Fishing Club v. California Resources Agency* (2008) 158 Cal.App.4th 1183, 1203), and absent a constitutional prohibition, we may not interfere or question the wisdom of the policies embodied in the statute. *(Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 25; *Alatriste, supra,* 183 Cal.App.4th at p. 672.)

*D. Statement of Decision*

Though he admits he did not timely request a statement of decision, Bereki claims the trial court should have nevertheless provided one after he made an untimely request. To the contrary, "[n]o statement of decision is required if the parties fail to request one." *(Acquire Il, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970; see also Code Civ. Proc., § 632.) The trial court's denial was proper. (See *In re Marriage a/Steinberg* (1977) 66 Cal.App.3d 815, 822 [upholding court's refusal to make findings of fact and conclusions of law due to party's failure to timely request them].)

### III. DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs on appeal.

ARONSON, J.


WE CONCUR:

O'LEARY, P.J.

GOETHALS, J.

# APPENDIX B- TRIAL COURT

## MINUTE ORDER

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ORANGE

CENTRAL JUSTICE CENTER


MINUTE ORDER


CASE NO: 30-2015-00805807-CU-CO-CJC   CASE INIT.DATE: 08/21/2015

CASE TITLE: THE SPARTAN ASSOCIATES, INC. vs. HUMPHREYS

CASE CATEGORY: Civil - Unlimited CASE TYPE: Contract - Other


APPEARANCES

J. Scott Russo, from Russo & Duckworth LLP, present for Cross- Defendant, Plaintiff(s).

William G. Bissell, from Law Offices of William G. Bissell, present for Defendant, Cross-Complainant(s).

KAREN HUMPHREYS, Defendant is present.

GARY HUMPHREYS, Defendant is present.

Adam Bereki, self represented Cross - Defendant, present.

**2nd day of trial**

At 9:55a.m. Court reconvenes with plaintiff(s), defendant(s) and counsel present as noted above.

At 9:57 a.m. Mr. William G. Bissell presents closing argument on behalf of Cross-Complainants/Defendants, Karen & Gary Humphreys.

At 10:12 a.m. Mr. J. Scott Russo presents closing argument on behalf of Cross-Defendant, The Spartan Associates, Inc ..

Mr. Adam Bereki waived closing argument.

At 10:19 a.m. Court declares a recess.

At 10:52 a.m. Court reconvenes with plaintiff(s), defendant(s) and counsel present as noted above.

Having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, the Court finds and determines that Mr. Adam Bereki is the contractor and he does not possess contractor's license.

The Court finds judgment for the Cross Complainants, Gary & Karen Humphreys (First Cause of Action, for Disgorgement of Funds Paid) and against cross-defendant, Adam Bereki.

The Court invites counsels to meet and discuss the plan for the remaining cause of actions and the complaint.

At 11:19 a.m. Court declares a recess.

At 11:37 a.m. Court reconvenes with plaintiff(s), defendant(s) and counsel present as noted above.

Legal discussions held with regards to remaining cross-complaint cause of actions and the complaint as set forth on the record.

Counsels are to resume discussions during lunch hour and report to the Court at 1:45 p.m.

At 11:47 p.m. Court declares a recess.

At 1:48 p.m. Court reconvenes with plaintiff(s), defendant(s) and counsel present as noted above.

Counsels reached an agreement as set forth on the record .

Mr. J . Scott Russo presents an offer of proof on plaintiff's complaint that if called Mr. Adam Bereki would be the witness and the testimony would be that Plaintiff, Spartan Associates had rendered goods and services to the defendants. The fair market value for the services and goods of $82,821.53 to be backed up by invoices and testimony about the reasonable value of those services that would be the first cause of action Quantum Merit. For the 2nd cause of action, go and in hand that it was an open book accounting

was rendered to the defendants that they were given the accountings and the sum was $82,821.53 that was still due.

Based on Mr. Russo's offer of proof, the Court understand that those claims are based upon the view of plaintiff Spartan Associates, Inc. was the general contractor on the project. The Court finds that Spartan Associates does not have standing as determined earlier today that Mr.Bereki was the purported general contractor on the contract. Spartan Associates, Inc. may have been apparently substituted but it is certainly not with the permission or agreement of the defendants. Based on that, the Court finds judgment for the defendants on the complaint.

The parties have discussed, agreed and stipulates on the record as follows: The entirety of remaining causes of action on the First Amended Cross-Complaint will be dismissed without prejudice. If judgment on the first cause of action becomes final, the dismissal without prejudice will be converted to dismissal with prejudice. Pending judgment on the first cause of action becoming final, the statute of limitations on the re-filing of an action of the dismissed causes of action is waived. If a new action is filed on the dismissed causes of action , discovery deemed completed and will not be re-opened and the newly filed case will be consolidated with the remanded case for trial.

Pursuant to Mr. Bissell's Motion, the Court orders the remaining causes of action, negligence, fraud, alter ego, penalty, attorney's fees and recovery

against the Contractor's license bond be dismissed without prejudice. The judgment on the First Amended Cross Complaint is on the 1st cause of action for discouragement only.

The Court directs Mr. William G. Bissell to prepare the judgment.

At 2:03 p.m. Pursuant to oral stipulation set forth on the record, exhibits are released and returned to the submitting parties/counsels for maintenance, custody and safekeeping pending any post-verdict or appeal proceedings. All identification tags and other identifying markings are to remain in place pending this period.

At 2:05p.m. The Court is adjourned in this matter.

# APPENDIX C- SUPERIOR COURT

## MINUTE ORDER

SUPERIOR COURT OF CALIFORNIA,

COUNTY OF ORANGE

CENTRAL JUSTICE CENTER

MINUTE ORDER

TIME: 09:30:00 AM DEPT: C16

JUDICIAL OFFICER PRESIDING: Supervising Judge James J. Di Cesare CLERK: Martha Diaz REPORTER/ERM: Jamie Jennings CSR# 13434 BAILIFF/COURT ATTENDANT: Loretta Schwary

CASE NO: 30-2015-00805807-CU-CO-CJC CASE INIT.DATE: 08/21/2015

CASE TITLE: THE SPARTAN ASSOCIATES, INC. vs. HUMPHREYS

CASE CATEGORY: Civil - Unlimited CASE TYPE: Contract - Other

EVENT ID/DOCUMENT ID: 72990898

EVENT TYPE: Motion to Vacate MOVING PARTY: Adam Bereki CAUSAL DOCUMENT/DATE FILED: Motion to Vacate Void Judgment, 02/19/2019

APPEARANCES

Law Offices of William G. Bissell, from Law Offices of William G. Bissell, present for Cross - Complainant, Defendant, Respondent on Appeal(s). Adam Bereki, self represented Defendant, present.

Tentative Ruling posted on the Internet and posted in the public hallway.

The Court having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now makes the tentative ruling final as follows:

MOTION TO VACATE

The Motion "to Vacate Void Judgment" filed by Mr. Adam Bereki is Denied. The arguments presented on this motion were already raised and rejected, and the appellate decision affirming the underlying judgment on the merits is now final. Upon remittitur, the trial court is revested with jurisdiction of the case only to carry out the judgment as ordered by the appellate court. (*People v. Dutra* (2006) 145 Cal.App.4th 1359, 1365-1366.) Arguments on the merits of the underlying judgment cannot be entertained anew here. The Motion is therefore Denied.

Counsel for the Humphreys to give notice.

## APPENDIX D- §7031 B&P

**BUSINESS AND PROFESSIONS CODE - BPC DIVISION 3. PROFESSIONS AND VOCATIONS GENERALLY [5000 - 9998.11]** *( Heading of Division 3 added by Stats. 1939, Ch. 30. )*

**CHAPTER 9. Contractors [7000 - 7191]** *( Chapter 9 added by Stats. 1939, Ch. 37. )*

**ARTICLE 2. Application of Chapter [7025 - 7034]** *( Article 2 added by Stats. 1939, Ch. 37. )*

**7031.**
(a) Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract regardless of the merits of the cause of action brought by the person, except that this prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029.
(b) Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract.

(c) A security interest taken to secure any payment for the performance of any act or contract for which a license is required by this chapter is unenforceable if the person performing the act or contract was not a duly licensed contractor at all times during the performance of the act or contract.

(d) If licensure or proper licensure is controverted, then proof of licensure pursuant to this section shall be made by production of a verified certificate of licensure from the Contractors' State License Board which establishes that the individual or entity bringing the action was duly licensed in the proper classification of contractors at all times during the performance of any act or contract covered by the action. Nothing in this subdivision shall require any person or entity controverting licensure or proper licensure to produce a verified certificate. When licensure or proper licensure is controverted, the burden of proof to establish licensure or proper licensure shall be on the licensee.

(e) The judicial doctrine of substantial compliance shall not apply under this section where the person who engaged in the business or acted in the capacity of a contractor has never been a duly licensed contractor in this state. However, notwithstanding subdivision (b) of Section 143, the court may determine that there has been substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, and (3) acted promptly and in good faith to remedy the failure to

comply with the licensure requirements upon learning of the failure.

(f) The exceptions to the prohibition against the application of the judicial doctrine of substantial compliance found in subdivision (e) shall apply to all contracts entered into on or after January 1, 1992, and to all actions or arbitrations arising therefrom, except that the amendments to subdivisions (e) and (f) enacted during the 1994 portion of the 1993–94 Regular Session of the Legislature shall not apply to either of the following:

(1) Any legal action or arbitration commenced prior to January 1, 1995, regardless of the date on which the parties entered into the contract.

(2) Any legal action or arbitration commenced on or after January 1, 1995, if the legal action or arbitration was commenced prior to January 1,1995, and was subsequently dismissed.

*(Amended by Stats. 2016, Ch. 244, Sec. 1. (AB 1793) Effective January 1, 2017.)*

## APPENDIX E- §7071.17 B&P

**BUSINESS AND PROFESSIONS CODE - BPC DIVISION 3. PROFESSIONS AND VOCATIONS GENERALLY [5000 - 9998.11]** *( Heading of Division 3 added by Stats. 1939, Ch. 30. )*

**CHAPTER 9. Contractors [7000 - 7191]** *( Chapter 9 added by Stats. 1939, Ch. 37. )*

**ARTICLE 5. Licensing [7065 - 7077]** *( Article 5 added by Stats. 1939, Ch. 37. )*

**7071.17.**
(a) Notwithstanding any other provision of law, the board shall require, as a condition precedent to accepting an application for licensure, renewal, reinstatement, or to change officers or other personnel of record, that an applicant, previously found to have failed or refused to pay a contractor, subcontractor, consumer, materials supplier, or employee based on an unsatisfied final judgment, file or have on file with the board a bond sufficient to guarantee payment of an amount equal to the unsatisfied final judgment or judgments. The applicant shall have 90 days from the date of notification by the board to file the bond or the application shall become void and the applicant shall reapply for issuance, reinstatement, or reactivation of a license. The board may not issue, reinstate, or reactivate a license until the bond is filed with the board. The bond required by this section is in addition to the contractor's bond. The bond shall be on file for a minimum of one year, after which the bond may be removed by submitting proof of

satisfaction of all debts. The applicant may provide the board with a notarized copy of any accord, reached with any individual holding an unsatisfied final judgment, to satisfy a debt in lieu of filing the bond. The board shall include on the license application for issuance, reinstatement, or reactivation, a statement, to be made under penalty of perjury, as to whether there are any unsatisfied judgments against the applicant on behalf of contractors, subcontractors, consumers, materials suppliers, or the applicant's employees. Notwithstanding any other provision of law, if it is found that the applicant falsified the statement then the license will be retroactively suspended to the date of issuance and the license will stay suspended until the bond, satisfaction of judgment, or notarized copy of any accord applicable under this section is filed.

(b) (1) Notwithstanding any other provision of law, all licensees shall notify the registrar in writing of any unsatisfied final judgment imposed on the licensee. If the licensee fails to notify the registrar in writing within 90 days, the license shall be automatically suspended on the date that the registrar is informed, or is made aware of the unsatisfied final judgment.

(2) The suspension shall not be removed until proof of satisfaction of the judgment, or in lieu thereof, a notarized copy of an accord is submitted to the registrar.

(3) If the licensee notifies the registrar in writing within 90 days of the imposition of any unsatisfied final judgment, the licensee shall, as a condition to the continual maintenance of the license, file or have on file with the board a bond sufficient to guarantee

payment of an amount equal to all unsatisfied judgments applicable under this section.

(4) The licensee has 90 days from date of notification by the board to file the bond or at the end of the 90 days the license shall be automatically suspended. In lieu of filing the bond required by this section, the licensee may provide the board with a notarized copy of any accord reached with any individual holding an unsatisfied final judgment.

(c) By operation of law, failure to maintain the bond or failure to abide by the accord shall result in the automatic suspension of any license to which this section applies.

(d) A license that is suspended for failure to comply with the provisions of this section can only be reinstated when proof of satisfaction of all debts is made, or when a notarized copy of an accord has been filed as set forth under this section.

(e) This section applies only with respect to an unsatisfied final judgment that is substantially related to the construction activities of a licensee licensed under this chapter, or to the qualifications, functions, or duties of the license.

(f) Except as otherwise provided, this section shall not apply to an applicant or licensee when the financial obligation covered by this section has been discharged in a bankruptcy proceeding.

(g) Except as otherwise provided, the bond shall remain in full force in the amount posted until the entire debt is satisfied. If, at the time of renewal, the licensee submits proof of partial satisfaction of the financial obligations covered by this section, the board may authorize the bond to be reduced to the amount of the unsatisfied portion of the outstanding judgment. When the licensee submits proof of

satisfaction of all debts, the bond requirement may be removed.

(h) The board shall take the actions required by this section upon notification by any party having knowledge of the outstanding judgment upon a showing of proof of the judgment.

(i) For the purposes of this section, the term "judgment" also includes any final arbitration award where the time to file a petition for a trial de novo or a petition to vacate or correct the arbitration award has expired, and no petition is pending.

(j) (1) If a judgment is entered against a licensee, then a qualifying person or personnel of record of the licensee at the time of the activities on which the judgment is based shall be automatically prohibited from serving as a qualifying individual or other personnel of record on another license until the judgment is satisfied.

(2) The prohibition described in paragraph (1) shall cause the license of any other existing renewable licensed entity with any of the same personnel of record as the judgment debtor licensee to be suspended until the license of the judgment debtor is reinstated or until those same personnel of record disassociate themselves from the renewable licensed entity.

(k) For purposes of this section, lawful money or cashier's check deposited pursuant to paragraph (1) of subdivision (a) of Section 995.710 of the Code of Civil Procedure, may be submitted in lieu of the bond.

(l) Notwithstanding subdivision (f), the failure of a licensee to notify the registrar of an unsatisfied final judgment in accordance with this section is cause for disciplinary action. *(Amended by Stats. 2018, Ch. 925, Sec. 3. (AB 3126) Effective January 1, 2019.*

## APPENDIX F- §3294 CIVIL CODE

**CIVIL CODE - CIV**
**DIVISION 4. GENERAL PROVISIONS [3274 - 9566]** (Heading of Division 4 amended by Stats. 1988, Ch. 160, Sec. 16.)

**PART 1. RELIEF [3274 - 3428]** *(*Part 1 enacted 1872. )

**TITLE 2. COMPENSATORY RELIEF [3281 - 3360]** (Title 2 enacted 1872.)

**CHAPTER 1. Damages in General [3281 - 3296]** (Chapter 1 enacted 1872. )

**ARTICLE 3. Exemplary Damages** [3294 - 3296] (Article 3 enacted 1872.)

**3294.**
(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

(b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages

are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

(c) As used in this section, the following definitions shall apply:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

(2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

(d) Damages may be recovered pursuant to this section in an action pursuant to Chapter 4 (commencing with Section 377.10) of Title 3 of Part 2 of the Code of Civil Procedure based upon a death which resulted from a homicide for which the defendant has been convicted of a felony, whether or not the decedent died instantly or survived the fatal injury for some period of time. The procedures for joinder and consolidation contained in Section 377.62 of the Code of Civil Procedure shall apply to prevent

multiple recoveries of punitive or exemplary damages based upon the same wrongful act.

(e) The amendments to this section made by Chapter 1498 of the Statutes of 1987 apply to all actions in which the initial trial has not commenced prior to January 1, 1988.

(Amended by Stats. 1992, Ch. 178, Sec. 5. Effective January 1, 1993.)

# EXHIBIT G

## APPENDIX G– CALIFORNIA SUPREME COURT DENIAL OF PETITION FOR REVIEW


Court of Appeal, Fourth Appellate District, Division Three– No. G055075

**S252954**

**IN THE SUPREME COURT OF CALIFORNIA**

**En Banc**

_____

GARY HUMPHREYS et al., Cross-Complainants and Respondents

v.

ADAM BEREKI, Cross-defendant and Appellant

_____

The petition for review is denied.




<u>CANTIL-SAKAUYE</u>
                                              *Chief Justice*

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

October 7, 2019

**Scott S. Harris**
Clerk of the Court
(202) 479-3011

Mr. William Bissell
Law Office of William G. Bissell
14 Corporate Plaza Drive
Suite 120
Newport Beach, CA  92660

Re:  Adam Bereki
   v. Gary Humphreys, et ux.
   No. 18-1416

Dear Mr. Bissell:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

*Scott S. Harris*

**Scott S. Harris**, Clerk

**260**

DECLARATION OF PROOF OF SERVICE

I am employed in the County of Orange, State of California.

I am over the age of 18 and not a party to the within action; my business address is 14 Corporate Plaza Drive Suite 120, Newport Beach, CA 92660.

On November 19, 2019, I served the within:

**Notice of Motion and Motion to Dismiss the First Amended Complaint and Request for Judicial Notice**

By electronic transmission to Plaintiff Adam Bereki at:

abereki@gmail.com

Mr Bereki having previously authorized service upon him in this action vie electronic service.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on November 19, 2019, at Newport Beach, California.

_____
William Bissell